# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF COLUMBIA

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _X

Alliance for Recreational Cannabis Entities LLC, :

                                   Plaintiff,              :

                    v.                                     :          **COMPLAINT**

DISTRICT OF COLUMBIA,                                      :

Serve: Mayor Muriel Bowser c/o Office of
Corporation Counsel 1 Judiciary Square 441 4th
Street, N.W. 6th Fl. South Washington, DC
20001, Muriel Bowser, 1350 Pennsylvania
Avenue, N.W. Washington, DC 20004

Attorney General Brian Schwalb, 400 6th Street
N.W. Washington, DC 20001

Alcoholic Beverage and Cannabis Administration
Director Fred Moosally, 2000 14th Street N.W.
Suite 400, Washington, DC 20009

Department of Licensing and Consumer
Protection Director Tiffany Crowe, 1100 4th
Street SW, Washington, DC 20024

Metropolitan Police Department Chief Pamela A.
Smith, 441 4th Street N.W. 7th Fl., Washington,
D.C. 20001


Defendants


                                   Defendants.        :          JURY TRIAL DEMANDED

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _X

## VERIFIED COMPLAINT

COMES NOW the Plaintiff, Alliance for Recreational Cannabis Entities LLC, by and

through their undersigned counsel, Law Office of Jacobie K. Whitley PLLC, and complains of

the DEFENDANTS, as follows:

## NATURE OF THE ACTION

1.    This is an action aiming to permanently enjoin the Defendants from enforcing laws in violation of Plaintiff's individual rights under the Seventh Amendment to the United States Constitution, Plaintiff's individual rights under Article I, Section 10, Clause 1 of the United States Constitution, Plaintiff's individual rights under the Fourth Amendment to the United States Constitution, Plaintiff's individual rights under the Fifth Amendment to the United States Constitution, Plaintiff's privileges and immunities under the Dormant Commerce Clause of the United States Constitution, and Plaintiff's privileges and immunities under the District of Columbia Home Rule Act.

2.    This action also aims to permanently enjoin the Defendants from enforcing laws in violation of the Further Consolidated Appropriations Act 2024, Division B, Title VII, Section 809(b).

3.    This action also aims to permanently enjoin the Defendants from enforcing laws that are unconstitutionally overbroad and vague, and ABCA agency decisions that are arbitrary and capricious.

## JURISDICTION AND VENUE

4.    This Court has federal question jurisdiction over this case, 28 U.S.C. §1331 and supplemental jurisdiction over the District of Columbia claims, 28 U.S.C. §1367.

5.    Venue is proper in this District under 28 U.S.C. §1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

**PARTIES**

6.     Plaintiff Alliance for Recreational Cannabis Entities LLC ("Alliance") is an alliance representing the recreational cannabis entities in the District of Columbia, Maryland, and Virginia. Plaintiff has seven members: five member companies are owned by District of Columbia residents, one member company is owned by a Virginia resident, and one company is partially owned by a Maryland resident.

7.     Defendant District of Columbia is a municipal entity organized under the United States Constitution and laws of the United States.

8.     Defendant Muriel Bowser is the Mayor of the District of Columbia, and as such is responsible for executing and administering the District of Columbia's laws, customs, practices, and policies. In that capacity, Ms. Bowser is presently enforcing the unconstitutional laws, customs, practices, and policies complained of in this action, and is sued in both her individual and official capacities.

9.     Defendant Brian Schwalb is the Attorney General of the District of Columbia, and as such is responsible for executing and administering the District of Columbia's laws, customs, practices, and policies. In that capacity, Mr. Schwalb is presently enforcing the unconstitutional laws, customs, practices, and policies complained of in this action, and is sued his official capacities.

10.     Defendant Fred Moosally is the Director of the District of Columbia Alcoholic Beverage and Cannabis Administration ("ABCA"), and as such is responsible for executing and administering the District of Columbia's laws, customs, practices, and policies. In that capacity,

Mr. Moosally is presently enforcing the unconstitutional laws, customs, practices, and policies complained of in this action, and is sued in his official capacities.

11.     Defendant Tiffany Crowe is the Director of the District of Columbia Department of Licensing and Consumer Protection, and as such is responsible for executing and administering the District of Columbia's laws, customs, practices, and policies. In that capacity, Ms. Crowe is presently enforcing the unconstitutional laws, customs, practices, and policies complained of in this action, and is sued in her official capacities.

12.     Defendant Pamela Smith is the Chief of Police for the Metropolitan Police Department, and as such is responsible for enforcing the District of Columbia's laws, customs, practices, and policies. In that capacity, Chief Smith is presently enforcing the unconstitutional laws, customs, practices, and policies complained of in this action, and is sued in her official capacities.

## FACTS

13.     On November 4, 2014, 64.8% of the voting residents in the District of Columbia approved the "Legalization of Possession of Minimal Amounts of Marijuana for Personal Use Act of 2014" (commonly known as "I-71"), to allow recreation adult cannabis possession and use in the District of Columbia.

14.     However, due to the inclusion of a congressional budget rider known commonly as the "Harris Rider," the District of Columbia was prohibited from using federal or its own funding to enact or carry out any law, rule, or regulation to legalize or otherwise reduce penalties associated with the possession, use, or distribution of cannabis.

15.    The Legalization of Possession of Minimal Amounts of Marijuana for Personal

Use Act of 2014 was codified into D.C. Criminal Code as D.C. Code § 48-904.01(a)(1)(A) and

(B), which state:

> "Notwithstanding any provision of this chapter to the contrary, it shall be lawful, and
> shall not be an offense under District of Columbia law, for any person 21 years of age or
> older to:
>
>> (A) Possess, use, purchase, or transport marijuana weighing 2 ounces or less;
>> (B) Transfer to another person 21 years of age or older, *without remuneration*,
>> marijuana weighing one ounce or less; (emphasis added)"

16.    Since the enactment of D.C. Code § 48-904.01(a)(1)(A) and (B), the District of

Columbia has undertaken systematic efforts to undermine legally sanctioned cannabis activity,

effectively rolling back freedoms democratically established by the residents of the District.

17.    The District of Columbia initiated its systematic campaign to criminalize lawful

cannabis activity within the District by leveraging enforcement actions by the Metropolitan

Police Department, often leading to criminal prosecutions. These cases frequently culminated in

Deferred Prosecution Agreements that were ultimately dismissed or resulted in misdemeanor

convictions, as well as plea agreements producing similar outcomes.

18.    The District of Columbia subsequently pivoted to bolster its medical cannabis

market by challenging, paralleling, and directly competing with the recreational cannabis sector.

The District offered incentives and inducements to encourage individuals and businesses to

participate in the medical cannabis marketplace.

19.    In accordance with D.C. Code § 48-904.01(a)(1)(B), Plaintiff's members were

retail and service businesses where, as a non-commercial component, cannabis transfers occurred

solely between adults aged 21 or older, limited to one ounce. These businesses generated income

by selling a diverse range of goods and services, without selling, offering, or making cannabis

available for sale. Cannabis was transferred without remuneration, fully aligning with the provisions of the D.C. Code and underscoring these businesses' adherence to lawful practices.

20.     Plaintiff's members operated profitably and were not attracted to the medical cannabis market, which was unprofitable and beset with systemic issues. These issues included supply chain shortages, inadequate infrastructure, the requirement of self-incriminating disclosures during the application process, unconstitutional licensing requirements and regulations, and the absence of mandatory laboratory testing.

21.     In fact, the first testing laboratory in the District of Columbia became operational in 2024—nearly a decade after the District began dispensing medical cannabis to the public. Consequently, for ten years, medical cannabis products were not subjected to laboratory testing within the District, raising serious concerns about the safety, regulatory oversight, and potentially misleading nature of these products.

22.     For ten years, the District of Columbia allowed medical cannabis cultivators and manufactures to simply "self-certify" the potency, chemical composition, and contaminants of the cannabis dispensed as "medical cannabis" with no other quality control safeguards.

23.     The District of Columbia also allows patients to self-certify that they have medical or dental conditions qualifying them for treatment by cannabis.

24.     The District of Columbia facilitated the sale of untested cannabis to the mass public in a manner that misled the public to believe that the cannabis was medical grade and lab tested.

25.     The District of Columbia was aware that it was misleading the public because 22-C D.C.M.R. § 5609.1 provides: Dispensaries and cultivation centers may dispense or distribute

medical marijuana in any form deemed safe which allows patients to eat, inhale, or otherwise use medical marijuana for medical purposes. Medical marijuana shall be subject to testing for quality assurance and safety purposes.

26.     As a result, the medical cannabis industry did not prosper in the District and thus, the District of Columbia, in response, enacted the Medical Cannabis Amendment Act of 2022 (the "Act") and rolled out a combined enforcement and licensing scheme that aimed to force people and businesses into the medical cannabis market.

27.     Among the laws enacted by the Act, D.C Code §§ 7-1671.06a-b target recreational adult cannabis.  However, these new laws did not set distinction between legal and illegal recreational adult cannabis activity. Instead, they wrongfully and indiscriminately outlawed all recreational cannabis activity in direct contradiction to the I-71 Initiative.

28.     The District of Columbia then enacted D.C. Code § 48-1201: the possession or transfer without remuneration of marijuana weighing one ounce or less shall constitute a civil violation, but such a violation shall not constitute a criminal offense or a delinquent act; which contradicts the language of D.C. Code § 48-904.01(a)(1)(A) and (B) (I-71 Initiative legalizing the transfer of up to one ounce of cannabis without renumeration).

29.     The Act also transferred Department of Health's role in the cannabis industry to the Alcoholic Beverage and Cannabis Administration ("ABCA"). The latter is now mandated to oversee, enforce, regulate, and preside over the systematic forced-entries into the medical cannabis marketplace in the District of Columbia.

30.     Under the Act's mandate, ABCA devised various open application periods to accept submissions for Retail, Cultivation, Manufacturing, and Courier Medical Cannabis licenses, as follows:

31.     From August 29, 2023, through October 30, 2023, ABCA opened an application period for Courier, Cultivation Center, and Manufacturer license applications for standard and social equity applicants.

32.     From November 1, 2023, through January 29, 2024, ABCA opened an application period for Retailer, Internet Retailer, and Cultivation Center licenses for unlicensed establishments.

33.     From March 1, 2024, through April 30, 2024, ABCA opened an application period for Retailer and Internet Retailer license for social equity applicants.

34.     From July 1, 2024, through August 29, 2024, ABCA opened an application period for Retailer and Internet Retailer license for standard applicants.

35.     Applicants in the "I-71" transitional licensing round, referenced in paragraph 33 above, were required to complete an affidavit attesting that the applicant conducted illegal cannabis sales in the District even if the applicant felt that this was an inaccurate portrayal of their business activity. Every applicant was required to sign and submit this attestation form, and failing to sign the attestation form resulted in denial of the application.

36.     Later after consulting with counsel on or about September 4, 2024, Plaintiff members that applied in the "I-71" transitional round realized that, by signing the affidavit, they involuntarily and unknowingly waived their Fifth Amendment right against self-incrimination.

37.     After the conclusion of all the medical cannabis licensing rounds, the District of Columbia increased enforcement by issuing cease-and-desist orders and summarily closing business without pre-deprivation hearings, even though these cease-and-desist orders and summary closures deprive store owners of significant property and liberty interests. Meanwhile,

a substantial amount of the cease-and-desist orders contained inaccurate facts and conclusions of law.

38.    Multiple members of the Alliance have received cease-and-desist orders, requested hearings, attended hearings, and lost in these hearings.

39.    ABCA policies, customs, and tactics further include enforcement against commercial landlords. ABCA issues fines and license recissions to pressure the landlords into terminating lease with their I-71 tenants, such as Plaintiff's members, who have received cease-and-desist and/or summary closure orders.

40.    The landlord enforcement scheme described in the above Paragraph 45 of this Complaint is a violation of Article I, Section 10, Clause 1 of the United States Constitution, commonly referred to as the Contracts Clause, the District of Columbia is subject to the restrictions and limitations of the Contracts Clause through the Home Rule Act, which subjects the legislative power of the District to all the restrictions and limitations of the Contracts Clause of the U.S. Constitution.

## COUNT ONE
## U.S. CONST., AMEND. VII, 42 U.S.C. § 1983 AGAINST ALL DEFENDANTS

41.    PLAINTIFF repeats and realleges the allegations set forth in paragraphs 1 through 40 hereof, as if fully set forth herein.

42.    The Seventh Amendment to the United States Constitution provides: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, then according to the rules of the common law."

43.    The right is not limited to the common-law forms of action recognized, when the Seventh Amendment was ratified. The Amendment embraces all suits which are not of equity of

admiralty jurisdiction. The Amendment extends to a particular statutory claim if the claim is legal in nature.

44.    At a minimum, under the Seventh Amendment, civil penalties are a type of remedy at common law that could only be enforced in courts of law.

45.    D.C. Code § 47-2844(a-2)(1) provides that "…the Mayor, for the first…[illegal sale, negotiation for sale, or use of any controlled substance as that term defined in Chapter 9 of Title 48]…shall issue a fine in the amount of $2,500…, for the second violation…shall issue a fine in the amount of $5,000…[and] for the third violation…shall issue a fine in the amount of $10,000."

46.    D.C. Code § 7-1675.01(b) provides that "[f]or any subsequent violations of D.C. Official Code § 47-2844(a-2)(1B): the Mayor shall issue a fine in the amount of up to $10,000 to the commercial property owner."

47.    D.C. Code § 7-1671.08(f)(2)(A) provides that "[f]or the second violation, the ABC Board may: issue a fine in the amount of $10,000…"

48.    All these sections concern culpability, deterrence, and recidivism, because (1) they tie the availability of civil penalties to the perceived need to punish the defendant rather to restore the victim, (2) nothing in these sections turn on restoring the status quo, and (3) these penalties are not returned to victims, such considerations are legal rather than equitable.

49.    However, D.C. Code § 7-1671.08(d) provides that "[t]he ABC Board may impose and adjudicate civil fines for violations" mentioned above. In practice, the ABC Board has always adjudicated these fines in its in-house court and has never brought an action in front of a jury in the D.C. Superior Court.

50.    It is also the ABC Board's customary practice where the chairman would host a closed-door meeting after its open cease-and-desist hearings. The content of these closed-door hearings is unknown to the respondents and new evidence might even be presented in these hearings.

51.    By maintaining a set of practices and enforcing a set of laws that deprive the Plaintiff's members of their right to jury trial in suits at common law, defendants are propagating customs, policies, and practices that violate the Plaintiff members' individual rights under the Seventh Amendment to the United States Constitution, damaging plaintiff's members in violation of 42 U.S.C. § 1983

52.    Additionally, the Seventh Amendment also extends to common-law forms of action recognized when the Seventh Amendment was ratified.

53.    D.C. Code § 7-1671.12e(a) provides that "any building…where cannabis is sold, exchanged…by an unlicensed establishment shall be a nuisance." This section has been cited in every single cease and desist order the ABCA has issued to "unlicensed establishment."

54.    Nuisance has been a recognized common-law form of action since the 12th century. As Sir William Blackstone observed: "[n]usance, nocumentum, or annoyance, signifies anything that worketh hurt, inconvenience or damage. And nusances are of two kinds: public or common nusances, which affect the public, and are an annoyance to all the king's subjects…and private nusances; which may be defined as anything done to the hurt or annoyance of the lands, tenements, or hereditaments of another." Blackstone, *Commentaries on the Laws of England* (1765-9) n. 47.

55.    The close relationship between D.C. Code § 7-1671.12e(a), ABCA's cease and desist orders, and common law nuisance confirm that these cease-and-desist orders are common

law in nature. Additionally, D.C. Council deliberately used "nuisance" as a common law term of art in the D.C. Code. In so doing, D.C. Council clearly incorporated prohibitions from common law nuisance into the ABC Board's cease and desist actions. Thus, ABC Board's cease and desist orders implicate the Seventh Amendment.

56.    D.C. Code § 7-1671.12a(b)(1) provides that "[t]he alleged violator may…after service of the [cease and desist] order, submit a written request to the ABC Board to hold a hearing on the alleged violation."

57.    D.C. Code, however, does not provide alleged violators with any avenue to challenge the cease-and-desist orders in front of a jury in the D.C. Superior Court.

58.    By maintaining and enforcing a set of laws that deprive the Plaintiff of its right to jury trial in suits at common law, defendants are propagating customs, policies, and practices that violate Plaintiff members' individual rights under the Seventh Amendment to the United States Constitution, damaging Plaintiff's members in violation of 42 U.S.C. § 1983.

59.    The statutes described in this Count are D.C. Code §§ 47-2844(a-2)(1); 7-1675.01(b); 7-1671.08(f)(2)(A); 7-1671.08(d); 7-1671.12e(a); and 7-1671.12a(b)(1). They are unconstitutional on their face because they violate the Seventh Amendment right to a jury trial.

60.    Plaintiff is therefore entitled to permanent injunctive relief against such customs, policies, and practices.

### COUNT TWO
### U.S. CONST., AMEND. V, 42 U.S.C. § 1983 AGAINST ALL DEFENDANTS

61.    PLAINTIFF repeats and realleges the allegations set forth in paragraphs 1 through 60 hereof, as if fully set forth herein.

62.    The Fifth Amendment to the United States Constitution provides that the government may not deprive anyone of "life, liberty, or property, without due process of law."

As originally understood, this provision prohibited the government from depriving a person of those rights without affording him the benefit of those customary procedures to which freemen were entitled by the old law of England.

63.    In adjudicative proceedings, the Fifth Amendment entitles a person to an impartial and disinterested tribunal. The Fifth Amendment requires more than an impartial judge to comply with due process; it requires that the judge also appear to be impartial. A judicial proceeding is only valid as being consistent with due process if a reasonably prudent, disinterested observer would conclude that the parties received a fair, impartial, and neutral hearing.

64.    D.C. Code § 7-1671.12a(a) provides that "if the ABC Board…after investigation…has cause to believe that a person is violating a provision of this act and the violation has caused or may cause, immediate and irreparable harm to the public, the ABC Board may issue an order requiring the alleged violator to cease and desist immediately from the violation…"

65.    D.C. Code § 7-1671.12a(b)(1) provides that "[t]he alleged violator may…after service of the [cease and desist] order, submit a written request to the ABC Board to hold a hearing on the alleged violation."

66.    It is the ABC Board's practice and customs that the board's chairman acts as both the prosecutor and the decisionmaker in these cease-and-desist hearings. The board's chairman calls witnesses for the government, he personally cross examines the accused's witnesses, he examines evidence submitted by the accused, he objects to counsels' lines of questioning, and he ultimately recommends decision to be taken by the ABC Board. At least in 2024, the ABC Board has never voted against the chairman's recommendation.

67.     By maintaining and enforcing a set of laws that deprive the Plaintiff's members of their right to an impartial decision maker and procedural due process, defendants are propagating customs, policies, and practices that violate the members' individual rights under the Fifth Amendment to the United States Constitution, damaging Plaintiff's members in violation of U.S. Const. Amend. V, 42 U.S.C. § 1983.

68.     Plaintiff is therefore entitled to permanent injunctive relief against such customs, policies, and practices.

69.     Additionally, placing the burden of proof on the individual whose protected interests are at risk is inconsistent with due process requirements. An agency's practices violate a respondent's right to procedural due process if it fails to provide notice or opportunity to be heard at a meaningful time in a meaningful manner, or by placing the burden of proof on the respondent at the only hearing in which he is permitted to appear.

70.     D.C. Code § 7-1671.12a(b)(1)'s hearing is the only tribunal where a respondent is permitted to appear and defend himself before an ABC Board's cease-and-desist order becomes final and binding. However, the chairman at these hearings places the burden of proof on the respondent to disprove the Board's fact finding in its cease-and-desist orders.

71.     By maintaining and enforcing a set of practices that place the burden of proof on the Plaintiff's members during their only "pre-deprivation hearing," defendants are propagating customs, policies, and practices that violate the members' individual rights under the Fifth Amendment to the United States Constitution, damaging Plaintiff's members in violation of U.S. Const. Amend. V, 42 U.S.C. § 1983.

72.     Plaintiff is therefore entitled to permanent injunctive relief against such customs, policies, and practices.

73.     Additionally, the guarantee of equal protection under the Fifth Amendment requires classifications of citizens to be at least rationally based, even if the distinction is not based on any protected class.

74.     On March 22nd, 2023, the District of Columbia enacted the Medical Cannabis Amendment Act of 2022. In its legislative report, the D.C. Council stated that its goal is to create a regulated cannabis market and to prioritize racial and economic equity. D.C. Council reasoned that the District's black residents made up roughly 90% of all cannabis arrests since 2001 despite using cannabis at similar rates as white residents.

75.     However, D.C. Code § 7-1671.01(a)(20B) provides a leg-up for all residents who had previous "cannabis or drug-related offense." Thus, even if a resident were convicted of drug-related offenses involving significantly more dangerous controlled substances, such as cocaine or opioids, he could still qualify for D.C.'s cannabis social equity program, where he could be guaranteed with a license and access to D.C.'s social equity fund.

76.     Therefore, it is irrelevant whether a resident was actually a target of the District of Columbia's past enforcement of its racist cannabis laws. The District of Columbia cannot offer a rational basis as to why including other drug offenses would actually benefit residents who were targeted for only cannabis-related offenses.

77.     By maintaining and enforcing a set of laws that are not rationally based on advancing the interests of those who were harmed by the war on drugs, the defendants are propagating customs, policies, and practices that violate the plaintiff members' guarantee to equal protection under the Fifth Amendment to the United States Constitution, damaging Plaintiff's members in violation of f U.S. Const. Amend. V, 42 U.S.C. § 1983.

78.    In summary, the statutes and practices in this count do not provide any circumstances under which a respondent can exercise their Fifth Amendment right to an impartial and disinterested tribunal rights and thereby failing the test for facial constitutionality. The statutes and practices also fail the test for facial constitutionality because the ABC Board forces respondents to bear the burden of proof in their only "pre-deprivation" hearing. Further, the District's distinction of standard and social equity applicants constitutes facial discrimination, but the District cannot proffer a valid rational basis to support such facial discrimination.

79.    Plaintiff is therefore entitled to permanent injunctive relief against such customs, policies, and practices.

## COUNT THREE
## 87 STAT. 774, AGAINST ALL DEFENDANTS

80.    PLAINTIFF repeats and realleges the allegations set forth in paragraphs 1 through 79 hereof, as if fully set forth herein.

81.    Defendants are enforcing a set of laws that violate the separation of power doctrine found in the D.C. Home Rule Act. Plaintiff is therefore entitled to permanent injunctive relief against such customs, policies, and practices.

82.    D.C. Home Rule Act provides that the legislative power granted to the District is vested in and shall be exercised by the D.C. Council. D.C. Code § 1-204.04(a). D.C. Home Rule Act also provides that the executive power of the District shall be vested in the Mayor who shall be the chief executive officer of the District government.

83.    Since system of government vesting executive/administrative, legislative, and judicial functions in separate entities has been established in District of Columbia, nonlegislative matters cannot properly be submitted for initiative without violating sanctity of that division of responsibility. Similarly, executive matters should not be subject to encroachment of D.C.

Council's legislative powers. Specifically, dual for-cause limitations on the removal of executive officers contravene the doctrine of separation of powers.

84.    D.C. Code § 25-206(d) provides that the Mayor can only remove an ABC Board member for just and reasonable cause. D.C. Code § 25-207(a) provides that ABCA's director can only be removed by the ABC Board for just and reasonable cause.

85.    D.C. Code §§ 1-204.04(a); 25-206(d); and  25-207(a), and ABCA's and the District of Columbia's practices described in this count are unlawful on their face, because they violate the D.C. Home Rule Act and its separation of powers doctrine in all of its applications.

86.    In the alternative, the statutes are constitutionally invalid as-applied against Plaintiff's members because the statutes violate the D.C. Home Rule Act and its separation of powers as applied in the administration of ABCA hearings related to cannabis, medical cannabis, the ABCA Boards' cease-and-desist orders, and summary closure hearings.

87.    By maintaining and enforcing a set of practices that allow for dual for-cause removal at ABCA and the ABC Board, defendants are propagating customs, policies, and practices that violate the members' individual rights under the D.C. Home Rule Act..

88.    Plaintiff is therefore entitled to permanent injunctive relief against such customs, policies, and practices.

### COUNT FOUR
### U.S. CONST., ART. I, S.8, C.3 AGAINST ALL DEFENDANTS

89.    PLAINTIFF repeats and realleges the allegations set forth in paragraphs 1 through 88 hereof, as if fully set forth herein.

90.    Under Article I of the United States Constitution, a state, including the District of Columbia, may not enact laws that discriminate against citizens of other states.

91.     The District's Medical Cannabis Amendment Act of 2022 provides a preference to residents of the District of Columbia over out-of-state residents for applications for cannabis licenses. Individual applicants for the Social Equity Registration Application must be businesses incorporated in the District of Columbia. D.C. Code § 7-1671.01(20C). Similarly, "a dispensary shall not be permitted to receive or purchase medical marijuana from a person other than a cultivation center registered in the District." 22-C D.C.M.R. § 5700. Social Equity applicants also have to be D.C. residents. D.C. Code § 7-1671.01(20C).

92.     Social Equity applicants also receive additional advantages such as reduced application and yearly renewal fees.

93.     State statutes that discriminate against interstate commerce face a virtually per se rule of invalidity. The District government cannot demonstrate that the statute serves a legitimate local purpose, or that this purpose could not be served well by available nondiscriminatory means.

94.     D.C. Code § 7-1671.01(20C) and 22-C DCMR § 5700 and the ABCA's and the District of Columbia's practices described in this count are unconstitutional because they are protectionist measures that favor in-state businesses or residents over out-of-state businesses or residents and violate the Dormant Commerce Clause in all of its applications.

95.     The statutes do not provide any circumstances under which a litigant can exercise their right to be free of discriminatory protectionist measures that favor in-state businesses or residents over out-of-state businesses or residents. The statutes violate the Dormant Commerce Clause and thereby failed the test for facial constitutionality.

96.    In the alternative, the statutes and practices are constitutionally invalid as-applied against Plaintiff because two of the Plaintiff's members were precluded from applying for medical cannabis licenses simply due to their out-of-state residency.

97.    By maintaining and enforcing a set of practices that discriminate out-of-state residents and commerce, defendants are propagating customs, policies, and practices that violate the members' privileges and immunities under the Dormant Commerce Clause of the United States Constitution, damaging Plaintiff's members in violation of U.S. Const. Amend. V, 42 U.S.C. § 1983.

98.    Plaintiff is therefore entitled to permanent injunctive relief against such customs, policies, and practices.

## COUNT FIVE
## U.S. CONST., AMEND. V, 42 U.S.C. § 1983 AGAINST ALL DEFENDANTS

99.    PLAINTIFF repeats and realleges the allegations set forth in paragraphs 1 through 98 hereof, as if fully set forth herein.

100.    PLAINTIFF submits that the language of the below statutes is unconstitutionally overbroad.

101.    D.C. Code §§ 7-1671.01(9) and (22); 7-1671.12a; and 7-1671.08(g)(1); are overbroad because they infringe upon right to procedural due process implicated when property rights are at stake; substantive due process right to protect their property from government actions that unfairly restricts the use of the property or deprives the business of its value; and the substantive due process right to be free of arbitrary and unduly burdensome regulations. Due process scrutiny is available when a legitimate property or liberty interest is at stake, which is protected under the Fifth Amendment This principle applies to business owners who have established property interests through their business operations.

102.    D.C. Code § 48-904.01(a)(1)(B) provides that it shall be lawful and shall not be an offense under District of Columbia law, for any person 21 years of age or older to: Transfer to another person 21 years of age or older, without remuneration, marijuana weighing one ounce or less.

103.    D.C. Code § 48.-904.01(a)(1)(B) does not distinguish commercial activity from non-commercial activity, but instead, only prohibits the transfers of marijuana with remuneration.

104.    The District of Columbia Uniform Commercial Code, D.C. Code § § 28:1–201(27), provides that: "Person" means an individual, estate, business or nonprofit entity, government or governmental subdivision, agency, or instrumentality, or other legal entity.

105.    D.C. Code § 48-904.01(a)(1)(B) does not prohibit the transfer of marijuana from one person 12 years of age or older to another person 21 years of age or older from occurring on or in a commercial premises such as a business storefront.

106.    D.C. Code § 7-1671.01(9) provides that "Distribute" means the actual, constructive, or attempted transfer from one person to another; however, this definition fails to exempt the lawful transfer cannabis provided for in D.C. Code § 48-904.01(a)(1)(B), from a person 21 years of age or older to transfer to another person 21 years of age or older, without remuneration, marijuana weighing one ounce or less.

107.    D.C. Code § 7-1671.01(22) provides that "Unlicensed establishment" means a sole proprietorship, partnership, or other business entity that: Sells, exchanges as part of a commercial transaction, or delivers cannabis and cannabis products, however, the term "commercial transaction" is not defined in the D.C. Code and the phrase "exchange as part of a

commercial transaction" does not apply to "transfer without remuneration" language of § 48-904.01(a)(1)(B).

108.    The District of Columbia is using D.C. Code §§ 7-1671.01(9) and (22) to regulate legal activity under §§ 48-904.01(a)(1)(A) and (B), accordingly the vagueness and overbreadth of the language in D.C. Code §§ 7-1671.01(9) and (22) infringes upon rights granted by D.C. Code §§ 48-904.01(a)(1)(A) and (B).

109.    Since the language of the statutes is conflicting on their face and D.C. § 7-1671.01(22) was promulgated after D.C. Code §§ 48-904.01(a)(1)(A) and (B); then the clear conflict must render D.C. Code §§ 7-1671.01(9) and (22) unconstitutional on its face.

110.    Since the District of Columbia has applied enforcement of D.C. Code §§ 7-1671.01(9) and (22)  in a discriminatory manner by targeting businesses where transfers of marijuana pursuant to D.C. Code §§ 48-904.01(a)(1)(A) and (B) occurred either in or on the commercial premises, D.C. Code §§ 7-1671.01(9) and (22) are unconstitutional as-applied by the District of Columbia.

111.    PLAINTIFF submits that the lack of pre-deprivation hearing in ABCA's summary closure orders renders them unconstitutional.

112.    D.C. Code § 7-1671.12a provides:

(a) If the ABC Board, after investigation but before a hearing, has cause to believe that a person is violating a provision of this chapter [Title 7, Chapter 16B] the violation has caused or may cause, immediate and irreparable harm to the public, the ABC Board may issue an order requiring the alleged violator to cease and desist immediately from the violation. The order shall be served by certified mail or hand-delivered to the licensee or unlicensed establishment.

(b)(1) The alleged violator may, within 15 days after the service of the order, submit a written request to the ABC Board to hold a hearing on the alleged violation.

(2) Upon receipt of a timely request, the ABC Board shall conduct a hearing in accordance with the procedures set forth in Chapter 5 of Title 2 and issue a decision within 90 days after the hearing.

(c)(1) The alleged violator may, within 10 days after the service of an order, submit a written request to the ABC Board for an expedited hearing on the alleged violation.

(2) Upon receipt of a timely request for an expedited hearing, the ABC Board shall conduct a hearing within 10 days after the date of receiving the request and shall deliver to the alleged violator at their last known address a written notice of the hearing by any means guaranteed to be received at least 5 days before the hearing date.

(3) The ABC Board shall issue a decision within 30 days after an expedited hearing.

113.    In the issuance of its cease-and-desist orders under D.C. Code § 7-1671.12a the ABCA Board applies D.C. Code § 7-1671.01(22) to establish a violation of Title 7, Chapter 16B and references the conflicting provision of D.C. Code §§ 48-904.01(a)(1)(A) and (B) and mandates a post-deprivation hearing despite facially conflicting laws; conflicts in the application of the laws; and the deprivation of the business's property right to protect their property from government actions that are unlawful and/or lack a legitimate purpose.

114.    Plaintiff argues that its right to protect its property from government actions that are unlawful and/or lack a legitimate purpose is a significant enough property right to warrant a

pre-deprivation hearing and the post-deprivation hearing provide for in D.C. Code § 7-1671.12a
is unconstitutionally insufficient.

115.    D.C. Code § 7-1671.08(g)(1) provides: Notwithstanding § 7-1671.06(b) and § 7-
1671.08(f), ABCA shall have the authority to inspect an unlicensed establishment. If, after an
inspection, ABCA determines that an unlicensed establishment presents an imminent danger to
the health or safety of the public, as described in paragraph (2) of this subsection, the ABC
Board may summarily close and order the padlocking, by ABCA or MPD without a prior
hearing, of the unlicensed establishment, and ABCA may seize all cannabis and cannabis
products found at the premises.

116.    In its orders for summary closures the ABCA Board under D.C. Code § 7-
1671.08(g)(1) the Board applies D.C. Code § 7-1671.01(22) to establish authority to inspect and
issue summary closure and padlocking of businesses by ABCA or MPD without a prior hearing
and allows for the seizure of cannabis rightfully possessed under D.C. Code § 48-
904.01(a)(1)(A).

117.    Plaintiff argues that its right to protect its property from government actions that
are unlawful and/or lack a legitimate purpose is a significant enough property right to warrant a
pre-deprivation hearing and the post-deprivation hearing provide for in D.C. Code § 7-
1671.08(g)(1) is unconstitutionally insufficient, especially considering that the enforcement
action provided for under D.C. Code § 7-1671.08(g)(1) is the summary closure and padlocking
of the business which forecloses the Plaintiff's right to operate its business and negating the
goodwill and value of the business to nothing without compensation.

118.    Cease-and-Desist orders issued by ABCA contained language to "cease all
cannabis activity", however the language conflicts with and upon infringes upon the rights

granted in D.C. Code § 48-904.01(a)(1)(A) and (B), which describes legal cannabis activity and the language of cease-and-desists order overbroad because the term "all" does not distinguish legal cannabis activity from illegal cannabis activity.

119.    D.C. Code §§ 7-1671.01(9) and (22); 7-1671.12a; and 7-1671.08(g)(1) and ABCA's and the District of Columbia's practices in this count are unconstitutional on their face because they violate the procedural due process rights of the Fifth Amendment in all of its applications.

120.    The statutes do not provide any circumstances under which a litigant can exercise their substantive due process rights to engage in lawful business activities free from arbitrary government interference to protect their property from government actions that lack a legitimate purpose and thereby failing the test for facial constitutionality.

121.    In the alternative the statutes are constitutionally invalid as-applied to Plaintiff because the statutes as-applied by the District of Columbia discriminate against businesses that engage in lawful activities, but in or on the commercial premises of these businesses a person 21 years or older transfers up to an ounce of cannabis without remuneration and/or possess up to an two ounces of cannabis and/or of stores cannabis allocated to persons 21 years or older that does not exceed two ounces per person 21 years or older that may be stored collectively.

122.    Plaintiff is therefore entitled to permanent injunctive relief against such customs, policies, and practices.

123.    PLAINTIFF further submits that the statutes are unconstitutionally vague.

124.    D.C. Code §§ 7-1671.01(9) and (22); 7-1671.12a; and 7-1671.08(g)(1) and D.C. Code § 48-1201 and D.C. Code § 48-1201 are constitutionally vague because they fail to provide adequate notice of what conduct is prohibited, thereby leading to arbitrary enforcement.

125.    22-C DCMR § 5609.1 requires that medical marijuana shall be subject to testing for quality assurance and safety purposes.

126.    16 DCMR § 3665.1(q) makes it a Class 1 infraction for a Medical Cannabis Retail Dispensary to violate 22-C DCMR § 5609.1.

127.    16 DCMR § 3671.1(s) makes it a Class 1 Infraction for a Medical Cannabis Cultivator to violate 22-C DCMR 5609.1.

128.    Despite 22-C DCMR § 5609.1; 16 DCMR § 3665.1(q); and 16 DCMR § 367.1(s) for over 10 years ABCA has allowed Medical Cannabis Cultivators and Retail Dispensaries to circumvent that testing regulations by a self-certification process which is inconsistent with 22-C DCMR § 5609.1; 16 DCMR § 3665.1(q); and 16 DCMR § 367.1(s).

129.    Although Medical Cannabis Cultivators and Retail Dispensaries were allowed to circumvent testing requirements for their cannabis and cannabis products; the ABC Board routinely claims that, when a transfer of cannabis pursuant to D.C. Code § 48-904.01(a)(1)(A) and (B) occurs in or on a commercial premises, irreparable harm would follow because the cannabis is not tested, but neither was cannabis and cannabis products from Medical Cannabis Cultivators and Retail Dispensaries.

130.    Accordingly, the ABC Board decisions that untested cannabis poses an irreparable harm contradicts the fact that ABCA encouraged and assisted Medical Cannabis Cultivators and Retail Dispensaries in circumventing lab testing regulations. In fact, this practice caused to ABCA to assist Medical and Cannabis Cultivators and Retail Dispensaries into misleading the public in believing that the medical cannabis in District of Columbia was lab tested when it was not.

131.    During inspection of businesses in the District of Columbia, faulty and inaccurate field tests gave false positives. Field tests are presumptive and not legally conclusive, despite this fact ABCA uses field test in presses releases, investigative reports, and as conclusive evidence respondents to cease-and-desists and summary closure orders.

132.    D.C. Code 48-901.02(3) defines cannabis as all parts of the plant genus Cannabis, including both marijuana and hashish.

133.    D.C. Code 48-901.02(3)(A) defines marijuana as including the leaves, stems, flowers, and seeds of all species of the plant genus Cannabis, whether growing or not. The term "marijuana" does not include the resin extracted from any part of the plant, nor any compound, manufacture, salt, derivative, mixture, or preparation from the resin, including hashish and does not include the mature stalks of the plant, fiber produced from such stalks, oil, or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture or preparation of the mature stalks, fiber, oil, or cake, or the sterilized seed of the plant which is incapable of germination.

134.    Accordingly, marijuana does not include resin, nor any compound, manufacture, salt, derivative, mixture, or preparation from the resin, including hashish and does not include the mature stalks of the plant, fiber produced from such stalks, oil, or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture or preparation of the mature stalks, fiber, oil, or cake, or the sterilized seed of the plant which is incapable of germination.

135.    The statutes under Title 48 Chapter 9 of the D.C. Code refer to marijuana and the statutes under Title 7 Chapter 16B refer to cannabis. Thus, the statutes under Title 7 Chapter 16B

regulate substances beyond the scope of the substances regulated by the statutes under Title 48 Chapter 9.

136.    This statutory scheme is contradictory and vague.

137.    The District of Columbia recognizes that a vague statute does not adequately describe what conduct is prohibited, which can permeate all situations where the statute is applied. Additionally, the District of Columbia recognizes that, when a vague statute fails to define the criminal offense with sufficient definiteness, it leaves ordinary people to guess at its meaning and potentially opens door to arbitrary and selective enforcement by law enforcement agencies.

138.    D.C. § 48–1201(a) provides that the possession or transfer without remuneration of marijuana weighing one ounce or less shall constitute a civil violation. Additionally, D.C. Code § 48-1201(b) provides that a violation of subsection D.C. Code § 48-1201(a) shall not constitute a criminal offense or a delinquent act as defined in § 16-2301(7). Moreover, D.C. Code § 48-1203(a) and (b)(1) provide for $25 civil fine and seizure of any marijuana and paraphernalia visible to the police officer at the time of the civil violation. D.C.

139.    D.C. Code §§ 48-1201(a) and (b) and 48-1203(a) and (b)(1) facially contradict §§ 48–904.01(a) (1)(A) and (B), which provide that:

> Notwithstanding any provision of this chapter to the contrary, it shall be lawful, and shall not be an offense under District of Columbia law, for any person 21 years of age or older to:
>
> (A) Possess, use, purchase, or transport marijuana weighing 2 ounces or less;
>
> (B) Transfer to another person 21 years of age or older, *without remuneration*, marijuana weighing one ounce or less; (emphasis added)

140.    However, the sections above make no distinction between District of Columbia criminal or civil law. Thus, D.C. Code §§ 48-1201(a) and (b) are in conflict and contradiction with §§ 48-904.01(a)(1)(A) and (B).

141.    D.C. Code § 48-1211 provides that civil violations of § 48-1201 shall be adjudicated by the Office of Administrative Hearings. Accordingly, D.C. Code §§ 48-1211; 48-1201; and 48-904.01(a)(1) all contradict with ABCA's enforcement efforts against transfers of marijuana and cannabis by persons 21 years of age or older without remuneration. Meanwhile, D.C. Code §§ 7-1671.01; 7-1671.06b; 7-1671.12a; 7-1671.12c; and 7-1671.12e, grant ABCA authority that contradicts D.C. Codes §§ 48-1201; 48-1203; 48-1211; and 48-904.01(a)(1).

142.    D.C. Code §§ 7-1671.01(9) and (22); 7-1671.12a; and 7-1671.08(g)(1) and D.C. Code § 48-1201 and D.C. Code § 48-1201 and 22-C DCMR § 5609.1; 16 DCMR § 3665.1(q); and 16 DCMR § 367.1(s) and ABCA's and the District of Columbia's practices described in this count are unconstitutional on their face because they violate the substantive due process rights of the 5th Amendment in all of its applications.

143.    The statutes do not provide any circumstances under which a litigant can exercise their substantive due process rights to engage in lawful business activities free from arbitrary government interference to protect their property from government actions that lack a legitimate purpose and thereby failing the test for facial constitutionality.

144.    Plaintiff is therefore entitled to permanent injunctive relief against such customs, policies, and practices.

## COUNT SIX
## U.S. CONST., AMEND. V, 42 U.S.C. § 1983, (TAKINGS) AGAINST ALL DEFENDANTS

145.    PLAINTIFF repeats and realleges the allegations set forth in paragraphs 1 through 144 hereof, as if fully set forth herein.

146.    By maintaining and enforcing a set of laws that deprive the Plaintiff's member of its right to property and by significantly diminishing the value of their property, defendants are propagating customs, policies, and practices that amount to an government taking without compensation which violates Plaintiff members' individual rights under the Fifth Amendment to the United States Constitution, damaging Plaintiff's members in violation of U.S. Const., Amend V, 42 U.S.C. § 1983. Plaintiff is therefore entitled to permanent injunctive relief against such customs, policies, and practices.

147.    D.C. Code § 7-1671.08(g)(1) provides: "Notwithstanding § 7-1671.06(b) and § 7-1671.08(f), ABCA shall have the authority to inspect an unlicensed establishment. If, after an inspection, ABCA determines that an unlicensed establishment presents an imminent danger to the health or safety of the public, as described in paragraph (2) of this subsection, the ABC Board may summarily close and order the padlocking, by ABCA or MPD without a prior hearing, of the unlicensed establishment, and ABCA may seize all cannabis and cannabis products found at the premises."

148.    In its orders for summary closures the ABCA Board under D.C. Code § 7-1671.08(g)(1) the Board applies D.C. Code § 7-1671.01(22) to establish authority to inspect and issue summary closure and padlocking of businesses by ABCA or MPD without a prior hearing and allows for the seizure of cannabis rightfully possessed under D.C. Code § 48-904.01(a)(1)(A).

149.    Plaintiff argues that its right to protect its property from government actions that are unlawful and/or lack a legitimate purpose is a significant enough property right to warrant a pre-deprivation hearing and the post-deprivation hearing provide for in D.C. Code § 7-1671.08(g)(1) is unconstitutionally insufficient, especially considering that the enforcement

action provided for under D.C. Code § 7-1671.08(g)(1) is the summary closure and padlocking

of the business which forecloses the Plaintiff's right to operate its business and negating the

goodwill and value of the business to nothing without compensation.

150.    D.C. Code §§ 7-1671.01(9) and (22); 7-1671.08(g)(1) and ABCA's, MPD, DLCP,

and the District of Columbia's practices described in this count are unconstitutional on their face

because they violate the 5th Amendment right against government takings without compensation

in all of its applications.

151.    The statutes do not provide any circumstances under which a litigant can exercise

their right to be free of governmental takings without compensation and thereby failing the test

for facial constitutionality.

152.    Plaintiff is therefore entitled to permanent injunctive relief against such customs,

policies, and practices.

**COUNT SEVEN**
**U.S. CONST., AMEND. V, 42 U.S.C. § 1983 - (SELF-INCRIMINATION) AGAINST ALL**
**DEFENDANTS**

153.    PLAINTIFF repeats and realleges the allegations set forth in paragraphs 1 through

152 hereof, as if fully set forth herein.

154.    By maintaining and enforcing a set of laws that deprive the Plaintiff's members of

their right against self-incrimination, defendants are propagating customs, policies, and practices

that caused plaintiff's unknowingly and involuntarily waive their the right against self-

incrimination under the Fifth Amendment to the United States Constitution, damaging Plaintiff's

members in violation of U.S. Const. Amend. V, 42 U.S.C. § 1983. Plaintiff is therefore entitled

to permanent injunctive relief against such customs, policies, and practices.

155.    ABCA defined unlicensed operators as an "establishment that engaged in

commercial or gifting cannabis transactions from a location in DC since December 31, 2022."

156. Unlicensed operators were the only applicants that were required to submit an Unlicensed Operator Attestation Form as part of their Medical Cannabis Applications.

157. The attestation forms required the applicant to attest to the following:

A. I attest that my business has engaged in commercial cannabis transactions from a location in DC since December 31, 2022. Examples include, delivering, gifting, growing, manufacturing, selling or storing cannabis.

B. I have attached evidence to further demonstrate prior operation. Examples include dated social media posts, website, advertisements, online customer or product reviews, business photos, or paid utility bills, financial statements, list of owners and managers; witness statements demonstrating evidence of cannabis sales.

158. The attestation has two constitutional errors: (1) The attestation is requesting that applicants self-incriminate, as "gifting", literally a transfer without remuneration, is lawful under D.C. Code § 48-904.01(a)(1)(B) and "storage", which is possession by a person 21 years of age or over, is lawful also under D.C. Code § 48-904.01(A); and (2) the attestation form failed to notify the applicant of their Fifth Amendment right against self-incrimination or to allow the applicant to knowingly and voluntarily waive their right against self-incrimination.

159. The attestation form then lumps "gifting" and "storage" into the term "commercial cannabis transaction," which is not defined in D.C. Code, but the term "commercial cannabis transaction" is a part of the definition of an "Unlicensed establishment."

160. Although the term "commercial cannabis transaction" is vague and overbroad, it is used in the attestation form to force applicants to wrongfully confess to incriminating acts and to force themselves into the definition of an "unlicensed establishment," when activities like

gifting and storage should not be considered commercial because of D.C. Code 48-904.01(a)(1)(A) and (B).

161. The statutes do not provide any circumstances under which a litigant can exercise their Fifth Amendment right to be free self-incrimination and thereby failing the test for facial constitutionality.

162. Plaintiff is therefore entitled to permanent injunctive relief against such customs, policies, and practices.

**COUNT EIGHT**
**U.S. CONST., ART, I, S.10, C.1 (CONTRACTS CLAUSE)– AGAINST ALL DEFENDANTS**

163. PLAINTIFF repeats and realleges the allegations set forth in paragraphs 1 through 162 hereof, as if fully set forth herein.

164. D.C. Code § 7-1671.08(g)(1) provides: "Notwithstanding § 7-1671.06(b) and § 7-1671.08(f), ABCA shall have the authority to inspect an unlicensed establishment. If, after an inspection, ABCA determines that an unlicensed establishment presents an imminent danger to the health or safety of the public, as described in paragraph (2) of this subsection, the ABC Board may summarily close and order the padlocking, by ABCA or MPD without a prior hearing, of the unlicensed establishment, and ABCA may seize all cannabis and cannabis products found at the premises."

165. In its orders for summary closures the ABCA Board under D.C. Code § 7-1671.08(g)(1) the Board applies D.C. Code § 7-1671.01(22) to establish authority to inspect and issue summary closure and padlocking of businesses by ABCA or MPD without a prior hearing and allows for the seizure of cannabis rightfully possessed under D.C. Code § 48-904.01(a)(1)(A).

166.    Since the enforcement action under D.C. Code § 7-1671.08(g)(1) is the summary closure and padlocking of a business, which forecloses the Plaintiff's right to operate its business and forces the Plaintiff to be in breach of its lease or to surrender the leased premises.

167.    D.C. Code §§ 7-1671.01(9) and (22); and 7-1671.08(g)(1) and the District of Columbia's practices do not provide any circumstances under which a litigant can exercise their protection under the Contracts Clause to be free of government interference with private contracts and thereby failing the test for facial constitutionality.

168.    Plaintiff is therefore entitled to permanent injunctive relief against such customs, policies, and practices.

## COUNT NINE
## D.C. CODE § 2-509, AGAINST ALL DEFENDANTS

169.    PLAINTIFF repeats and realleges the allegations set forth in paragraphs 1 through 168 hereof, as if fully set forth herein.

170.    Under the District's Administrative Procedure Act, it is fundamental that the mind of the decider should not be swayed by evidence which is not communicated to both parties and which they are not given an opportunity to controvert.

171.    Prior to issuing any cease-and-desist orders, the ABC Board hosts supplemental hearings that are closed to the public. In these hearings, ABCA's investigator sets forth reports and evidence without the presence of the accused to provide context, details, or contradictory evidence.

172.    Additionally, it is the ABC Board's customary practice where the chairman would host a closed-door meeting after its open cease-and-desist hearings. The content of these closed-

door hearings is unknown to the respondents and new evidence might be presented in these hearings.

173.    Since the ABC Board's investigatory and supplemental hearings occur *ex parte*, the credibility or veracity of the witness is not tested or proven, and ABCA investigator's testimony is taken unopposed at its face value.

174.    Defendants are propagating customs, policies, and practices that violate the District of Columbia Administrative Procedure Act's ban on *ex parte* communications. Plaintiff is therefore entitled to permanent injunctive relief against such customs, policies, and practices.

**COUNT TEN**
**FURTHER CONSOLIDATED APPROPRIATIONS ACT 2024,**
**DIVISION B, TITLE VII, SECTION 809(A) and (B), AGAINST ALL DEFENDANTS**

175.    PLAINTIFF repeats and realleges paragraphs 1 through 174 hereof, as if fully set forth herein.

176.    Defendants are propagating customs, policies, and practices that violate the Harris Rider's ban on enacting or carrying out any law, rule, or regulation to legalize or reduce penalties associated with the possession, use, and distribution of cannabis.

177.    The Further Consolidated Appropriations Act 2024 restricts D.C. from using funds to "legalize or otherwise reduce penalties" for cannabis-related activities. The District's Medical Cannabis Amendment Act of 2022 would greatly expand the city's medical cannabis program, allowing hundreds of new retailers to "legally" operate. The expansion thus necessarily reduces penalties associated with cannabis for these new retailers.

178.    Therefore, D.C. is preempted from enacting and implementing the Medical Cannabis Amendment Act of 2022. In other words, the Act was an improper attempt to regulate cannabis transfers.

179.    The aforementioned Act in this count statutes is inherently incompatible with Further Consolidated Appropriations Act 2024, Division B, Title VII, Section 809(A) And (B).

180.    Plaintiff is therefore entitled to permanent injunctive relief against such customs, policies, and practices.

## COUNT ELEVEN
## U.S. CONST., AMEND. IV, 42 U.S.C. § 1983, AGAINST ALL DEFENDANTS

181.    PLAINTIFF repeats and realleges paragraphs 1 through 180 hereof, as if fully set forth herein.

182.    Under the Fourth Amendment to the U.S. Constitution, "the right of the people to be secure in their persons, houses…against unreasonable searches and seizures, shall not be violated."

183.    On October 30th, 2024, the Mayor signed and enacted the Medical Cannabis Clarification and Program Enforcement Amendment Act of 2024 ("The 2024 Act"). The 2024 Act is imminently taking effect as Congress is not expected to veto it in its review period.

184.    Section 4(C) of the 2024 Act provides that "ABCA shall have the authority to inspect the entire premises, inventory, and business records of an unlicensed establishment to determine whether the business is conducting activity in violation of this title."

185.    It is settled Fourth Amendment precedent since the 19th century that "our law holds the property of every man so scared, that no man can set his foot upon his neighbor's close without his [license]." 2 Wils. K. B., at 291, 95 Eng. Rep., at 817. A license may be implied from the habits, notwithstanding the strict rule of the English common law. For example, a police officer not armed with a warrant may approach a home and knock because that is no more than any private citizen might do.

186.    However, ABCA's authority to inspect an "unlicensed establishment's" entire premise and the businesses' bookkeeping and business records is clearly more than any private citizen might do. It is common sense that private citizens cannot walk into a retailer's back office without permission and just start auditing the retailer. Additionally, not once in 2024 has ABCA been armed with a search warrant.

187.    The infringement of the Fourth Amendment arising from ABCA's authority to inspect an "unlicensed establishment's" entire premises, and its business records is further exacerbated by its unconstitutional application of the term to businesses that do not clearly fit within its statutory definition.

188.    Under D.C. Code § 7-1671.01(22), an "unlicensed establishment" is defined as a sole proprietorship, partnership, or other business entity that sells, exchanges as part of a commercial transaction, or delivers cannabis and cannabis products. However, the term "commercial transaction" is not defined within the D.C. Code, and the phrase "exchanges as part of a commercial transaction" does not encompass the "transfer without remuneration" language specified in § 48-904.01(a)(1)(B).

189.    This ambiguity significantly increases the likelihood that businesses will be wrongfully classified as "unlicensed establishments," thereby subjecting them to ABCA inspections of their premises and business records without a search warrant, in violation of their Fourth Amendment rights.

190.    Therefore, the statute's authorization of ABCA to conduct search without a warrant or appropriate exception to a warrant is facially invalid.

191.    The statutes provisions are inherently incompatible with the Fourth Amendment to the U.S. Constitution.

192. Plaintiff is therefore entitled to permanent injunctive relief against such customs, policies, and practices.

## COUNT TWELVE
## DECLARATORY JUDGMENT

193. PLAINTIFF repeats and realleges paragraphs 1 through 192 hereof, as if fully set forth herein.

194. The Declaratory Judgment Act permits a court to determine the legal rights and relations of parties, "when there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

195. The court's inquiry whether to grant declaratory relief should focus on "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

196. Plaintiff has legal interests that are adverse to the District of Columbia because legal activity outlined in D.C. Code § 48-904.01(a)(1)(A) and (B) is being illegalized by conflicting D.C. laws such as D.C. Code §§ D.C. Code §§ 7-1671.01(9) and (22); 7-1671.12a; and 7-1671.08(g)(1); and 48-1201, which the District of Columbia is currently actively enforcing against Plaintiff and other similarly situated businesses.

197. A declaratory judgment is warranted because the conflicting laws infringe upon constitutional rights and protections; the District of Columbia's enforcement issues not only fines but also cease-and-desists and summary closures, that have a significant impact on Plaintiff's property right, especially since the District of Columbia only offers post-deprivation hearings and no pre-deprivation hearings, meanwhile the reduction of the value of the property after a

summary closure amounts to a government taking. All the activities above are being carried out under the color of unconstitutionally overbroad and vague laws.

198.    Plaintiff requests declaratory judgment based upon the substantial controversy of, whether transfers of cannabis and marijuana on businesses premises between persons 21 years of age or older without remuneration constitute commercial transaction. Plaintiff also seeks declaratory judgment as to the definition of a commercial transaction.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF respectfully requests this Honorable Court to enter judgment as follows:

**1. Injunctive Relief:**

    a. Issue an order immediately and permanently enjoining Defendants including FRED MOOSALLY in his official capacity as Director of ABCA, TIFFANY CROWE in her official capacity as Director of DLCP, and other named Defendants in their official capacities, from:

        i. Continuing unlawful enforcement actions against Plaintiff's members, including:

        ii. Conducting further warrantless inspections of Plaintiff members' premises;

        iii. Imposing or enforcing embargoes on Plaintiff members' products without legal justification under D.C. law;

        iv. Issuing additional Notices of Infraction or taking further

enforcement actions without proper legal basis or procedure under D.C. law.

v.     Issuing additional Cease and Desist Order and Summary Closure Orders or taking further unconstitutional enforcement action against Plaintiff.

vi.    Ceasing all unconstitutional and illegal investigations and investigatory activities.

**2. Declaratory Relief:**

a.   Declare that Defendants' actions, including the inspections, embargoes, and issuance of Warnings and Notices of Infraction, were unlawful and violated Plaintiff members' rights under D.C. law and the U.S. Constitution.

b.   Declare that Plaintiff members' actions of tolerating the transfer of up to an ounce of marijuana/cannabis between persons 21 years of age or older while in or on its business premises without remuneration are lawful actions.

c.   Declare that Defendants' actions, including issuing cease and desist orders and summary closure orders are unlawful and violated Plaintiff members' rights under the U.S. Constitution and D.C. law.

**3. Such Further Relief:**

a.   Grant such other and further relief as this Court deems just, equitable, and proper.

Date: November 7, 2024                      Respectfully submitted,

Jacobie Whitley, Esq.
DC Bar #1500314
Law Office of Jacobie K. Whitley, PLLC.
1455 Pennsylvania Avenue, NW, Suite 400
Washington, D.C. 20004
Tel: (202) 499-2403
Fax: (202) 499-2402
Email: jwhitley@lawofficeofjkw.com
*Counsel for Plaintiff*

**VERIFICATION**

District of Columbia                    )

                                  ) ss.:

City of Washington                    )


Kevin Lance Murray, being duly sworn, deposes and says that I am the Managing Member of Alliance for Recreational Cannabis Entities LLC in the case captioned Alliance for Recreational Cannabis Entities v. District of Columbia and have authorized the filing of this complaint. I have reviewed the allegations made in the complaint, and to those allegations of which I have personal knowledge, I believe them to be true. As to those allegations of which I do not have personal knowledge, I rely on news reports, discussions with industry stakeholders, and government announcements and I believe them to be true.

                                    Kevin Lance Murray, Managing Member

Sworn to me this 5 day of November, 2024

Notary Public

ERIC JONES JR.
Notary Public, District of Columbia
My Commission Expires 8/14/2026

## CERTIFICATE OF SERVICE

I hereby certify the above Complaint was mailed First Class Certified Mail with Return Receipt

requested, on November 8, 2024, to the parties listed below:

Mayor Muriel Bowser

c/o Office of Corporation Counsel

1 Judiciary Square 441 4th Street, N.W. 6th Fl. South

Washington, DC 20001


Muriel Bowser,

1350 Pennsylvania Avenue, N.W.

Washington, DC 20004


Attorney General Brian Schwalb,

400 6th Street N.W. Washington, DC 20001


Alcoholic Beverage and Cannabis Administration

Director Fred Moosally,

2000 14th Street N.W. Suite 400,

Washington, DC 20009


Department of Licensing and Consumer Protection

Director Tiffany Crowe

1100 4th Street SW, Washington, DC 20024


Metropolitan Police Department

Chief Pamela A. Smith,

441 4th Street N.W. 7th Fl., Washington, D.C. 20001

Jacque Whitley