## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ALLIANCE FOR RECREATIONAL CANNABIS ENTITIES LLC,**<br><br>    **Plaintiff,**<br><br>    **v.**<br><br>**DISTRICT OF COLUMBIA,** *et al.*,<br><br>    **Defendants.** | **No. 1:24-cv-03164-ACR** |
| **THE SAFE HOUSE LLC,**<br><br>    **Plaintiff,**<br><br>    **v.**<br><br>**DISTRICT OF COLUMBIA,** *et al.*,<br><br>    **Defendants.** | **No. 1:24-cv-03532-ACR** |
| **ORGANIX LLC,**<br><br>    **Plaintiff,**<br><br>    **v.**<br><br>**DISTRICT OF COLUMBIA,** *et al.*,<br><br>    **Defendants.** | **No. 1:24-cv-03536-ACR** |
| **GREEN MAGIC LLC,**<br><br>    **Plaintiff,**<br><br>    **v.**<br><br>**DISTRICT OF COLUMBIA,** *et al.*, | **No. 1:24-cv-03537-ACR** |

| | |
|---|---|
| Defendants. | |
| **ELEVATED TOURS LLC,**<br><br>    **Plaintiff,**<br><br>    **v.**<br><br>**DISTRICT OF COLUMBIA,** *et al.*,<br><br>    **Defendants.** | **No. 1:24-cv-03538-ACR** |
| **AR LOGISTICS LLC,**<br><br>    **Plaintiff,**<br><br>    **v.**<br><br>**DISTRICT OF COLUMBIA,** *et al.*,<br><br>    **Defendants.** | **No. 1:24-cv-03539-ACR** |

## <u>DISTRICT DEFENDANTS' COMBINED OPPOSITION TO PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION</u>

**Table of Contents**

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................ 2

   I.    The Federal and District of Columbia Controlled Substances Acts ................................... 2

   II.   Plaintiffs' Allegations ........................................................................................................ 4

      A.   Green Magic LLC .......................................................................................................... 4

      B.   Organix LLC ................................................................................................................ 5

      C.   Safe House .................................................................................................................... 6

      D.   Alliance for Recreational Cannabis Entities ............................................................... 7

      E.   Elevated Tours and AR Logistics ................................................................................ 7

   III.   Procedural History ........................................................................................................... 8

LEGAL STANDARD ......................................................................................................... 9

ARGUMENT ...................................................................................................................... 9

   I.    Plaintiffs' Alleged Injuries Are Not Irreparable. ............................................................ 9

   II.   The Balance of the Equities and Public Interest Favor the Status Quo. .......................... 13

   III.   Plaintiffs Have Not Demonstrated a Likelihood of Success on the Merits. .................. 16

      A.   Standing ....................................................................................................................... 16

      B.   Plaintiffs' Federal Appropriations Act Claims ........................................................... 18

      C.   Plaintiffs' Constitutional Claims ................................................................................ 19

          1.   Seventh Amendment .............................................................................................. 20

          2.   Procedural Due Process ......................................................................................... 23

          3.   The Dormant Commerce Clause ............................................................................ 27

          4.   Due Process Void for Vagueness ........................................................................... 30

          5.   Fifth Amendment Takings Claim ........................................................................... 33

          6.   Contracts Clause .................................................................................................... 35

          7.   Fourth Amendment Claims .................................................................................... 38

          8.   Equal Protection ..................................................................................................... 39

      D.   Plaintiffs' District Law Claims ................................................................................... 42

          1.   Home Rule Act ...................................................................................................... 42

          2.   D.C. Administrative Procedure Act ....................................................................... 44

          3.   Common Law Torts ............................................................................................... 45

Conclusion ...................................................................................................................... 47

## Table of Authorities

**Cases**

*Abigail All. for Better Access to Developmental Drugs v. Eschenbach*, 469 F.3d 129 (D.C. Cir. 2006) ................................................................................................................. 18

*Act Now to Stop War & End Racism Coal. v. District of Columbia*, 846 F.3d 391 (D.C. Cir. 2017) ................................................................................................................. 30

*also Tate v. District of Columbia*, 627 F.3d 904 (D.C. Cir. 2010) ............................................... 34

*Am. Educ. Research Ass'n v. Public.Resource.Org, Inc.*, 78 F. Supp. 3d 542 (D.D.C. 2015) ..... 21

*Am. Trucking Ass'n v. Mich. Pub. Serv. Comm'n*, 545 U.S. 429 (2005). .................................... 28

*Amerisource Corp. v. United States*, 525 F.3d 1149Fed. Cir. 2008) ............................................ 34

*Armstrong v. Thomas*, 80 A.3d 177 (D.C. 2013) ......................................................................... 46

*Bartko v. SEC*, 845 F.3d 1217 (D.C. Cir. 2017) ......................................................................... 16

*Bennis v. Michigan*, 516 U.S. 442 (1996) ................................................................................... 34

*Boddie v. Connecticut*, 401 U.S. 371 (1971) ............................................................................... 26

*Brinkmeyer v. Wash. State Liquor & Cannabis Bd.*, Civ. No. C20-5661, 2023 U.S. Dist. LEXIS 20564 (W.D. Wash. Feb. 7, 2023) ....................................................................... 29

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573 (1986) ...................... 28

*Cardinal Health, Inc. v. Holder*, 846 F. Supp. 2d 203 (D.D.C. 2012) ........................................ 16

*Carithers v. District of Columbia*, 326 A.2d 798 (D.C. 1974) .................................................... 22

*Chamber of Commerce v. EPA*, 642 F.3d 192 (D.C. Cir. 2011) .................................................. 18

*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290 (D.C. Cir. 2006) ...................... 11

*CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738,(D.C. Cir. 1995) ...................... 10

*Cortes v. NLRB*, Case No. 23-2954, 2024 U.S. Dist. LEXIS 65196 (D.D.C. Apr. 10, 2024) ...... 20

*Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288 (D.C. Cir. 2009) ....................................... 9

*Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328 (2008) ......................................................... 27, 28

*District of Columbia v. Fitzgerald*, 953 A.2d 288 (D.C. 2007) ................................................... 43

*Dixon v. District of Columbia*, 666 F.3d 1337 (D.C. Cir. 2011) ................................................. 39

*Dugan v. Ohio*, 277 U.S. 61 (1923) ............................................................................................. 24

*Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371 (D.C. Cir. 2017) .......................................................................................................... 17

*Energy Reserves Group v. Kan. Power & Light Co.*, 459 U.S. 400 (1983) ................................. 35

*FCC v. Beach Communications*, 508 U.S. 307 (1993) ................................................. 40

*Fisheries Survival Fund v. Jewell*, 236 F. Supp. 3d 332 (D.D.C. 2017) ..................................... 11

*Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905 (D.C. Cir. 2015)........................................ 16

*FOP Metro. Police Dep't Labor Comm. v. District of Columbia*, 290 A.3d 29 (D.C. 2023) ...... 43

*Fraternal Order of Police v. District of Columbia*, 45 F.4th 954 (D.C. Cir. 2022). ............. 36, 37

*Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010) . 42, 44

*Full Value Advisors, LLC v. SEC*, 633 F.31 1101 (D.C. Cir. 2011)........................................ 33

*Gonzalez-Droz v. Gonzalez-Colon*, 660 F.3d 1 (1st Cir. 2011)........................................... 27

*Granfinanciera v. Nordberg*, 492 U.S. 33 (1989)........................................................ 21

*Hanson v. Smith*, 120 F.4th 223 (D.C. Cir. 2024)....................................................... 11

*Harris v. Bowser*, 404 F. Supp. 3d 190 (D.D.C. 2019).................................................. 45

*Harris v. Bowser*, 843 Fed. App'x 328 (D.C. Cir. 2021)................................................ 47

*Havilah Real Prop. Servs. v. VLK, LLC*, 108 A.3d 334 (D.C. 2015) ...................................... 47

*Henderson v. United States*, 575 U.S. 622 (2015) ...................................................... 16

*Hill v. National Transp. Safety Bd.*, 886 F.2d 1275 (10th Cir. 1989)........................................ 22

*Jensen v. Md. Cannabis Admin.*, 719 F. Supp. 3d 466 (D. Md. 2024) ...................................... 29

*Jibril v. Mayorkas*, 20 F.4th 804 (D.C. Cir. 2021) ...................................................... 17

*Johnson v. District of Columbia Dep't of Health*, 163 A.3d 746 (D.C. 2017) ............................ 26

*Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470 (1987) .................................. 34

*Kornegay v. United States*, 236 A.3d 414 (D.C. 2020) .................................................... 3

*Lawton v. Steele*, 152 U.S. 133 (1894) ................................................................ 23

*Lech v. Jackson*, 791 Fed. App'x 711 (10th Cir. 2019) .................................................. 34

*Lewis v. Casey*, 518 U.S. 343 (1996)................................................................... 17

*Mazurek v. Armstrong*, 520 U.S. 968 (1997)......................................................... 9, 10

*Medinatura, Inc. v. FDA*, 496 F. Supp. 3d 416 (D.D.C. 2020) ........................................... 9

*Monell v. Department of Social Services*, 436 U.S. 658 (1978) ........................................... 20

*Mugler v. Kansas*, 123 U.S. 623 (1887) ................................................................ 34

*Murthy v. Missouri*, 603 U.S. 43 (2024)................................................................ 17

*Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6 (D.C. Cir. 2011)........................................ 18

*Ne. Patients Grp. v. Maine Dep't of Admin. & Fin. Servs.*, 554 F. Supp. 3d 177 (D. Me. 2021) 29, 30

*New York v. Burger*, 482 U.S. 691 (1987) ........................................................... 38, 39

*Nken v. Holder*, 556 U.S. 418 (2009) ......................................................................... 9

*NPG, LLC v. City of Portland*, No. 2:20-CV-00208, 2020 U.S. Dist. LEXIS 146958 (D. Me. Aug. 14, 2020) ......................................................................................................... 29

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325 (2018) ................. 21

*Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality*, 511 U.S. 93 (2008) ...................... 28

*Owens v. D.C. Water & Sewer Auth.*, 156 A.3d 715, 720 (D.C. 2017) ........................ 44

*Peridot Tree WA Inc.*, 3:23-cv-06111, 2024 U.S. Dist. LEXIS 3213 (W.D. Wash. Jan. 5, 2024) 29

*Powell v. District of Columbia*, 645 F. Supp. 66 (D.D.C. 1986) ................................. 45

*Propert v. District of Columbia*, 948 F. 2d 1327 (D.C. Cir. 1991)............................... 25

*Richardson v. Trump*, 496 F. Supp. 3d 165 (D.D.C. 2020) ........................................ 14

*Riley v. California*, 573 U.S. 373 (2014) .............................................................. 38

*Safari Club Int'l v. Salazar*, 852 F. Supp. 2d 102 (D.D.C. 2012)................................ 13

*Safari Int'l v. Jewell*, 47 F. Supp. 3d 29 (D.D.C. 2014) .......................................... 12

*Save Jobs USA v. United States Dep't of Homeland Sec.*, 105 F. Supp. 3d 108 (D.D.C. 2015). 10, 12

*SEC v. Jarkesy*, 603 U.S. 109 (2024)............................................................... 21, 22

*Serono Labs., Inc. v. Shalala*, 158 F.3d 1313 (D.C. Cir. 1998)................................... 14

*Sherley v. Sebelius*, 644 F.3d 388 (D.C. Cir. 2011)............................................. 9, 30

*Smith v. District of Columbia*, 387 F. Supp. 3d 8 (D.D.C. 2019) ............................... 26

*Summers v. Earth Island Institute*, 555 U.S. 488 (2009) ........................................ 18

*Sveen v. Melin*, 584 U.S. 811 (2018) ................................................................. 35

*Toigo v. Dep't of Health and Senior Servs.*, 549 F. Supp. 3d 985 (W.D. Mo. 2021)................. 29

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) .............................................. 17

*Trump v. Thompson*, 20 F.4th 10 (D.C. 2021) ...................................................... 9

*Tumey v. Ohio*, 273 U.S. 510 (1927) ............................................................. 23, 24

*Turner v. District of Columbia*, 2006 U.S. Dist. LEXIS 12578 (D.D.C., Mar. 7, 2006)............. 20

*United States ex re. Martin v. Hathaway*, 63 F.4th 1043 (6th Cir. 2023)...................... 31

*United States v. $7,990.00 in U.S. Currency*, 170 F.3d 843 (8th Cir. 1999) .................. 34

*United States v. Bilodeau*, 24 F.4th 705 (1st Cir. 2022) ............................................. 15

*United States v. Bronstein*, 849 F.3d 1101 (D.C. Cir. 2017) ........................................ 30, 31, 32

*United States v. Motley*, 89 F.4th 777 (9th Cir. 2023) ................................................. 39

*Vance v. Bradley*, 440 U.S. 93 (1979) ........................................................................ 41

*Variscite NY Four, LLC*, 1:23-cv-01599, 2024 U.S. Dist. LEXIS 18357 (N.D.N.Y. Feb. 2, 2024)
.................................................................................................................................... 29, 30

*Variscite NY One v. New York*, 640 F. Supp. 3d 232 (N.D.N.Y. 2022) ........................ 29

*Viridis Labs., v. Kluytman*, No. 1:22-cv-283, 2023 U.S. Dist. LEXIS 132385 (W.D. Mich. July
31, 2023) .................................................................................................................. 29

*Ward v. Monroeville*, 409 U.S. 57 (1972) .................................................................... 24

*Williams v. Lew*, 819 F.3d 466 (D.C. Cir. 2016) ......................................................... 20, 38, 42

*Williams v. Pennsylvania*, 579 U.S. 1 (2016) ............................................................. 25

*Wilson v. Kelly*, 615 A.2d 229 (D.C. 1992) ................................................................. 42, 43

*Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7 (2008) ............................................ 13

*Wis. Cent. Ltd. v. United States*, 585 U.S. 274 (2018) ................................................. 31

*Wisconsin Gas Co. v. Federal Energy Regulatory Com.*, 758 F.2d 669 (D.C. Cir. 1985) ..... 10, 12

**Statutes**

21 U.S.C. § 802 ............................................................................................................ 2

21 U.S.C. § 812 ............................................................................................................ 14, 29

21 U.S.C. § 823 ............................................................................................................ 2

21 U.S.C. § 844 ............................................................................................................ 29

D.C. Code § 1-201.02 ................................................................................................... 14

D.C. Code § 1-203.02 ................................................................................................... 14

D.C. Code § 1-204.04 ................................................................................................... 43

D.C. Code § 1-204.22 ................................................................................................... 43

D.C. Code § 1-206.02 ................................................................................................... 14

D.C. Code § 12-309 ...................................................................................................... 45

D.C. Code § 1-301.86b ................................................................................................. 24

D.C. Code § 2-1831.16 ................................................................................................. 44

D.C. Code § 2-509 ........................................................................................................ 23

D.C. Code § 2-510 ........................................................................................................ 44

D.C. Code § 25-202 ................................................................................................... 4

D.C. Code § 48-901.02 ........................................................................................... 2, 33

D.C. Code § 48-904.01 ....................................................................................... passim

D.C. Code § 7-1671.01 ....................................................................................... passim

D.C. Code § 7-1671.05 ................................................................................... 4, 19, 36

D.C. Code § 7-1671.08 ................................................................................... 26, 27, 33

D.C. Code § 7-1671.08b ..................................................................................... 23, 24

D.C. Code § 7-1671.12a ........................................................................................... 23

D.C. Code § 7-1675.01 ............................................................................................. 24

D.C. Code §7-1671.08 ............................................................................................... 4

D.C. Law 18-210 ....................................................................................................... 3

Pub. L. 106-113 (1999) .............................................................................................. 3

Pub. L. No. 118-47 (March 9, 2024) ........................................................... 4, 14, 18, 19

**Treatises**

8 Moore's Federal Practice – Civil § 38.33 (2024) .................................................... 22

**Regulations**

21 C.F.R. § 1308.11 ................................................................................................... 2

23 DCMR § 1600.3(d) ............................................................................................... 23

**Constitutional Provisions**

U.S. Const. art I, § 8, cl. 3 ......................................................................................... 27

## INTRODUCTION

Plaintiffs—five businesses and one self-described alliance of recreational cannabis entities—seek to preliminarily enjoin the District of Columbia's statutory regime governing the licensing of medical cannabis businesses and prevent District agencies from taking any enforcement actions against businesses engaged in the commercial distribution of recreational cannabis. The commercial sale of cannabis is prohibited under federal law and the commercial sale of recreational cannabis—as opposed to medical cannabis—has been prohibited by District law for decades. Plaintiffs do not meet the standard for preliminary injunctive relief. Plaintiffs have submitted no evidence whatsoever to support their claims of irreparable harm, and Plaintiffs cannot rest on purported violations of constitutional rights alone to justify the extraordinary relief of a preliminary injunction. The equities and public interest strongly favor Defendants; creating a licensing regime for medical cannabis falls within the broad legislative powers granted to the District by Congress, and the District has a strong interest in regulating controlled substances. Lastly, Plaintiffs have failed to demonstrate a substantial likelihood of success on the merits of any of their myriad constitutional, statutory, and District law claims, none of which are supported by any exhibits or declarations, or any evidence at all. Plaintiffs' motions for preliminary injunction should be denied.

Defendants District of Columbia, Mayor Muriel Bowser, Office of the Mayor for the District of Columbia, Attorney General Brian L. Schwalb, Office of the Attorney General for the District of Columbia, Alcoholic Beverage and Cannabis Administration Director Fred Moosally, Alcoholic Beverage and Cannabis Administration, Department of Licensing and Consumer Protection Director Tiffany Crowe, Department of Licensing and Consumer Protection, Metropolitan Police Department, and Metropolitan Police Department Chief Pamela A. Smith

are referred to as the District Defendants or, collectively, the District.  The District Defendants

file this combined omnibus opposition to Plaintiffs' motions for preliminary injunction.

**BACKGROUND**

I.    <u>**The Federal and District of Columbia Controlled Substances Acts**</u>

Cannabis products are subject to complex regulation under federal and District law.

Under federal law, tetrahydrocannabinols—the psychoactive compound contained in cannabis

plants—and marijuana are classified as Schedule I substances.  21 C.F.R. § 1308.11.  Schedule I

drugs are subject to strict controls, and federal law only permits the manufacture and distribution

of Schedule I drugs for medical, scientific, research, or industrial purposes.  21 U.S.C. § 823.

Under federal law, "'marijuana' means all parts of the plant Cannabis sativa L., whether growing

or not; the seeds thereof; the resin extracted from any part of such plant; and every compound,

manufacture, salt derivative, mixture, or preparation of such plant, its seed, or resin."  21 U.S.C.

§ 802.[1]

Under District law, cannabis is a controlled substance and is defined as "all parts of the

plant genus Cannabis, including marijuana and hashish."  D.C. Code § 48-901.02(3).  Marijuana

is defined as "the leaves, stems, flowers, and seeds of all species of the plant genus Cannabis,

whether growing or not."  D.C. Code § 48-901.02(3)(A).  In 1998, District voters approved an

initiative that would have allowed patients to use cannabis for medical purposes under certain

circumstances.  *See* Committee of the Whole, Report on Bill 23-113, at 2 (Dec. 6, 2022).[2]

However, Congress blocked the implementation of the initiative until 2009.  *See, e.g.*, Pub. L.

---

[1]    This definition of marijuana does not include hemp or the mature stalks of a cannabis plant and derivatives.  21 U.S.C. § 802(16)(B).

[2]    Available at https://lims.dccouncil.gov/downloads/LIMS/46634/Committee_Report/B24-0113-Committee_Report3.pdf?Id=152331.

106-113, § 167 (1999).  In 2010, the District of Columbia Council (the Council) passed the

Legalization of Marijuana for Medical Treatment Amendment Act of 2010.  D.C. Law 18-210.

      In 2014, the Council enacted the Marijuana Possession Decriminalization Amendment

Act of 2014, which decriminalized the possession or transfer without remuneration of one ounce

or less of marijuana while retaining civil penalties.  *Kornegay v. United States*, 236 A.3d 414,

416 (D.C. 2020).  After that law was passed, the District's voters approved the Legalization of

Possession of Minimal Amounts of Marijuana for Personal Use Initiative of 2014, *see* D.C. Law

20-153 (2014), known as Initiative 71.  Initiative 71 made it lawful for any person 21 years of

age or older to take certain actions, including transferring "to another person 21 years of age or

older, without remuneration, marijuana weighing one ounce or less."  D.C. Code § 48-

904.01(a)(1).  The sale of cannabis remained unlawful.  *See id.*  Initiative 71 also excluded

"'[m]arijuana that is or was in the personal possession of a person 21 years of age or older at any

specific time if the total amount of marijuana that is or was in the possession of that person at

that time weighs or weighed 2 ounces or less,' certain marijuana plants, and certain marijuana

produced by those plants" from the definition of a controlled substance under District law.

*Kornegay*, 236 A.3d at 417 (quoting D.C. Law 20-153 § 2(b)).  After the approval of this

initiative, a number of businesses began holding themselves out as compliant with Initiative 71

and offering cannabis as a "gift" along with another purchase.  *See* Sophia Solano, *Keychains,*

*QR Codes and Other 'Gifts' People Buy to Get Pot in D.C.*, Washington Post (April 19, 2023),

available at https://www.washingtonpost.com/dc-md-va/2023/04/19/i-71-cannabis-gifting-

washington-dc/.

      In 2023, the District passed the Medical Cannabis Amendment Act of 2022, D.C. Law

24-332 (the 2022 Act), the first of a series of laws tailored to regulating the District's cannabis

market and opening avenues for businesses to obtain licenses to sell medical cannabis in the

District.  As a result of this legislation, the District's Alcoholic Beverage Regulation

Administration was renamed the Alcoholic Beverage and Cannabis Administration (ABCA) and

empowered to issue and regulate licenses to sell medical cannabis.  D.C. Law 24-332; *see* D.C.

Code § 25-202.  The 2022 Act empowered ABCA to investigate and conduct enforcement

actions against businesses that continued to sell or provide cannabis as part of a commercial

transaction without a medical cannabis license.  D.C. Law 24-332; *see* D.C. Code §§ 7-1671.05,

7-1671.08.

As of February 2024, 47 states and the District of Columbia allow for the use of cannabis

for medical purposes.  *State Medical Cannabis Laws*, U.S. Centers for Disease Control and

Prevention, available at https://www.cdc.gov/cannabis/about/state-medical-cannabis-laws.html

(last accessed Jan. 24, 2025).  Although cannabis continues to be classified as a Schedule I

substance under federal law, in each fiscal year since 2015, Congress has included provisions in

appropriations acts that prohibit the Department of Justice from using appropriated funds to

prevent states and the District of Columbia from implementing their own laws that authorize the

use, distribution, possession, or cultivation of medical marijuana.  *See*, *e.g.*, Further Consolidated

Appropriations Act of 2024, Pub. L. No. 118-47, § 809 (March 9, 2024).

## II.    **Plaintiffs' Allegations**

### A.    **Green Magic LLC**

Plaintiff Green Magic LLC (Green Magic) alleges it previously operated a business

located at 6234 Georgia Avenue, N.W. Washington, D.C. 20011, that offered "promotional and

marketing services."  Green Magic Mem. in Support of Pl.'s Mot. for Prelim. Inj. [12-2] ¶ 17

(Green Magic Mem.).  Green Magic's business allegedly facilitated "transfers of cannabis . . .

pursuant to D.C. Code § 48-904.01(a)(1)(B)." *Id.*  On August 7, 2024, Green Magic applied for

two licenses from ABCA: a conditional medical cannabis retailer license and an internet retailer

license. *Id.* ¶ 28.  While these applications were pending, the Department of Licensing and

Consumer Protection (DLCP) issued Green Magic a Notice of Infraction (NOI) in August 2024

for operating a medical cannabis retail establishment without a license or endorsement and

failure to obtain a Certificate of Occupancy (COO). *Id.* ¶ 29.  DLCP issued two fines, each in

the amount of $2,436.00. *Id.*  Green Magic appealed these violations and requested a hearing.

*Id.*  Green Magic alleges that, even though ABCA issued approval letters for its licenses on

October 16, 2024, Green Magic abandoned its business "[d]ue to fear that enforcement action

would affect its licenses." *Id.* ¶¶ 30–31.  The next day, ABCA issued a summary closure of the

premises.  *See* Ex. 1, Notice of Summary Action.  Green Magic alleges that, at the time, another

business, Coupons R US, occupied the premises. *Id.* ¶ 32.[3]

## B.    <u>Organix LLC</u>

Plaintiff Organix LLC (Organix) alleges it previously operated a business located at 721

D Street, S.E. Second Floor, Washington, D.C. 20004, that "sold art and apparel." Organix

Mem. in Support of Pl.'s Mot. for Prelim. Inj. [10-2] ¶ 22 (Organix Mem.).  Organix allegedly

facilitated "transfers of cannabis . . . pursuant to D.C. Code § 48-904.01(a)(1)(B)." *Id.*  Organix

did not apply for a medical cannabis license and admits that the District did not take any

administrative enforcement action against it. *Id.* ¶¶ 33–34.  Instead, "[f]earing imminent

enforcement from Defendants, Plaintiff ceased operations" sometime before filing its complaint.

---

[3]    ABCA issued the summary closure against Green Magic trading as Coupons R Us. *See* Ex. 1.  Upon notice of a burglary on the property and the subsequent recovery of cannabis, psilocybin, a handgun, and ammunition, ABCA issued the summary closure notice under D.C. Code §§ 7–1671.08(a), (f), (g)(1), (g)(2)(E), (F), (G), (h)(1), and 7–1671.12e(a). *See id.*

*Id.* ¶ 33.

### C. **Safe House**

Plaintiff The Safe House LLC (Safe House) alleges it previously operated a business located at 335 H Street, N.E. Unit 1, Washington D.C. 20002, that "sold art and apparel." Safe House Mem. in Support of Pl.'s Mot. for Prelim. Inj. [14-2] ¶ 17 (Safe House Mem.). Safe House allegedly facilitated "transfers of cannabis . . . pursuant to D.C. Code § 48-904.01(a)(1)(B)." *Id.* Safe House alleges that ABCA inspected the property on March 15, 2024, and on the same day, issued a warning letter. *Id.* ¶ 29. On July 1, 2024, Safe House applied for a conditional internet retailer license as well as a medical retailer cannabis license. *See* Ex. 2, ABCA Order ¶ 5. Two days later, on July 3, 2024, ABCA issued Safe House a cease-and-desist order based on illegal cannabis sales; on July 17, 2024, ABCA approved the conditional license applications, vacated the prior cease-and-desist order to update the order to reflect the license applications, and entered an amended cease-and-desist order. *Id.* at 2. ABCA affirmed the modified cease-and-desist order after a hearing on July 30, 2024. Ex. 3, Order Affirming Cease and Desist. Safe House has a pending appeal of the cease-and-desist order before the District of Columbia Court of Appeals. *See* Docket, *Safe House, LLC T/A Safe House v. D.C. Alcoholic Beverage and Cannabis Board*, Case No. 24-AA-0802 (filed Aug. 30, 2024). Concurrently, DLCP issued Safe House an NOI in August 2024 for operating a medical cannabis retail establishment without a license or endorsement and failure to obtain a Certificate of Occupancy (COO). Safe House Mem. ¶ 38. DLCP issued two fines, each in the amount of $2,436.00. *Id.* Safe House appealed these violations and requested a hearing. *Id.*

ABCA issued a Notice of Summary Closure related to events that occurred at the property on October 21, 2024. Safe House Mem. ¶¶ 39–40. Safe House contends that another

business, CBT, LLC, occupied the premises at the time.  Safe House Mem. ¶¶ 41–42.  ABCA subsequently dismissed the summary closure action against Safe House.  *Id.* ¶ 43.

### D.    **Alliance for Recreational Cannabis Entities**

Plaintiff Alliance for Recreational Cannabis Entities (Alliance) represents the interests of seven recreational cannabis entities in the District of Columbia, Maryland, and Virginia. Alliance Compl. [1] ¶ 6.  Alliance alleges that all but one of its members applied for licenses under the District's medical marijuana licensing scheme.  Alliance Mem. in Support of Pl.'s Mot. for Prelim. Inj. [6-1] ¶ 23 (Alliance Mem.).  According to Alliance, ABCA issued cease-and-desist orders to all its members; each member requested a hearing before the Alcoholic Beverage and Cannabis Board (ABC Board or the Board).  *Id.* ¶ 25.  Alliance alleges one of its members faced a summary closure.  *Id.*  Alliance further alleges that two of its members received NOIs from DLCP; both members requested hearings before the Office of Administrative Hearings (OAH).  *Id.* ¶ 33.  Alliance does not identify its members or provide any further specificity as to the precise nature of the enforcement actions it references.

### E.    **Elevated Tours and AR Logistics[4]**

Plaintiff Elevated Tours LLC (Elevated Tours) previously operated a business located at 2428 Wisconsin Avenue N.W., 2nd Floor, Washington, D.C. 20007, that provided guided sightseeing tours and allegedly facilitated the transfer of cannabis up to an ounce without remuneration under D.C. Code § 48-904.01(a)(1)(A) and (B).  Elevated Tours Compl. [1-2] ¶ 9. Elevated Tours alleges that it applied for a Medical Cannabis Retailer License on January 10,

---

[4]    Counsel for Elevated Tours and AR Logistics filed a motion for preliminary injunction in *Elevated Tours, LLC v. District of Columbia, et al.*, 24-cv-3538, [8].  The case caption includes *AR Logistics, LLC, v. District of Columbia, et al.*, 24-cv-3539, and the motion itself contains factual allegations relating to both Plaintiffs.

2024.  Elevated Tours Mem. in Support of Pl.'s Mot. for Prelim. Inj. [8-1] ¶ 17 (Elevated Tours and AR Logistics Mem.).  ABCA denied Elevated Tour's application on September 25, 2024, because Elevated Tour's business was located within 300 feet of a recreational center.  *Id.*

Plaintiff AR Logistics LLC (AR Logistics) operates a business at 1512 U Street N.W., 2nd Floor, Washington, D.C. 20009, that provides guided sightseeing tours, sells various goods, and allegedly facilitated the transfer of cannabis up to an ounce without remuneration under D.C. Code § 48-904.01(a)(1)(A) and (B).  AR Logistics Compl. [1-2] ¶ 9.  AR Logistics received a conditional license for cannabis manufacturing on November 30, 2023.  Elevated Tours and AR Logistics Mem. ¶ 3.  According to AR Logistics, ABCA inspected the property on April 25, 2024, and issued a warning letter based on illegal cannabis sales.  *Id.* ¶ 4.  On April 30, 2024, AR Logistics applied for medical cannabis retail license.  *Id.* ¶ 5.  ABCA issued AR Logistics a cease-and-desist order on July 31, 2024, which AR Logistics appealed.  *Id.* ¶ 6.  AR Logistics participated in a hearing on the cease-and-desist order on October 4, 2024; on November 20, 2024, AR Logistics entered a consent order agreeing to stop offering cannabis products.  *Id.* ¶¶ 7–8.

### III.  <u>Procedural History</u>

Alliance filed its lawsuit in this Court on November 7, 2024, *see* Alliance Compl. [1], and moved for preliminary injunction on December 11, 2024.  Alliance Mot. for Preliminary Injunction (Alliance Mot.) [6].  The five related Plaintiffs filed their respective suits in the District of Columbia Superior Court; the District removed all five lawsuits on December 19, 2024.  *See, e.g.*, AR Logistics Notice of Removal [1].  Plaintiffs Organix, Safe House, and Green Magic refiled their respective motions for preliminary injunction on December 27, 2024.  Organix Mot. for Prelim. Inj. [11], Safe House Mot. for Prelim. Inj. [14], Green Magic Mot. for

Prelim. Inj. [12].  At a hearing on January 2, 2025, the Court consolidated all six cases.  Plaintiffs AR Logistics and Elevated Tours subsequently joined the other Plaintiffs' pending motions for preliminary injunction.  Elevated Tours Mot. for Prelim. Inj. [8].

## LEGAL STANDARD

A preliminary injunction "is an 'extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'"  *Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).  To prevail on a motion for preliminary injunction, Plaintiffs must: "(1) establish a likelihood of 'succe[ss] on the merits;' (2) show 'irreparable harm in the absence of preliminary relief;' (3) demonstrate that the equities favor an injunction; and (4) persuade the court that 'an injunction is in the public interest.'"  *Trump v. Thompson*, 20 F.4th 10, 31 (D.C. 2021) (alteration in original).  The last two factors merge when the government opposes an injunction.  *See Nken v. Holder*, 556 U.S. 418, 435 (2009).  A plaintiff bears the burden of proving all four prongs of the standard before relief can be granted.  *See Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009).  A movant's evidentiary burden is "much higher" than a non-movant's burden at summary judgment and requires "substantial proof."  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

## ARGUMENT

## I.    Plaintiffs' Alleged Injuries Are Not Irreparable.

"[A] showing that irreparable injury is 'likely' is the *sine qua non* for obtaining a preliminary injunction—it is what justifies the extraordinary remedy of granting relief before the parties have had the opportunity fully to develop the evidence and fully to present their respective cases."  *See Medinatura, Inc. v. FDA*, 496 F. Supp. 3d 416, 460 (D.D.C. 2020) (quoting *Achagzai v. Broad. Bd. of Governors*, Civ. Action No. 14-768, 2016 U.S. Dist. LEXIS

14666, at *3 (D.D.C. Feb. 8, 2016)).  A movant's failure to make a sufficient showing of

irreparable harm is enough for a court to deny a motion for preliminary relief without

considering the other factors.  *See CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d

738, 747 (D.C. Cir. 1995).

"[T]o meet the standard for irreparable harm the movant must present sufficient evidence

that the purported injury is certain, great, actual, imminent, and beyond remediation." *Save Jobs

USA v. United States Dep't of Homeland Sec.*, 105 F. Supp. 3d 108, 112–13 (D.D.C. 2015).

"The movant must provide proof that the harm has occurred in the past and is likely to occur

again, or proof indicating that the harm is certain to occur in the near future." *Wisconsin Gas

Co. v. Federal Energy Regulatory Com.*, 758 F.2d 669, 674 (D.C. Cir. 1985).  Here, Plaintiffs

present no evidence supporting their claims of imminent harm at all.[5]  Plaintiffs' motions for

preliminary injunction should be denied on this basis alone.  *Mazurek*, 520 U.S. at 972 ("It

frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one

that should not be granted unless the movant, *by a clear showing*, carries the burden of

persuasion." (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure §

2948, pp. 129-130 (2d ed. 1995))); *Fisheries Survival Fund v. Jewell*, 236 F. Supp. 3d 332, 336

---

[5]     Although Plaintiffs Alliance, Green Magic, Organix, and Safe House each filed a verified
complaint, the verification statements simply state that the signatory believes the allegations that
he has personal knowledge of are true and otherwise relies on secondhand information.  *See, e.g.,*
Alliance Compl. at 41.  Similarly, Plaintiffs Elevated Tours and AR Logistics filed verified
complaints based upon the signatory's knowledge, information, and belief.  *See, e.g.*, Elevated
Tours Compl. at 61.  These verification statements do not identify which statements in the
complaint the signatory has personal knowledge of and cannot substitute for a declaration or
other evidence in support of allegations of imminent harm.  Nor do the exhibits Elevated Tours
and AR Logistics submitted along with their complaints—which concern only their applications
for medical cannabis licenses and the underlying administrative proceedings—constitute
evidence of irreparable harm.

(D.D.C. 2017) (explaining that plaintiffs "have the considerable burden of proving that their purported injuries are certain, great and actual—not theoretical—and imminent, creating a clear and present need for extraordinary equitable relief to prevent harm.") (quotation omitted)).

Even if the Court considers Plaintiffs' unsupported allegations of harm, Plaintiffs have failed to allege irreparable harm.  All Plaintiffs contend that the violation of constitutional rights is *per se* irreparable harm.  *See* Alliance Mem. at 38.[6]  The D.C. Circuit squarely rejected this argument in *Hanson v. Smith*, 120 F.4th 223 (D.C. Cir. 2024), noting that "[e]ven in the sensitive areas of freedom of speech and religion, where the risk of chilling protected conduct is especially high, we do not 'axiomatically' find that a plaintiff will suffer irreparable harm simply because it alleges a violation of its rights," *id.* at 244.  Rather, even when constitutional violations are alleged, a plaintiff still "must demonstrate injury that is sufficiently certain, persuasively demonstrated, and so clearly irremediable that it warrants a court reaching out to alter the status quo before the merits are resolved."  *Id.*  Plaintiffs have not done so here.

Nor do any of Plaintiffs' specific allegations suggest irreparable harm.  Plaintiffs Elevated Tours and AR Logistics do not advance any argument that they are facing imminent risk of irreparable harm or the destruction of their businesses in their motion for preliminary injunction.  *See* Elevated Tours Mem.  AR Logistics is continuing to operate "as a business offering tours and non-cannabis related goods," AR Logistics Compl. ¶ 60, and Elevated Tours does not allege that it is no longer able to operate as a business, *see generally* Elevated Tours Compl.  Elevated Tours and AR Logistics' motion for preliminary injunction should be denied.  *See Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)

---

[6]    The other Plaintiffs advance substantially similar arguments in their motions for preliminary injunction.  In the interest of readability, the District Defendants will only cite to one motion for common arguments.  Citations are to ECF page numbers.

(standing alone, a "movant's failure to show any irreparable harm is therefore grounds for refusing to issue a preliminary injunction").

Similarly, Plaintiff Alliance is a business group representing unidentified recreational cannabis entities and does not allege that it faces any harm itself.  Alliance Compl. ¶ 6.  Rather, Alliance broadly asserts in conclusory fashion that "Plaintiff members' businesses all face imminent destruction in their current forms."  Alliance Mem. at 37.  Without identifying its members and with no evidence to substantiate harm, Alliance fails to demonstrate irreparable injury.  *See*, *e.g.*, *Wisconsin Gas Co.*, 758 F.2d at 674 ("[T]he movant must show that the alleged harm will directly result from the action which the movant seeks to enjoin.").

Allegations by Green Magic, Organix, and Safe House fare no better.  Plaintiffs argue that their continued business existence is harmed by the District's medical cannabis licensing regime and enforcement actions against unlicensed cannabis businesses.  Safe House Mem. at 52.  "[T]he general rule in this Circuit is 'that economic harm does not constitute irreparable injury.'"  *Safari Int'l v. Jewell*, 47 F. Supp. 3d 29, 36 (D.D.C. 2014) (quoting *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1295 (D.C. Cir. 2009)).  "For economic harm to constitute irreparable injury, . . . Plaintiffs must adequately describe and quantify the level of harm its members face."  *Save Jobs USA*, 105 F. Supp. 3d at 115 (internal quotation omitted).  Here, Plaintiffs contend that their businesses are not based on the sale of cannabis; Green Magic contends that it operated a "promotional and marketing services" business, Green Magic Mem. ¶ 17; Organix contends that it operated a business that "sold art and apparel," Organix Mem. ¶ 22; and Safe House contends it also operated a business that "sold art and apparel," Safe House Mem. ¶ 17.  It is hard to understand how Plaintiffs are *not* transferring cannabis "for

remuneration," which they do not dispute violates District law, but their businesses face existential harm if they are not permitted to commercially distribute recreational cannabis.

Additionally, some Plaintiffs allege that they voluntarily vacated their business premises. Green Magic Mem. ¶ 31; Organix Mem. ¶ 33; Safe House Mem. ¶ 40.  Thus, there is no ongoing concern that they could possibly be harmed in the future, let alone immediately and irreparably. And, further, it "is well-settled that [a] preliminary injunction movant does not satisfy the irreparable harm criterion when the alleged harm is self-inflicted." *Safari Club Int'l v. Salazar*, 852 F. Supp. 2d 102, 123 (D.D.C. 2012).  Green Magic, Safe House, and Organix present no evidence that an injunction would allow them to resume their business operations or that an injunction would prevent any irreparable future harm to their businesses.  Indeed, Organix alleges that it "sought to re-open and found it challenging to enter into a new lease due to apprehensions from landlords that also fear enforcement from Defendants."  Organix Mem. ¶ 28. Organix offers no reason to suggest that, even with an injunction, landlords would be willing to lease to them to conduct a business that relies on the transfer of cannabis to be viable.

## II.    **The Balance of the Equities and Public Interest Favor the Status Quo.**

To assess the balance of the equities, the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."  *Winter*, 555 U.S. at 24 (quoting *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987)).  This balancing requires courts to "pay particular regard for the public consequences in employing the extraordinary remedy of the injunction."  *Id.* (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).  "[W]hen the issuance of a preliminary injunction, while preventing harm to one party, causes injury to the other, this factor does not weigh in favor of

granting preliminary injunctive relief." *Richardson v. Trump*, 496 F. Supp. 3d 165, 188 (D.D.C. 2020) (quoting *Converdyn v. Moniz*, 68 F. Supp. 3d 34, 53 (D.D.C. 2014)).

The District has a strong interest in enforcing its laws concerning medical cannabis and in regulating businesses, especially businesses that are involved in the commercial distribution of controlled substances. While federal law classifies marijuana as a Schedule I drug and does not recognize any medical uses for marijuana, *see* 21 U.S.C. § 812(b), the District has enacted its own regulatory regime under District law pursuant to the Home Rule Act. Two of the purposes of the Home Rule Act are "to delegate certain legislative powers to the District of Columbia" and to "grant to the inhabitants of the District of Columbia powers of local self-government." D.C. Code § 1-201.02(a). Subject to limited exceptions and constitutional constraints, "the legislative power of the District shall extend to all rightful subjects of legislation within the District." D.C. Code § 1-203.02. The regulation of controlled substances for purposes of District law, and the licensing of related businesses, falls within the broad legislative powers Congress has delegated to the District Council. And, while Congress has prohibited the District from using any funds to legalize or reduce the penalties for the use of recreational cannabis through its appropriations power, Congress has not prohibited the District from using local funds to legalize or reduce penalties for the use of medical cannabis. *See* Pub. L. No. 118-47, § 809. Nor has Congress exercised its authority over the District to disapprove or repeal the Medical Cannabis Amendment Act of 2022 or any subsequent amendments. *See* D.C. Code § 1-206.02(c)(1). Further, Congress has prohibited the Department of Justice from using appropriated funds to prevent states and the District of Columbia from implementing their own laws that authorize the use, distribution, possession, or cultivation of medical marijuana in each fiscal year since 2015. *See, e.g.,* Pub. L. No. 118-47, § 809; *see also United States v. Bilodeau*, 24 F.4th 705, 709 (1st

Cir. 2022). This "appropriations rider places a practical limit on federal prosecutors' ability to enforce the [Controlled Substances Act] with respect to certain conduct involving medical marijuana." *Bilodeau*, 24 F.4th at 709. Until Congress acts otherwise, the District has the power to spend local dollars to license, regulate, and enforce a medical cannabis regime within the District.

The crux of Plaintiffs' argument that the balance of equities tips in their favor is that Plaintiffs face irreparable harm because enforcement actions against the transfer of cannabis on their premises put Plaintiffs' "entire business model at risk." Alliance Mem. at 40. However, as Plaintiffs acknowledge, "cannabis is federally illegal under the Controlled Substance Act so Plaintiffs cannot claim a legal right to engage in cannabis-related activity." Pls.' Omnibus Mot. to Abstain and Remand [14] at 4. Further, it is undisputed that the commercial sale of recreational cannabis is prohibited under both District and federal law. Plaintiffs perplexingly argue both that their businesses are existentially threatened by potential enforcement of restrictions on the commercial distribution of cannabis and that they do not sell cannabis,[7] but Plaintiffs have provided no proof to support these seemingly contradictory statements. The unclean hands doctrine proscribes equitable relief when "an individual's misconduct has

---

[7]    *See* Alliance Compl. ¶ 6 (Alliance "is an alliance representing the recreational cannabis entities in the District of Columbia, Maryland, and Virginia."); Safe House Mem. at 52 ("[T]he transfer [of cannabis] without renumeration aspect is a notable driver of foot traffic for Plaintiff."); Green Magic Mem. ¶ 17 ("Plaintiff's business activities were associated with lawful cannabis transfers in accordance with District of Columbia law."); Organix Mem. ¶ 17 ("On its premises, transfers of cannabis occurred pursuant to D.C. Code § 48-904.01(a)(1)(B)."); AR Logistics Compl. ¶ 23 ("Plaintiff is a retail and service business where, as a non-commercial component, cannabis transfers occurred solely between adults aged 21 or older, limited to one ounce, and were merely offered to customers as an optional gift."); Elevated Tours Compl. ¶ 9 (Elevated Tours "does not sell cannabis, however, persons over 21 years old have transferred up to an ounce of cannabis to another person with renumeration on or about its premises within the framework of D.C. Code § 48-904.01(a)(1)(A) and (B).").

'immediate and necessary relation to the equity that he seeks.'" *Henderson v. United States*, 575 U.S. 622, 625 n.1 (2015) (quoting *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240 (1933)); *see also Bartko v. SEC*, 845 F.3d 1217, 1227 (D.C. Cir. 2017) ("Ultimately, the unclean hands doctrine rests on the principle that "he who comes into equity must come with clean hands." (quoting *Shondel v. McDermott*, 775 F.2d 859, 867–86 (7th Cir. 1985)).  At a minimum, Plaintiffs' allegations that District's medical cannabis licensing regime destroyed their businesses raise significant questions about Plaintiffs' businesses and whether the unclean hands doctrine bars the equitable relief Plaintiffs seek.

The District's interest in regulating the cannabis market within the District and limiting commercial distribution of cannabis to licensed medical cannabis retailers far outweighs Plaintiffs' interest in continuing to pursue a business model that requires the transfer of a controlled substance in clear violation of federal law and, at the least, without the licenses required by District law.  *Cf. Cardinal Health, Inc. v. Holder*, 846 F. Supp. 2d 203, 230 (D.D.C. 2012) ("The government has a strong interest in enforcing the CSA and ensuring that pharmaceutical drugs are not improperly diverted . . . ").  Accordingly, the balance of equities and public interest weigh in favor of denying Plaintiffs' request for preliminary injunctive relief.

## III.  **Plaintiffs Have Not Demonstrated a Likelihood of Success on the Merits.**

### A.  **Standing**

To obtain a preliminary injunction and show a substantial likelihood of success on the merits, Plaintiffs must "show a substantial likelihood of standing."  *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (internal quotation marks and citation omitted).  That is, Plaintiffs "must establish a substantial risk of future injury that is traceable to the Government defendants and likely to be redressed by an injunction against them."  *Murthy v.*

*Missouri*, 603 U.S. 43, 69 (2024). Plaintiffs "cannot 'rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts' that, if 'taken to be true,' demonstrate a substantial likelihood of standing." *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 377 (D.C. Cir. 2017) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). "[S]tanding is not dispensed in gross; rather [P]laintiffs must demonstrate standing . . . for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). As such, an injunction should be limited to "the injury in fact that the plaintiff has established." *Lewis v. Casey*, 518 U.S. 343, 357 (1996). Here, Plaintiffs seek an order enjoining the District Defendants from enforcing the Medical Cannabis Amendment Act of 2022 and related statutes and implementing regulations, "DLCP infractions, MPD criminal charges, and ABCA Board cease-and-desist and summary closure orders." Alliance Mot. at 1. As discussed above, Plaintiffs have not submitted any evidence along with their motions for preliminary injunction and accordingly cannot have demonstrated a substantial risk of future injury that is likely to be redressed by the injunction they seek. *See Jibril v. Mayorkas*, 20 F.4th 804, 812 (D.C. Cir. 2021) ("[F]or claims seeking prospective relief, a plaintiff must show a threatened injury that is currently impending or a substantial risk that the future harm will occur") (internal quotation omitted). Accordingly, Plaintiffs have not shown a substantial likelihood of success on the merits. [8]

Additionally, Alliance has not demonstrated standing for other reasons and therefore cannot show a substantial likelihood of success on the merits of any of its claims. Organizations can satisfy Article III standing requirements in one of two ways: "An organization can have

---

[8]    In addition to Plaintiffs' failure to demonstrate standing to seek prospective relief, some specific claims raise additional standing issues that are discussed further below.

standing on its own behalf or on behalf of its members." *Abigail All. for Better Access to Developmental Drugs v. Eschenbach*, 469 F.3d 129, 132 (D.C. Cir. 2006). Alliance makes no allegations suggesting that it has itself been injured—so it lacks organizational standing—and it falls far short of demonstrating that it has representational standing. "To establish representational standing, an association must demonstrate that (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 12–13 (D.C. Cir. 2011) (internal quotation marks and citations omitted). It is "not enough to aver that unidentified members have been injured." *Chamber of Commerce v. EPA*, 642 F.3d 192, 199 (D.C. Cir. 2011). Indeed, an organization must "identify members who have suffered the requisite harm," to satisfy the bedrock principle of standing. *Summers v. Earth Island Institute*, 555 U.S. 488, 499 (2009). Alliance utterly fails in this regard—it does not even identify its members or its organizational purpose—and it falls far short of demonstrating that it has standing.

### B. Plaintiffs' Federal Appropriations Act Claims

Plaintiffs contend that the District's medical cannabis program violates the federal Further Consolidated Appropriations Act of 2024 (the Act). *See* Alliance Mem. at 34. This argument is contrary to a plain reading of the statute. The Act provides that no funds from any source can be used by the District to "enact any law, rule, or regulation to legalize or otherwise reduce penalties associated with the possession, use, or distribution of any schedule I substance under the [CSA] or any tetrahydrocannabinols derivative *for recreational purposes*." Pub. L. No. 118-47, § 809 (emphasis added). However, the District is only prohibited from using *federal*

18

*funds* appropriated by the Act "to enact or carry out any law, rule, or regulation to legalize or otherwise reduce penalties associated with the possession, use, or distribution of any schedule I substance under the [CSA] or any tetrahydrocannabibols derivative." *Id.*  This distinction allows the District to use funds from other non-federal sources (such as local tax dollars) to regulate cannabis for non-recreational, *i.e.* medical, purposes.

Though their arguments are opaque, Plaintiffs seemingly assert that because the District's Medical Cannabis Amendment Act "expands the District's medical cannabis program," such an effort "is clearly an attempt to circumvent the Federal preemption on the District's ability to expand its recreational program," Alliance Mem. at 34, under the Act.  But Plaintiffs' contention that the District's medical cannabis scheme effectively creates a recreational market because: (1) individuals may self-certify that they have a qualifying medical condition; and, (2) ABCA, rather than the Department of Health, handles the medical cannabis program, does not lend itself to the conclusion Plaintiffs reach.  *See* Alliance Mem. at 34.  The District requires that self-certification be made under penalty of perjury and that the self-certification form must state that a willful false statement is subject to a fine of up to $1,000 or imprisonment for up to 180 days.  D.C. Code § 7-1671.05(b)(3).  Plaintiffs do not address the risk of criminal penalties for false self-certification or provide any citation or evidence that such self-certification is inappropriate.  Nor do Plaintiffs point to any evidence or legal authority to support their argument that it is inappropriate for ABCA, rather than the Department of Health, to handle the licensing regime for medical cannabis.

## C.    **Plaintiffs' Constitutional Claims**

Plaintiffs bring claims under the Seventh Amendment, the Fifth Amendment, the dormant Commerce Clause, the Contracts Clause, and the Fourth Amendment.  Three of the Plaintiffs—

Green Magic, Safe House, and Organix—also argue that they have demonstrated a substantial likelihood of success on the merits of a *Monell* claim.  Green Magic Mem. at 39; Safe House Mem. at 40; Organix Mem. at 40.  However, *Monell v. Department of Social Services*, 436 U.S. 658 (1978), lays out a theory of constitutional tort liability, it is not a stand-alone cause of action. *See Turner v. District of Columbia*, 2006 U.S. Dist. LEXIS 12578, at *24 (D.D.C., Mar. 7, 2006) ("*Monell* does not provide a substitute standard for proving a constitutional violation; it establishes an *additional* element of proof for constitutional claims against municipalities."). Plaintiffs' *Monell* claim should not be treated as a separate cause of action and, as discussed further below, Plaintiffs have not shown a substantial likelihood of success on the merits on any prerequisite constitutional claims.

### 1.     Seventh Amendment

Plaintiffs argue that ABC Board and DLCP proceedings violate the Seventh Amendment because the ABC Board can issue fines without a jury trial.  *See, e.g.*, Alliance Mem. at 17. However, no Plaintiff in this case contends that it was fined by the ABC Board.  Even when a party brings a facial challenge to the constitutionality of a statute, Article III requires an actual case or controversy.  *See Williams v. Lew*, 819 F.3d 466, 476 (D.C. Cir. 2016) ("But we know of no case stating that a facial challenge to the constitutionality of a statute itself suffices to establish standing, nor do we adopt such a holding.  Unless there is an actual Article III "Case[]" or "Controvers[y]" before us, we lack jurisdiction."); *see also see Cortes v. NLRB*, Case No. 23-2954, 2024 U.S. Dist. LEXIS 65196, at *12 (D.D.C. Apr. 10, 2024) (finding no standing because plaintiffs failed to allege a "here-and-now injury" as "Plaintiffs [were] not presently involved in proceedings before the NLRB.").  And, with respect to DLCP, only Plaintiffs Green Magic and Safe House argue that DLCP has assessed fines against them, Green Magic Mem. ¶ 29; Safe House Mem. ¶ 38; no other Plaintiff challenged any specific action by DLCP.

The Seventh Amendment guarantees the right to a jury trial in "[s]uits at common law." "'Suits at common law'" has been consistently interpreted to mean "'suits in which *legal* rights were to be ascertained and determined.'" *Granfinanciera v. Nordberg*, 492 U.S. 33, 42 (1989) (quoting *Parsons v. Bedford*, 3 Pet. 433, 447 (1830)). "To determine whether a particular action is a suit 'at common law,' courts examine both the nature of the issues involved and the nature of the remedy sought." *Am. Educ. Research Ass'n v. Public.Resource.Org, Inc.*, 78 F. Supp. 3d 542, 545 (D.D.C. 2015). "Specifically, the test for statutory actions involves two steps: (1) comparing the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity to determine whether the claim is legal or equitable in nature, and (2) examining the remedy sought and determining whether it is legal or equitable in nature." *Id.* However, "Congress may devise novel causes of action involving public rights free from the strictures of the Seventh Amendment if it assigns their adjudication to tribunals without statutory authority to employ juries as factfinders." *Granfinanciera*, 492 U.S. at 51.

The public rights exception to the Seventh Amendment permits certain matters to be assigned for agency adjudication "even though such proceedings would not afford the right to a jury trial." *SEC v. Jarkesy*, 603 U.S. 109, 120 (2024). Public rights are matters that historically could have been determined exclusively by the executive and legislative branches; "no involvement by an Article III court in the initial adjudication is necessary in such a case." *Id.* at 128. "[T]he public-rights doctrine applies to matters 'arising between the government and others, which from their nature do not require judicial determination yet are susceptible of it.'" *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325, 334 (2018) (quoting *Crowell v. Benson*, 285 U.S. 22, 50 (1932)). A grant of a patent, for example, is a public right because it "did not exist at common law" and "is a creature of state law." *Id.* at 335 (internal

quotations omitted).  Here, Plaintiffs challenge the District's administrative regimes for enforcing its business licensing regulations.  Plaintiffs contend that the rights at issue "are not part of a specialized regulatory scheme necessitating administrative adjudication," Alliance Mem. at 17, but do not explain further why this would be the case.  The District's business license scheme and specifically its medical cannabis licensing scheme are on their face specialized regulatory schemes that necessitate administrative adjudication.  *Cf. Hill v. National Transp. Safety Bd.*, 886 F.2d 1275, 1282 (10th Cir. 1989) ("Administrative proceedings regarding suspension of a pilot certificate involve the special expertise of the FAA and are not suits at common law for which a jury trial is required."); 8 Moore's Federal Practice – Civil § 38.33 (2024) ("Licensing clearly is a proper regulatory function under the public rights exception to the jury right requirement.").  In *Jarkesy*, on which Plaintiffs rely, *see e.g.* Alliance Mem. at 14–15, the Supreme Court found that the civil penalties at issue did not fall into the public rights exception and required a jury trial, but those were "claims whose causes of action are modeled on common law fraud and that provides a type of remedy available only in law courts." *Jarkesy*, 603 U.S. at 135.  Plaintiffs have not identified a similar common law analogue for enforcement of the District's licensing regime.

Plaintiffs also seemingly contend that, because the ABC Board considers whether a building is a nuisance, a jury trial is required for cease-and-desist or summary closure proceeding.  *See* Alliance Mem. at 18–19.  However, as the District of Columbia Court of Appeals has recognized, there is a "universally accepted rule that a jury trial may be bypassed when the court exercises its discretion in equity to abate a nuisance per se." *Carithers v. District of Columbia*, 326 A.2d 798, 802 (D.C. 1974).  "[T]he summary abatement of nuisances without judicial process or proceeding was well known to the common law long prior to the adoption of

the Constitution." *Lawton v. Steele*, 152 U.S. 133, 142 (1894). Even if the public rights

exception did not apply to these proceedings in their entirety—it does—a jury trial would not be

required for a cease-and-desist or summary closure proceeding because such actions sound in

equity.

### 2.    Procedural Due Process

Plaintiffs challenge various aspects of the ABC Board's hearing process, but Plaintiffs

have not shown a substantial likelihood of success on the merits of any of these challenges.

*First*, Plaintiffs argue that ABC Board hearings on cease-and-desist orders violate due process

because the burden of proof is placed on the business contesting the order. *See* Alliance Mem. at

20. Not so. The District of Columbia Administrative Procedures Act (DCAPA) governs ABC

Board hearings relating to cease-and-desist orders. *See* D.C. Code § 7-1671.12a(b)(2) ("[T]he

ABC Board shall conduct a hearing in accordance with the procedures set forth in Chapter 5 of

Title 2[.]"). Hearings on cease-and-desist orders are considered contested cases under the

DCAPA and as such demand that "the proponent of a rule or order" meet its burden of proof.

D.C. Code § 2-509(b); *see also* 23 DCMR § 1600.3(d) (stipulating that cease-and-desist hearings

are considered contested cases). Plaintiffs' argument necessarily fails.

*Second*, Plaintiffs contend that the ABC Board is not a neutral body because fines levied

by the Board are deposited in the Medical Cannabis Social Equity Fund. Alliance Mem. at 21;

*see* D.C. Code § 7-1671.08b. The Supreme Court has found that it "deprives a defendant in a

criminal case of due process of law, to subject his liberty or property to the judgment of a court

the judge of which has a direct, personal, substantial pecuniary interest in reaching a conclusion

against him in his case." *Tumey v. Ohio*, 273 U.S. 510, 523 (1927). To determine whether there

is an improper financial incentive, courts consider whether a scheme "would offer a possible

temptation to the average man as a judge to forget the burden of proof required to convict the

defendant, or might lead him not to hold the balance nice, clear, and true between the state and the accused." *Id.* at 532; *see also Ward v. Monroeville*, 409 U.S. 57, 60 (1972) (finding that a possible temptation "may also exist when the mayor's executive responsibilities for village finances may make him partisan to maintain the high level of contribution from the mayor's court").

That is not the case here.  District law directs that the first $100,000 of fines imposed pursuant to D.C. Code § 7-1675.01(d) be deposited into a Litigation Support Fund administered by the Office of Attorney General.  *See* D.C. Code § 1-301.86b.  Any additional revenue from fines is deposited in the Medical Cannabis Social Equity Fund.  *See* D.C. Code § 7-1675.01(d). This fund is administered by the Department of Small and Local Business Development in consultation with ABCA.  D.C. Code § 7-1671.08b(a).  In other words, the ABC Board does not administer or manage any funds collected from fines.  Plaintiffs suggest that the "Board would have an official motive to convict and to graduate the fine to help the financial needs of the Board's medical cannabis programs," Alliance Mem. at 21, but Plaintiffs have not identified any provisions that give the ABC Board control over the proceeds from fines.

Regardless, even if funds allocated to programs that the ABC Board is involved in could raise concerns in some circumstances, Plaintiffs allegations are more analogous to *Dugan v. Ohio*, 277 U.S. 61 (1923), than *Tumey* or *Ward*.  In *Dugan*, the plaintiff challenged a scheme where fines from criminal convictions went to a general fund that also paid salaries, including that of the mayor who adjudicated the case.  277 U.S. at 65.  The Court distinguished these circumstances from *Tumey*, partly because the mayor's salary was paid out of a general fund and "he receive[d] a salary in any event, whether he convict[ed] or acquit[ted]." *Id.*  Plaintiffs here have made no allegations to suggest that any ABC Board member's compensation is in any way

dependent on or connected to any fines and, unlike in *Ward*, have not demonstrated that the fees at issue are such a significant portion of a budget that they could influence the Board's decision making.

*Third*, Plaintiffs argue that the ABC Board inappropriately acts as both prosecutor and judge in violation of due process. *See* Alliance Mem. at 21–22. However, Plaintiffs only allege that the Board Chairman both has a role in calling witnesses for the government, cross-examining the accused's witnesses, examining evidence, and objecting to questions, and in recommending a decision to the Board at a summary closure hearing. *Id.* at 22. The case Plaintiffs rely on to suggest this violates due process is wholly inapposite; *Williams v. Pennsylvania*, 579 U.S. 1 (2016), concerned an instance where the judge "had an earlier significant, personal involvement as a prosecutor in a critical decision in the defendant's case," *id.* at 16. Plaintiffs have presented no evidence or legal support to suggest that the Chairman's role in the presentation of evidence at an ABC Board hearing somehow improperly converts the Chairman into an investigator or prosecutor or otherwise violates due process.

*Fourth*, Plaintiffs challenge the ABC Board's "closed-door fact-finding hearings prior to issuing cease-and-desist orders or summary closures, relying solely on *ex parte* communications and the testimony of a single investigator." Alliance Mem. at 22. Plaintiffs contend that they are entitled to a pre-deprivation hearing before the issuance of a cease-and-desist or a summary closure. *Id.* at 22–23. Again, Plaintiffs are incorrect. "[T]he due process clause requires, at minimum, that the government provide notice and some kind of hearing before final deprivation of a property interest." *Propert v. District of Columbia*, 948 F. 2d 1327, 1331 (D.C. Cir. 1991). "[T]he contours of due process are flexible and vary depending on the circumstances of a given case." *Id.* at 1332. In "extraordinary situations where some valid governmental interest is at

stake that justifies postponing the hearing until after the event," a post-deprivation hearing can satisfy due process. *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971).

Plaintiffs are not entitled to a hearing prior to the issuance of a cease-and-desist order. A cease-and-desist order by the ABC Board is an order directing an entity to stop commercial transactions involving cannabis in violation of the law. *See, e.g.*, Ex. 2. An order to cease illegal activity is not a final deprivation of a property interest, and Plaintiffs have not identified any authority suggesting otherwise.

With respect to summary closures, the ABC Board can summarily close a business if "after an inspection, ABCA determines that an unlicensed establishment presents an imminent danger to the health or safety of the public." D.C. Code § 7-1671.08(g)(1). In the event of a summary closure, the owner of an unlicensed business has five business days to request a hearing with the ABC Board; the Board is required to hold a hearing within five business days of a timely request and issue a written decision within five business days of a hearing. D.C. Code § 7-1671.08(g)(5). In determining whether a post-deprivation hearing is sufficient, "the *Mathews v. Elridge* factors guide the analysis, weighing the private interest affected, the risk of erroneously depriving that interest, and additional safeguards' likely value against the government's interests." *Smith v. District of Columbia*, 387 F. Supp. 3d 8, 32 (D.D.C. 2019) (citing *Mathews v. Elridge*, 424 U.S. 319, 225 (1976)).

Here, the *Mathews* factors weigh in favor of the District. The District has a significant interest in protecting public health and safety and requiring a pre-deprivation hearing would interfere with the District's ability to promptly close businesses that present a danger to the health and safety of the public. *See Johnson v. District of Columbia Dep't of Health*, 163 A.3d 746, 753 (D.C. 2017) (noting that "[a] licensing agency has broad discretion to suspend or

revoke a license for reasonable cause in order to protect public health, safety, or morals.")
(quotation omitted)).  The risk of erroneous deprivation is mitigated by the requirements in the
statute for a timely hearing; in the event of a summary closure, a business owner is entitled to a
written decision from the ABC Board within ten business days of requesting a hearing.  *See* D.C.
Code § 7-1671.08(g)(5).  Additionally, if the closure is based on a business's failure to comply
with a cease-and-desist order, the business would have previously had the opportunity to appeal
the cease-and-desist order, which also reduces the risk of erroneous deprivation.  Lastly, while
Plaintiffs have an economic interest in being able to operate their businesses, Plaintiffs' business
interests rely on commercial transactions involving recreational cannabis, which violate District
law.  Overall, these factors weigh in favor of post-deprivation hearings and Plaintiffs have not
demonstrated a substantial likelihood of success on the merits of their procedural due process
claims.  *See Gonzalez-Droz v. Gonzalez-Colon*, 660 F.3d 1, 13–14 (1st Cir. 2011) (applying the
*Mathews* factors to a challenge to a post-deprivation hearing on a provisional license suspension
and noting that "[e]specially in cases involving public health and safety and the integrity of
professional licensure, the force of [the possible risk of erroneous deprivation and the possible
benefit of additional safeguards] is significantly diminished by the availability of prompt post-
deprivation review").

### 3.    The Dormant Commerce Clause

Under Article I Section 8 of the Constitution, Congress has the authority, "[t]o regulate
Commerce . . . among the several States."  U.S. Const. art I, § 8, cl. 3.  The dormant Commerce
Clause is a judicially created corollary to Congress's affirmative power and is one of "negative
implication . . . driven by concern about 'economic protectionism, that is, regulatory measures
designed to benefit in-state economic interests by burdening out-of-state competitors.'"  *Dep't of
Revenue of Ky. v. Davis*, 553 U.S. 328, 337–38 (2008) (quoting *New Energy Co. of Ind. v.*

*Limbach*, 486 U.S. 269, 273–74 (1988)).  The dormant Commerce Clause "prevents a State from jeopardizing the welfare of the Nation as a whole by placing burdens on the flow of commerce across its borders that commerce wholly within those borders would not bear."  *Am. Trucking Ass'n v. Mich. Pub. Serv. Comm'n*, 545 U.S. 429, 433 (2005).

To determine the applicability of the dormant Commerce Clause, courts must first ask "whether [the] challenged law discriminates against interstate commerce," *Davis*, 553 U.S. at 338 (citation omitted), or determine if the law's "effect is to favor in-state economic interests over out-of-state interests."  *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579 (1986).  Should the dormant Commerce Clause apply, a law "survives only if it 'advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives.'"  *Davis*, 553 U.S. at 338 (quoting *Oregon Waste Sys. v. Dep't of Envtl. Quality*, 511 U.S. 93, 99–101 (1994)).  "[N]ondiscriminatory regulations that have only incidental effects on interstate commerce are valid unless 'the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.'"  *Oregon Waste Sys., Inc.*, 511 U.S. at 99 (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)).

Plaintiffs challenge the District's cannabis regulatory licensing scheme, specifically the statute's residency preferences, under the dormant Commerce Clause.  *See* Alliance Mem. 24–26.  In doing so, Plaintiffs erroneously suggest that "numerous District Courts have ruled on similar regulatory cannabis licensing schemes, and all applied the heightened level of dormant Commerce Clause scrutiny."  *Id.* at 25.  Not quite.  For one, almost all cases relied upon by Plaintiffs, bar one, assumed without analysis that the dormant Commerce Clause should apply to state licensing schemes for cannabis irrespective of the illicit status of cannabis at the federal level.  *See NPG, LLC v. City of Portland*, No. 2:20-CV-00208, 2020 U.S. Dist. LEXIS 146958,

at *24–27 (D. Me. Aug. 14, 2020); *Variscite NY One v. New York*, 640 F. Supp. 3d 232, 239–40

(N.D.N.Y. 2022); *Toigo v. Dep't of Health and Senior Servs.*, 549 F. Supp. 3d 985, 990–96

(W.D. Mo. 2021).[9]  For another, numerous courts have concluded precisely the opposite,

reasoning that, because cannabis is illegal at the federal level under the Controlled Substances

Act, 21 U.S.C. §§ 812(c)(10), 844(a), the dormant Commerce Clause does not apply.  *See*

*Peridot Tree WA Inc.*, 3:23-cv-06111, 2024 U.S. Dist. LEXIS 3213, at *3 (W.D. Wash. Jan. 5,

2024) ("[T]he dormant Commerce Clause does not protect a right to participate in an interstate

market that Congress has declared illegal."); *Variscite NY Four, LLC*, 1:23-cv-01599, 2024 U.S.

Dist. LEXIS 18357, at *12 (N.D.N.Y. Feb. 2, 2024) ("Given that the national market for

cannabis is illegal, it would make little sense to apply the dormant Commerce Clause to New

York's cannabis licensing scheme."); *Brinkmeyer v. Wash. State Liquor & Cannabis Bd.*, Civ.

No. C20-5661, 2023 U.S. Dist. LEXIS 20564, at *27–28  (W.D. Wash. Feb. 7, 2023) ("The

dormant Commerce Clause does not apply to federally illegal markets, including Washington's

cannabis market and, thus, it does not apply to Washington's residency requirements."); *Viridis*

*Labs., v. Kluytman*, No. 1:22-cv-283, 2023 U.S. Dist. LEXIS 132385, at *4 (W.D. Mich. July 31,

2023) ("It is not clear to this Court how the dormant Commerce Clause can be read to protect

illegal interstate commerce.").

     Indeed, "[i]t is an open question whether the dormant Commerce Clause applies to the

cannabis industry." *Jensen v. Md. Cannabis Admin.*, 719 F. Supp. 3d 466, 481 (D. Md. 2024);

---

[9]     Plaintiffs also rely on *Ne. Patients Grp. v. Maine Dep't of Admin. & Fin. Servs.*, 554 F. Supp. 3d 177, 180 (D. Me. 2021) *aff'd by* 45 F.4th 542 (1st Cit. 2022), which included a more fulsome analysis of the dormant Commerce Clause's applicability to cannabis licensing regimes and determined that Maine's residency requirements ran afoul of the dormant Commerce Clause. To date, the First Circuit is the only Circuit to opine on this question.  This authority, of course, is not binding on the Court.

*see also Ne. Patients Grp.*, 45 F.4th at 559 (Gelpi, J., dissenting) ("The Commerce Clause does not recognize an interest in promoting a competitive market in illegal goods or services or forestalling hypothetical interstate rivalries in the same.").  Thus, at this stage in the proceedings, and considering the split in authority on the applicability of the dormant Commerce Clause to cannabis licensing schemes and Plaintiffs' failure to submit any evidence to establish that they themselves have been impacted by the application of any residency preference, Plaintiffs cannot show a substantial likelihood of success on the merits.  *See Variscite NY Four*, 2024 U.S. Dist. LEXIS 18357, at *28 (denying preliminary injunction as Plaintiffs failed to demonstrate a likelihood of success on the merits given conflicting caselaw).  *Cf. Sherley*, 644 F.3d at 393 (noting likelihood of success on the merits "is an independent, free-standing requirement for a preliminary injunction.").

### 4.    Due Process Void for Vagueness

"A law may be vague in violation of the Due Process Clause for either of two reasons: 'First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize or even encourage arbitrary and discriminatory enforcement.'"  *Act Now to Stop War & End Racism Coal. v. District of Columbia*, 846 F.3d 391, 409 (D.C. Cir. 2017) (quoting *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999)).  The rules of statutory interpretation "consistently favor that interpretation of legislation which supports its constitutionality."  *United States v. Bronstein*, 849 F.3d 1101, 1106 (D.C. Cir. 2017) (quoting *Screws v. United States*, 325 U.S. 91, 98 (1945)); *see also id.* ("'Only if no construction can save the Act from this claim of unconstitutionality are we willing to' strike the statute.") (quoting *Screws*, 325 U.S. at 100)).  Plaintiffs contend that the District's medical cannabis statutes are vague because D.C. Code § 48-904.01(a)(1)(B) and D.C. Code § 7-1671.01 create regulatory ambiguity.  *See* Green Magic Mem. at 27.  However, the District's medical

cannabis statutes provide appropriate notice and do not authorize arbitrary or discriminatory enforcement.

In assessing a vagueness challenge, "[w]ords receive their 'plain, obvious, and common sense' meaning, 'unless context furnishes some ground to control, qualify, or enlarge it.'" *Bronstein*, 849 F.3d at 1107 (quoting Joseph Story, Commentaries on the Constitution of the United States 157–58 (1833)).  D.C. Code § 48-904.01 provides that it is unlawful for any person to manufacture, distribute, or possess, with intent to manufacture or distribute, a controlled substance.  D.C. Code § 48-904.01(a)(1) provides an exception, stating that "it shall be lawful, and shall not be an offense under District of Columbia law, for any person 21 years of age or older to" to possess, use, purchase, or transport "marijuana weighing two ounces or less" or to "[t]ransfer to another person 21 years of age or older, without remuneration, marijuana weighing one ounce or less."  "'[R]emuneration' can encompass any kind of reward or compensation, not just money."  *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 278 (2018); *see also United States ex re. Martin v. Hathaway*, 63 F.4th 1043, 1048 (6th Cir. 2023) (discussing remuneration "as something 'paid' or transferred").  Under D.C. Code § 7-1671.01, an "[u]nlicensed establishment" is "a sole proprietorship, partnership, or other business entity that: (A) [s]ells, exchanges as part of a commercial transaction, or delivers cannabis and cannabis products; (B) [o]perates at or delivers from a specific location in the District; and (C) [i]s not licensed by ABCA as a cultivation center, retailer, internet retailer, manufacturer, courier or testing laboratory."  There is no conflict between a District statute allowing the transfer of cannabis between individuals without "any kind of reward or compensation," *Wis. Cent. Ltd.*, 585 U.S. at 278, and a restriction on the sale or exchange of cannabis as part of a commercial transaction,

which inherently involves some kind of reward or compensation, to those businesses with medical cannabis licenses.

Plaintiffs also point to the definitions of "distribute" and "commercial transaction" and contend that they are vague because it is unclear how they interact with D.C. Code § 48-904.01(a)(1)(B).  Green Magic Mem at 27.  But Plaintiffs do not contend that the definition of distribute as "the actual, constructive, or attempted transfer from one person to another" is ambiguous.  Nor that the definition of a commercial transaction is vague on its face.  D.C. Code § 7-1671.01(22).  Plaintiffs only argue that it is unclear how these statutes interact with D.C. Code § 48-904.01(a)(1)(B).  Green Magic Mem. at 27.  But, as discussed above, there is no conflict that needs to be resolved.

Further, "a statute is unconstitutionally vague if, applying the rules for interpreting legal texts, its meaning specifies no standard of conduct at all."  *Bronstein*, 849 F.3d at 1107.  Here, the statutes at issue serve two independent functions: one specifies what activity involving marijuana constitutes a criminal offense and the other identifies what activity involving a sale or commercial exchange requires a medical cannabis license.  The two statutes both specify standards of conduct by their plain text and ordinary meaning.

Plaintiffs also advance an opaque vagueness argument concerning the District's medical cannabis testing requirements for medical marijuana.  Green Magic Mem. at 28.  Plaintiffs' argument is seemingly that because the ABC Board previously allowed self-certification in the past (relating to quality) but now requires lab testing, the change suggests "arbitrary enforcement of vague statutes."  *Id.*  Left unsaid is how the enforcement is arbitrary or how it would be caused by a change in statute.  Outside of Plaintiffs' unsupported assertion, Plaintiffs offer no

support to suggest that a change in law or practice lends itself to an unconstitutionally vague statute.

Plaintiffs also suggest that the District's definition of cannabis is contradictory. *Id.* But Plaintiffs mischaracterize the statutes; cannabis is defined as "all parts of the plant genus Cannabis, including both marijuana and hashish." D.C. Code § 48-901.02(3). Marijuana is a subcategory of cannabis with its own, more specific definition. *Id.* § 48-901.02(3)(A). In the subchapter related to the District's medical cannabis licensing program, cannabis is defined by reference to D.C. Code § 48-901.02(3). *See* D.C. Code § 7-1671.01(2A). There is no contradiction: both statutes use the same definition of cannabis. Plaintiffs have not demonstrated a likelihood of success on the merits of their claims that the District's medical cannabis statutes are void for vagueness.

### 5.    Fifth Amendment Takings Claim

The Fifth Amendment "prohibits the taking of private property for public use without just compensation." *Full Value Advisors, LLC v. SEC*, 633 F.31 1101, 1109 (D.C. Cir. 2011). "A 'regulatory taking' is one in which a government regulation is 'so onerous that its effect is tantamount to a direct appropriation or ouster.'" *Id.* (quoting *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005)). "To constitute a regulatory taking, the Government action must (1) affect a property interest and (2) go 'too far' in so doing (i.e. amount to a deprivation of all or most economic use or a permanent physical invasion of property)." *Id.* (citing *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1000–01, 1005 (1984)).

Under D.C. Code § 7-1671.08(g)(1), the ABC Board can summarily close a business if "after an inspection, ABCA determines that an unlicensed establishment presents an imminent danger to the health or safety of the public." Plaintiffs contend that summary closure under this provision constitutes a regulatory taking. Alliance Mem. at 29–30. But it is a well-established

principle that restrictions on property for public health and safety do not constitute a taking. "[A]ll property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community, and the Takings Clause did not transform that principle to one that requires compensation whenever the State asserts its power to enforce it." *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 491 (1987) (internal quotation and citations omitted); *see also Mugler v. Kansas*, 123 U.S. 623, 668–69 (1887) ("A prohibition simply upon the use of property for purposes that are declared, by valid legislation, to be injurious to the health, morals, or safety of the community, cannot, in any just sense, be deemed a taking or an appropriation of property for the public benefit.").

Such governmental authority extends to property seized, or here, any cannabis and cannabis products taken during the summary closure process. "The government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain." *Bennis v. Michigan*, 516 U.S. 442, 452 (1996); *see also Tate v. District of Columbia*, 627 F.3d 904, 909 (D.C. Cir. 2010), *cert. denied*, 179 L. Ed. 2d 1198 (2011). "[W]hen the state acts pursuant to its police power, rather than the power of eminent domain, its actions do not constitute a taking for purposes of the Takings Clause." *Lech v. Jackson*, 791 Fed. App'x 711, 717 (10th Cir. 2019); *see also Amerisource Corp. v. United States*, 525 F.3d 1149, 1153 (Fed. Cir. 2008) ("Property seized and retained pursuant to the police power is not taken for a 'public use' in the context of the Takings Clause."). *Cf. United States v. $7,990.00 in U.S. Currency*, 170 F.3d 843, 845 (8th Cir. 1999) ("[T]he forfeiture of contraband is an exercise of the government's police power, not its eminent domain power."). Plaintiffs have not plausibly alleged, let alone demonstrated, a taking.

### 6.    Contracts Clause

"The Contracts Clause restricts the power of States to disrupt contractual arrangements." *Sveen v. Melin*, 584 U.S. 811, 818 (2018).  To determine whether a law violates the Contracts Clause, courts first consider whether the state law has "operated as a substantial impairment of a contractual relationship." *Id.* at 819 (quoting *Allied Structural Steel Co. v. Spannaus*, 428 U.S. 234, 244 (1978)).  "In answering that question, the Court has considered the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights." *Id.*  If there is a substantial impairment, the second step of the inquiry is whether the changes to the rights and responsibilities of the contracting party was based upon "reasonable conditions" and "of a character appropriate to the public purpose justifying the legislation's adoption." *Energy Reserves Group v. Kan. Power & Light Co.*, 459 U.S. 400, 412 (1983) (internal quotation and alterations omitted).

Plaintiffs contend that ABCA's enforcement powers under the medical cannabis statutes have impaired the contractual relationship between property owners and cannabis businesses. *See* Alliance Mem. at 31.  Plaintiffs further contend that the "lease agreements between [Plaintiffs] and the property owners were terminated due to enforcement action and fear of enforcement action under these statutes." *Id.*  Plaintiffs seemingly argue that their contracts were significantly impaired because commercial property owners and recreational cannabis businesses "agreed to terminate the lease[s] to avoid potential penalties." *Id.*  This is wholly unsupported. As noted above, Plaintiffs have not provided any evidence concerning the contractual relationships at issue.  Presumably, Plaintiffs were leasing commercial property from a commercial property owner.  But that is for Plaintiffs to demonstrate; Plaintiffs have not provided any evidence of the existence of a contractual relationship, let alone the terms of such

an agreement or any restriction on Plaintiffs' ability to engage in recreational cannabis business activity. By Plaintiffs' own admission, they contend that they decided to stop operating recreational cannabis businesses due to the potential for enforcement action and accordingly cancelled their leases, *see id.*, not that the medical cannabis statute impacted their contractual relationship with their landlords.

Further, Plaintiffs could not have had a reasonable expectation of conducting recreational cannabis businesses free from the risk of enforcement action or regulation. "Whether impairment [of a contract right] is substantial turns in part on the parties' reasonable expectations." *Fraternal Order of Police v. District of Columbia*, 45 F.4th 954, 961 (D.C. Cir. 2022). Cannabis has been illegal under federal law for decades and, other than the District's medical cannabis licensing scheme, the commercial sale of cannabis is and has been illegal under District law, *see supra* Background. *Cf. Fraternal Order of Police*, 45 F.4th at 961 ("[T]he D.C. government has heavily regulated collective bargaining for decades, so the union was on notice that future statutory changes were likely."). Plaintiffs' paradoxical argument is seemingly that it frustrates their reasonable expectations for the District to take enforcement actions against activity that has been federally illegal for decades, and which remains illegal under District law. Such expectations simply cannot have been reasonable.

Even if the Court were to find that legislation empowering ABCA to take enforcement action against recreational cannabis businesses substantially impaired Plaintiffs' contracts with commercial property owners, the impairment is based on reasonable conditions and is justified by a significant public purpose. The District's medical cannabis laws provide that ABCA can take enforcement action against cannabis businesses that are not licensed medical cannabis providers. D.C. Code §§ 7-1671.05, 7-1671.08. Plaintiffs contend that this statute is not

reasonable because "[l]egal activities pursuant to D.C. Code § 48-904.01 that occurred on Plaintiff's premises have been mischaracterized as violations of D.C. Code Title 7, Chapter 16B, solely because they took place on commercial premises, which is unreasonable." Alliance Mem. at 32. The District government has a significant interest in public health and safety and in licensing businesses and it is reasonable for the District to take action against businesses that are non-compliant with District licensing requirements. Plaintiffs argue that the District's cannabis licensing regime is not in the public interest because any transfers on Plaintiffs' premises "were conducted in compliance with D.C. Code § 48-904.01(a)(1)(B)." Alliance Mem. at 31. Plaintiffs' argument overreads D.C. Code § 48-904.01(a)(1)(B); this provision establishes that it is lawful—*i.e.*, not a criminal offense—for one individual over 21 to transfer a small amount of marijuana *without remuneration* to another individual over 21. This provision does not remove cannabis from the realm of public regulation or prevent the District from taking civil enforcement actions against unlicensed recreational cannabis businesses. If a state law deals with a "broad, generalized economic or social problem" and operates in an area "already subject to state regulation," those factors weigh in favor of finding that a statute serves a significant and legitimate public purpose. *See Fraternal Order of Police*, 45 F.4th at 961 (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 249–50 (1978)). Here, the District's medical cannabis laws clearly meet both of those factors.

Plaintiffs also contend that provisions of the District's medical cannabis statutes "discriminate against businesses engaged in lawful activities where individuals aged 21 or older transfer up to one ounce of cannabis without remuneration, possess up to two ounces, or store cannabis not exceeding two ounces per person." Alliance Mem. at 33. Plaintiffs' suggestion that the District's enforcement actions against non-compliant recreational cannabis businesses reflect

constitutional discrimination is confounding.  D.C. Code § 48-904.01(a)(1)(B) designates certain activity by individuals as lawful, it does not prevent District agencies from regulating businesses or pursuing administrative enforcement actions against businesses as provided by law.  Plaintiffs have not demonstrated a likelihood of success on the merits on their Contracts Clause claim.

### 7.    Fourth Amendment Claims

Plaintiffs contend that the District's medical cannabis laws violate the Fourth Amendment because they grant ABCA the power to inspect unlicensed cannabis businesses. Alliance Mem. at 37.  However, Plaintiffs have not alleged, let alone provided evidence to suggest, that any of Plaintiffs' business premises were searched in violation of the Fourth Amendment.  At most, some of the Plaintiffs have alleged that an ABCA investigator investigated their premises, *see, e.g.*, AR Logistics Compl. ¶ 52, but no Plaintiffs contend that an investigator looked at any non-public areas of the commercial business or argue in their motions that any such inspection violated the Fourth Amendment.[10]  Even when a party brings a facial challenge to the constitutionality of a statute, Article III requires an actual case or controversy. *See Williams*, 819 F.3d at 476.

Further, "the ultimate touchstone of the Fourth Amendment is reasonableness."  *Riley v. California*, 573 U.S. 373, 381 (2014) (internal quotation omitted).  As the Supreme Court has recognized, "the owner or operator of commercial premises in a 'closely regulated' industry has a reduced expectation of privacy" and "a warrantless inspection of commercial premises may well be reasonable within the meaning of the Fourth Amendment."  *New York v. Burger*, 482 U.S. 691, 702 (1987).  Here, there can be no dispute that medical cannabis businesses have a

---

[10]    After a report of a burglary on Green Magic's business premises, MPD obtained an emergency search warrant to search that establishment.  Ex. 1.  Plaintiffs make no allegations concerning that search.

"particularly attenuated" expectation in privacy.  *Id.* at 716 n.27.  Cannabis is a controlled

substance that is strictly regulated under federal law and closely regulated under District law.  *Cf.*

*United States v. Motley*, 89 F.4th 777, 786 (9th Cir. 2023) (finding no objectively reasonable

expectation of privacy in prescription opioid records "[g]iven the long-standing and pervasive

regulation of opioids").  Accordingly, a warrantless inspection of the public-facing areas of a

commercial premises that distributes cannabis "may well be reasonable within the meaning of

the Fourth Amendment."  *Burger*, 482 U.S. at 702.  In the absence of allegations concerning an

actual search, no as-applied reasonableness analysis can be performed.  Because Plaintiffs have

not identified any searches that purportedly violated the Fourth Amendment, they cannot show a

substantial likelihood of success on the merits.

### 8.    Equal Protection

Plaintiffs Elevated Tours and AR Logistics bring a Fifth Amendment equal protection

challenge to the differential treatment between social equity applicants for medical cannabis

licenses—described below—and other applicants, and between businesses who had business

licenses before and after December 31, 2022.  Elevated Tours Mem. at 3.  "If a law neither

burdens a fundamental right nor targets a suspect class, [courts] will uphold the legislative

classification so long as it bears a rational relation to some legitimate end."  *Dixon v. District of*

*Columbia*, 666 F.3d 1337, 1342 (D.C. Cir. 2011).  Here, Plaintiffs do not contend that either

classification burdens a fundamental right or targets a suspect class.  *See generally* Elevated

Tours Mem.  Accordingly, the laws are subject to rational basis review and are "entitled to the

presumption of rationality."  *Dixon*, 666 F.3d at 1342.  "In areas of social and economic policy, a

statutory classification that neither proceeds along suspect lines nor infringes fundamental

constitutional rights must be upheld against equal protection challenge if there is any reasonably

conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Communications*, 508 U.S. 307, 313 (1993).

D.C. Code § 7-1671.01(20C) defines a "social equity applicant" as an applicant for licensure with ABCA who satisfies two or more of the following criteria: (a) the "applicant has at least one owner who is a District resident, individually or collectively owns at least 50% of the business, and is a returning citizen"; (b) the "applicant has at least one owner who is a District resident, individually or collectively owns at least 50% of the business, and is married to or in a civil union, has a child, or is the child of a person or has a non-parent legal guardian, grandparent, or a sibling who is or has been arrested, convicted, or incarcerated in the District or in any other jurisdiction for a cannabis or drug-related offense"; or (c) the "applicant has at least one owner who is a District resident, individually or collectively owns at least 50% of the business and has an income that does not exceed 150% of the median family income as set forth by the United States Department of Housing and Urban Development, adjusted for household size, at the time the applicant submits the application." A returning citizen "means a District resident who was arrested, convicted, or incarcerated for a cannabis or drug-related offense." D.C. Code § 7-1671.01(20B). Plaintiffs contend that this definition is irrational because it includes individuals who were arrested, convicted, or incarcerated for non-cannabis related drug offenses. Elevated Tours Mem. at 5. But the Committee Report from the Council Committee of the Whole's discussion of the social equity applicant criteria expresses that the Committee "supports criteria prioritizing returning citizens and their families, as this has a direct nexus to the harms caused by the War on Drugs" and "criteria that will prioritize low-and-middle income residents of the District." Committee of the Whole, Report on Bill 23-113, at 6. Viewed through the lens of a rational basis review, in which "perfection is by no means required," the Council

permissibly defined a social equity applicant.  *Vance v. Bradley*, 440 U.S. 93, 108 (1979)

(quoting *Phillips Chemical Co. v. Dumas School Dist.*, 361 U.S. 376, 385 (1960)).  It does not

violate the Constitution for a legislature to "[draw] a line around those groups . . . it thought most

generally pertinent to its objective," even if "the classification involved [ ] is to some extent both

underinclusive and overinclusive."  *Id.* at 109, 108.

Plaintiffs also contend that the District violated equal protection by limiting applications

for medical cannabis licenses during a specific time period (November 1, 2023 to January 29,

2024) to applicants that had business licenses prior to December 31, 2022.  Elevated Tours Mem.

at 6–7.[11]  But one purpose of the Medical Cannabis Amendment Act of 2022 was to provide a

process for pre-existing cannabis retailers to become licensed as medical cannabis providers.  *See*

Committee of the Whole, Report on Bill 23-113, at 10.  The Council voted to adopt the act in

December 2022, and it was signed by Mayor Bowser in January 2023.  *B24-0113 – Medical*

*Cannabis Emergency Act of 2021*, Council of the District of Columbia,

https://lims.dccouncil.gov/Legislation/B24-0113 (last visited Jan. 24, 2025).  By limiting

applications for medical cannabis during the initial application window to applicants with a

business license as of December 31, 2022, the law simply provided pre-existing businesses with

an earlier opportunity to apply for a medical cannabis license.  Prioritizing businesses that

already existed when the medical cannabis licensing regime changed is a rational way to provide

a mechanism for unlicensed cannabis retailers to become licensed as medical cannabis providers.

Plaintiffs have not demonstrated a substantial likelihood of success on the merits of their equal

protection claim.

---

[11]    Plaintiffs challenge who could have sought a business license during an application
period that ended over a year ago; this claim cannot be addressed by Plaintiffs' request for
preliminary injunctive relief.

D.    **Plaintiffs' District Law Claims**

1.    **Home Rule Act**

Plaintiffs contend that the ABCA Director's position violates the principle of separation of powers because the ABCA Director can only be removed by the ABC Board for just and reasonable cause, and ABC Board members in turn can only be removed by the Mayor for just and reasonable cause.  Alliance Mem. at 24 (citing D.C. Code §§ 25-206(d); 25-207(a)).  To begin, Plaintiffs are not appealing any final decisions of ABCA and have not explained how they have standing to challenge the ABCA Director's position.  *Cf. Williams*, 819 F.3d at 476. Plaintiffs' argument relies almost entirely on *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010), in which the Supreme Court found that "dual for-cause limitations on the removal of [Public Company Accounting Oversight Board] members contravene the Constitution's separation of powers."  *Id.* at 492.  *Free Enterprise Fund* does not control the outcome of Plaintiffs' separation of powers claims here.

The District of Columbia government was created by Congress, pursuant to its power under the Constitution.  *Wilson v. Kelly*, 615 A.2d 229, 231 (D.C. 1992).  "[I]n the District Charter, Congress chose to create, as a general proposition, the familiar tripartite structure of government for the District."  *Id.*  The District of Columbia Court of Appeals has found that "it is reasonable to infer from this tripartite structure and the vesting of the respective 'power' in each branch that the same general principles should govern the exercise of such power in the District Charter as are applicable to the three branches of government at the federal level."  *Id.*  In considering the application of separation of powers principles to the District government, the Court of Appeals opined that "Congress could reasonably intend that absent contrary provision drawn either expressly or by implication from the Self-Government Act or other statutes, its

42

'legislative' power as delegated to the Council would reflect its 'legislative' power vis-a-vis the other branches of government at the national level." *Id.* at 231–32.

Here, the Home Rule Act provides that the "Mayor shall, through the heads of administrative boards, offices, and agencies, supervise and direct the activities of such boards, offices, and agencies." D.C. Code § 1-204.22(4). However, "[u]nder the District's Home Rule Charter, the Mayor—the head of the Executive Branch—does not have exclusive authority to direct the activities of agencies of the Executive Branch[.]" *FOP Metro. Police Dep't Labor Comm. v. District of Columbia*, 290 A.3d 29, 42 (D.C. 2023). Rather, the Home Rule Act also gives the Council "authority to create, abolish, or organize any office, agency, department, or instrumentality of the government of the District and to define the powers, duties, and responsibilities of any such office, agency, department, or instrumentality." D.C. Code § 1-204.04(b). There is no analogous provision to D.C. Code § 1-204.04(b) in Article I of the Constitution; *Free Enterprise Fund* accordingly does not control the interpretation of this provision.

The doctrine of separation of powers "'is concerned with the allocation of official power' among the three branches of government, and is designed to preclude 'encroachment or aggrandizement of one branch [of government] and the expense of the other.'" *District of Columbia v. Fitzgerald*, 953 A.2d 288, 298 (D.C. 2007) (quoting *Clinton v. Jones*, 520 U.S. 681, 699 (1997)). There is no separation of powers problem where "under a particular measure, 'the responsibility conferred on a branch of government by Congress is left essentially intact.'" *FOP Metro. Police Dep't Labor Comm.*, 290 A.3d at 41 (quoting *Hessey v. Burden*, 584 A.2d 1, 6 (D.C. 1990)). Here, Congress vested the Council with the authority to organize instrumentalities

of the District government and define their powers, duties, and responsibilities; in creating the structure of ABCA and the ABC Board, the Council did exactly that.[12]

### 2.    D.C. Administrative Procedure Act

Plaintiffs argue that the ABC Board inappropriately considers *ex parte* communications before it issues cease-and-desist orders and seemingly argue that inappropriate evidence was considered in some ABC Board matters.  Alliance Mem. at 34.  Plaintiffs Green Magic, Organix, and Safe House additionally contend that ABC Board decisions are arbitrary and capricious in violation of D.C. Code § 2-510.  Green Magic Mem. at 35; Organix Mem. at 38; Safe House Mem. at 39.  However, to the extent Plaintiffs seek to challenge ABC Board decisions, Plaintiffs are required to exhaust the administrative process and appeal any contested decisions to the District of Columbia Court of Appeals.  *See Owens v. D.C. Water & Sewer Auth.*, 156 A.3d 715, 720, 719–20 (D.C. 2017) (quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51 (1938)) ("It is a common law rule of long-standing that, in litigation involving a government agency, 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'"); D.C. Code § 2-1831.16(e); *see also* D.C. Code § 2-510.[13]  Even if any such claims were administratively exhausted and properly before this Court, Plaintiffs have not identified which Board orders they are challenging, and

---

[12]    Even if Plaintiffs have standing and are correct that the dual for-cause structure violates the separation of powers under the Home Rule Act, the resolution of a separation of powers problem involves questions of remedy and severability.  *See Free Enterprise Fund*, 561 U.S. at 508 (finding that "the unconstitutional tenure provisions are removable from the remainder of the statute").  Plaintiffs would not be entitled to a prospective injunction against the enforcement of the entire Medical Cannabis Amendment Act, related statutes, its implementing regulations, and enforcement actions by ABCA, DLCP, and MPD.  *See* Alliance Mot. at 1.

[13]    As noted above, Plaintiff Safe House has a pending appeal of a cease-and-desist order before the Court of Appeals.  *See* Docket, *Safe House, LLC T/A Safe House v. D.C. Alcoholic Beverage and Cannabis Board*, Case No. 24-AA-0802 (filed Aug. 30, 2024).

thus Plaintiffs cannot show a likelihood of the success on the merits to challenges of unidentified administrative orders.

### 3.    Common Law Torts

Plaintiffs Green Magic and Safe House bring claims of defamation and malicious prosecution against the District Defendants, *see* Green Magic Mem. at 42, 48–49; Safe House Mem. at 43–45, 49–51. Plaintiffs cannot show substantial likelihood of success on the merits because they have not shown, let alone alleged, that they complied with the requirements of D.C. Code § 12-309. "To bring a tort action against the District for unliquidated damages, plaintiffs must satisfy the mandatory notice requirement of D.C. Code § 12-309." *Harris v. Bowser*, 404 F. Supp. 3d 190, 197 (D.D.C. 2019). Plaintiffs here do not allege or show that they provided the District notice of either claim as required by D.C. Code § 12-309. "Section 12-309 'is to be strictly construed because it is a departure from the common law concept of sovereign immunity.'" *Id.* at 198 (quoting *Doe by Fein v. District of Columbia*, 93 F.3d 861, 872 (D.C. Cir. 1996). While Plaintiffs did file their complaints within six months of the incidents in question, "the purpose behind Section 12-309 and the subsequent case law indicate that a complaint does not itself satisfy the notice requirements of Section 12-309. There must be sufficient notice *before* the complaint is filed." *Powell v. District of Columbia*, 645 F. Supp. 66, 69 (D.D.C. 1986). Failure to comply with the requirements of Section 12-309 bars Plaintiffs' tort claims here.

Regardless, Plaintiffs have failed to show a substantial likelihood of success on the merits of either of their tort claims. In the District of Columbia, the elements of a defamation claim are that (1) the "defendant made a false and defamatory statement concerning the plaintiff;" (2) "the defendant published the statement without privilege to a third party;" (3) "the defendant's fault in publishing the statement amounted to at least negligence;" and (4) "the statement was actionable

as a matter of law" or "its publication caused the plaintiff special harm."  *Armstrong v. Thomas*,

80 A.3d 177, 183 (D.C. 2013) (quoting *Blodgett v. University Club*, 930 A.2d 210, 222 (D.C.

2007)).  Plaintiffs here contend that orders from the ABC Board contained false statements, but

they provide no evidence whatsoever to support that any statements were false, that any entity

acted negligently, or that they suffered special harm.  Additionally, the statements Plaintiffs

describe in their briefing are that "the sale and distribution of illegal cannabis immediately

threatens the health and safety of the public because unregulated products *may* contain

inappropriate and harmful substances"; "unlicensed businesses are *at risk* of selling cannabis to

persons who should not have access to cannabis"; and "such activity constitutes a nuisance under

D.C. Official Code § 7-1671.13e."  Green Magic Mem. at 42–43 (emphasis added); Safe House

Mem. at 43–44 (same).  None of these statements are factual statements about specific actions of

Plaintiffs; they identify risks attendant to unlicensed distribution of a controlled substance and

state that unlicensed establishments engaging in the commercial distribution of cannabis

constitute a nuisance under District law.  Substantial truth is a defense to a defamation claim and

a statement of pure opinion cannot be the basis of a defamation claim.  *Armstrong*, 80 A.3d at

183.  *Cf. id.* at 188 (finding that statements characterizing the focus of an investigation using

terms such as "serious integrity violations" reflected "one person's subjective view of the

underlying conduct and were not verifiable as true or false").

    Similarly, Plaintiffs have failed to provide any evidence to support their allegations of

malicious prosecution.  To prove a claim of malicious prosecution in the District, a plaintiff must

show that "(1) the underlying suit terminated in its favor; (2) there was malice on the part of [the

defendant] in filing the underlying suit; (3) there was a lack of probable cause for the underlying

suit; and (4) that [the plaintiff] suffered a *special injury* as a result of the suit."  *Havilah Real*

*Prop. Servs. v. VLK, LLC*, 108 A.3d 334, 354 (D.C. 2015).  Green Magic's claim fails because

the underlying suit did not terminate in its favor; a summary closure order issued against Green

Magic, and it was not timely appealed.  *See* Ex. 4, Final Order on Summary Action; *see also*

*Harris v. Bowser*, 843 Fed. App'x 328, 330 (D.C. Cir. 2021) ("[A] cause of action for malicious

prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's

favor." (quoting *Heck v. Humphrey*, 512 U.S. 477, 489 (1994))).  Safe House mischaracterizes

the procedural history in the underlying administrative actions; ABCA vacated the initial cease-

and-desist order and entered a modified order.  *See* Ex. 3.  Safe House has a pending appeal of

that order before the District of Columbia Court of Appeals.  *See supra* n. 13.  Therefore, the

underlying suit has not yet terminated.

Although ABCA did dismiss the summary closure action against Plaintiff Safe House,

Plaintiffs have provided no evidence whatsoever to support the other elements of a malicious

prosecution claim.  And Plaintiff Safe House's contention that it suffered special injury as a

result of the summary closure is not plausible on its face because Plaintiff also contends that it

"vacated the premises and terminated its lease prior to the events that lead to the summary

closure order and a new tenant occupied the premises."  Safe House Mem. at 50–51. Plaintiffs

Green Magic and Safe House have not shown a substantial likelihood of success on the merits of

their tort claims.[14]

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motions for Preliminary

Injunction.

---

[14]    Some of the Plaintiffs raise other claims in their Complaints but do not argue that they
have demonstrated a substantial likelihood of success on the merits of those claims.  Because
Plaintiffs do not seek preliminary injunctive relief on those claims, the District Defendants do
not address them here.

Date: January 24, 2025.

Respectfully Submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

STEPHANIE E. LITOS
Deputy Attorney General
Civil Litigation Division

*/s/ Matthew R. Blecher*

MATTHEW R. BLECHER [1012957]
Chief, Equity Section, Civil Litigation Division

*/s/ Honey Morton*

HONEY MORTON [1019878]
Assistant Chief, Equity Section

*/s/ Helen M. Rave*

DAVID R. WASSERSTEIN [1736006]
HELEN M. RAVE [90003876]
MATEYA B. KELLEY [888219451]
Assistant Attorneys General
Equity Section
400 Sixth Street, N.W., Suite 10100
Washington, D.C. 20001
Phone: (202) 735-7520
Email: helen.rave@dc.gov

*Counsel for District Defendants*

## <u>CERTIFICATE OF SERVICE</u>

On January 24, 2025, undersigned counsel served a copy of this omnibus on counsel for

Plaintiffs Alliance of Recreational Cannabis Entities, Green Magic LLC, Organix LLC, and the

Safe House LLC via ECF.  On January 24, 2025, undersigned counsel served counsel for

Plaintiffs AR Logistics LLC and Elevated Tours LLC and counsel for the Council of the District

of Columbia and Kenyan McDuffie via email at the below addresses:

> Lev Ivan Gabriel Iwashko
> Counsel for Plaintiffs AR Logistics LLC and Elevated Tours LLC
> lev@iwashkoLaw.com
> leviwashko@gmail.com
>
> Daniel Golden
> Counsel for Council of the District of Columbia and Kenyan McDuffie
> dgolden@dccouncil.gov

*/s/ Helen M. Rave*

HELEN M. RAVE [90003876]
Assistant Attorney General