# EXHIBIT 3

# THE DISTRICT OF COLUMBIA
## ALCOHOLIC BEVERAGE AND CANNABIS BOARD

_____

In the Matter of:                           )
                                            )
                                            )
The Safe House, LLC                         )    Case No.:       24-ULC-00001
t/a Safe House                              )    License Nos.:   129332
                                            )                    129333
Cease and Desist                            )    Order No.:      2024-568
                                            )
at premises                                 )
335 H Street, N.E.                          )
Washington, D.C. 20002                      )
_____             )

**BEFORE:**      Donovan Anderson, Chairperson
                 James Short, Member
                 Silas Grant, Jr., Member

**PARTIES:**     Jacobie K. Whitley, Counsel
                 1455 Pennsylvania Avenue, N.W.
                 Suite 400
                 Washington, D.C. 20004

                 on behalf of:

                 Abbas Fathi, H Street Development Group, LLC, Respondent

                 Margaret Villalobos, Respondent

                 Marquis Childress, Respondent

                 The Safe House, LLC, t/a Safe House, Respondent
                 (a.k.a The Safe House CBD Center, LLC; SHMO Irrevocable Trust)

---

## ORDER AFFIRMING CEASE AND DESIST

---

On July 3, 2024, the Alcoholic Beverage and Cannabis Board (Board) reviewed
compelling evidence that The Safe House, LLC, t/a Safe House (a.k.a The Safe House CBD
Center, LLC; SHMO Irrevocable Trust) (Safe House); Margaret Villalobos; Marquis Childress;
Abbas Fathi; and H Street Development Group, LLC, engaged in a violation of Chapter 16B of
Title 7 of the D.C. Official Code or permitted such illegal activity to occur.  Subsequently, upon
a review of ABCA's records, it was determined that the Applicant filed two conditional

1

applications for medical cannabis licensure close-in-time to when the cease-and-desist order issued in Board Order No. 2024-472 was under review.  In light of the Board's approval of the conditional license applications filed by Safe House on July 17, 2024, the Board vacated Board Order No. 2024-472 and issued an amended cease-and-desist order designated Board Order No. 2024-504 to reflect this change in circumstances, facts, and legal posture.

Based upon a review of the Board's records in this matter on July 17, 2024, the Board determined that before the filing of the approved applications, Safe House; Margaret Villalobos; Marquis Childress; Abbas Fathi; and H Street Development Group, LLC, engaged in a violation of Chapter 16B of Title 7 of the D.C. Official Code or permitted such illegal activity to occur. The Board noted that upon approval of the conditional license applications, the Respondents were obligated to cease cannabis distribution, possession, and all other cannabis related activity as a term of its current licenses.  Therefore, the Respondents were ordered to cease-and-desist purchasing, possessing, and selling cannabis in violation of D.C. Code §§ 7-1671.06(k)(3) and § 7-1671.08(a) at 335 H Street, N.E., Unit A, or any other location in the District of Columbia and comply with the other terms of the Order.  A hearing challenging the Board's Order was held on July 30, 2024.

The Board affirms the cease-and-desist order and modifies the original conditions based on its determination that there is substantial likelihood (1) that Respondent Safe House and the other Respondents either engaged in or allowed the illegal possession of cannabis on the property in violation of D.C. Official Code §§ 7-1671.08(a) and 7-1671.06(k)(3) and the terms of the Respondent's conditional license; (2) that Respondent Safe House and the other Respondents either engaged in or allowed the operations of an illegal cannabis business in violation of D.C. Official Code §§ 7-1671.08(f) and 7-1671.12e(a); and (3) that such illegal activity constitutes an immediate and irreparable harm to the public in accordance with D.C. Official Code § 7-1671.12a(a).

## FINDINGS OF FACT

The following represents the Board's findings of fact based on the evidentiary record.  In reaching its determination, the Board considered the evidence, the testimony of the witnesses, the arguments of the parties, and all documents comprising the Board's official file.  The Board credits all testimony and evidence identified or cited below unless otherwise stated.

1.     The Board incorporates by reference the facts and evidence presented in Case Report No. 24-ULC-00001.  The report was drafted by Alcoholic Beverage and Cannabis Administration (ABCA) Supervisory Investigator (SI) Jason Peru.  *Id*.  *Transcript* (*Tr*.), July 30, 2024 at 24.[1]  SI Peru has been employed in law enforcement for approximately 25 years.  *Id*.  He is familiar with cannabis based on his law enforcement experience, his observations of the cannabis flower, and visits to licensed cannabis growers in the District of Columbia.  *Id*.  He has also observed

---

[1] The Board did not find the Respondents attempt to impeach or undermine the credibility of SI Peru or the evidence he provided persuasive.

cannabis manufacturing, processing, production, and packaging as part of his duties. *Id*. He is also familiar with the smell of cannabis. *Id*. at 25.[2]

2.      On Friday, March 15, 2024, SI Peru and other District agencies inspected 335 H Street, N.E., Unit A, related to illegal cannabis activities. *Case Report No. 24-ULC-00001*, at 1. The premises were occupied and run by a business identifying itself as the Safe House, under a business license issued to Margaret Villalobos and operated by a manager identified as Marquis Childress. *Id*. at 1, *Exhibit No. 1*. The landlord of the premises is H Street Development Group, LLC, which is owned or controlled by Abbas Fathi. *Id*. at 1. During the inspection, the establishment was found to have engaged in the illegal sale and distribution of cannabis infused edibles and drinks. *Id*. In response, a warning letter was issued to the Respondents advising of violations regarding the illegal sale and distribution of cannabis. *Id*. at *Exhibit No. 1*. The Board further notes that on March 27, 2024, ABCA received a letter from Safe House LLC's Counsel, dated March 27, 2024, stating that

> . . . my client's agents report that Investigator Peru represented that the submission of a medical cannabis application within fourteen (14) days of receipt of the warning letter, which would prevent further enforcement.
>
> My client represents that it intends to submit applications for a conditional medical cannabis retailer license and a medical cannabis internet retailer license. However, my client's ownership does not appear to meet the social equity applicant requirements and cannot submit its application during the current social equity retailer and internet retailer licensing round. My client does intend to submit its applications to ABCA during the standard retailer licensing round that opens on July 1, 2024.

*Letter from Jacobie Whitley on behalf of The Safe House LLC, to the Alcoholic Beverage and Cannabis Board*, at 1. The letter then asked the Board for an "exemption from any further enforcement," which was not granted. *Id*.[3]

3.      On June 27, 2024, SI Peru returned to the premises for a follow up inspection. *Id*. Inside, he found that the establishment was continuing to sell cannabis products containing tetrahydrocannabinol (THC). *Id*. For example, one photo shows a product labelled "Icy Pop Smalls" and "31% THC" on a bag containing a dried leafy green substance, which the Board finds is cannabis. *Id*. at *Exhibit No. 4*. The photos further show various similar products such as jars containing dried leafy green substances, which the Board also finds to be cannabis, displayed

---

[2] The Board notes that it is reasonable to rely on lay identification to identify substances as most people can distinguish smells, including the smell of cannabis. *See In re Ondrel M.,* 918 A.2d 543, 555 (2007) ("we hold that the testimony of a police officer, who is capable of identifying marijuana by smell through past experience, that he or she smelled the odor of marijuana, is lay opinion testimony within the meaning of Maryland Rule 5–701.")

[3] The Board notes that it would be weird for Respondent Safe House to write a letter asking for an exemption from enforcement if the business never had cannabis on the property, was not engaged in illegal commercial cannabis activity, and had no intent to do so. The letter also does not indicate that a third party is engaged in cannabis sales and does not claim that the products on the premises are not actually cannabis, which in the Board's view would be reasonable things for Respondent Safe House to raise at the time if the initial warning was unwarranted.

on the store's shelves in a manner consistent with retail operations.  *Id*. at *Exhibit Nos. 3-4*.[4]  The cannabis products are also on a shelf with a plate that has a picture of cannabis leaves, a picture of a prescription bottle with cannabis leaves coming out of it, and a picture of pre-rolled joints next to a cannabis leaf and the words "High Life."  *Id*. at *Exhibit No. 3*.  In the same exhibit there are also other references to "Weed" on various trays and a sign.  *Id*.  Finally, the store was cited for engaging in the sale of unapproved food items by the D.C. Department of Health.  *Id*. at 1.

4.      SI Peru noted that the store has unusual security for a retail operation.  *Transcript* (*Tr.*), July 30, 2024 at 18, 22.  Based on past observations, the store has hired security that uses metal detecting wands, identification checks, and conducts pat downs.  *Id*. at 22, 26.  The business also uses a sliding glass window in a vestibule to conduct transactions.  *Id*. at 22.  He further noted that the business has access to other rooms where cannabis could be stored that were inaccessible to him during his investigation.  *Id*. at 22.

5.      SI Peru further discussed his observations regarding the products he saw in the store.  *Id*. at 23.  In particular, he saw items consistent with cannabis flower in containers labeled as containing THC, indicating the THC contents, and providing the weight of the contents in grams.  *Id*. at 23.  He further noted that some of the products were described as hybrids, indicas, and sativas, which are a common way of describing cannabis strains.  *Id*. at 23, 25.  In addition, while present in the store, he smelled the odor of unburnt cannabis, which has a distinctive and strong smell.  *Id*. at 25-26, 33, 77.  He also observed Safe House's social media pages and noted that the business holds itself out as a cannabis business.  *Id*. at 28.

6.      While present in the store, SI Peru saw non-cannabis products available.  *Id*. at 35.  The products included clothing and other items on shelves.  *Id*.

7.      There is no indication that the cannabis products being displayed for sale conform with Chapter 16B and the associated regulations' manufacturing, testing, labeling, and packaging requirements.

8.      On July 1, 2024, The Safe House, LLC, filed an application for a conditional Medical Cannabis Retailer License and a conditional Medical Cannabis Internet Retailer License for 335 H Street, Unit A, Washington, D.C. 20002.  *See Medical Cannabis Business License*, *The Safe House LLC*, at 1 (*Retailer Application*); *Medical Cannabis Business License*, *The Safe House LLC*, at 1 (*Internet Retailer Application*).  The Board approved the applications on July 17, 2024 and designated the Retailer License, ABRA License No. 129332, and the Internet Retailer License, ABRA No. 129333.

9.      Khalil Sharif Riley works for Respondent Safe House and works as an art collector that obtains art for the business.  *Id*. at 88.  Artists enter into licensing agreements with Respondent Safe House to provide art.  *Id*.  Respondent Safe House presented an "Exclusive Licensing Agreement" between The Safe House, LLC and an artist that authorizes Respondent Safe House to use the artist's art.  *Respondent's Exhibit No. 1*, at 1.  Respondent Safe House permits the viewing of art by customers, purchases art, sells art, and consigns art as well as the sell other

---

[4] If one zooms in on the photo of the jar, the labels appear to indicate that the products contain THC as well, although the photo is blurry.  *Id*. at *Exhibit No. 4*.

merchandise. *Tr*., 7/30/24 at 88, 100. He indicated that patrons at Safe House patronize Safe House first and then go to Royal Apez, LLC, and could not say why a patron could not go to Royal Apez, LLC, first or patronize that business first. *Id*. at 115.

10.     In general, the Board discounts and discredits the testimony of Mr. Riley whose testimony was contradictory, evasive, unreliable, and only explainable by a lack of candor or the witness engaging in willful blindness to the activities in the store. Despite working at the store five or six days per week for year, in a small space allegedly shared by two businesses, the witness was oblivious to the operations and could not provide basic information about the operations of either business, such as the number of employees; the identity of specific products that at a minimum looked like cannabis, had labels indicating that THC was present in the products, and were displayed near pictures of cannabis leaves; the nature of the gifts given to consumers; the ownership; or security. *Id*. at 92-94, 98, 102-03, 107-08, 112, 119, 121. He also could not provide testimony that Royal Apez, LLC, and Respondent Safe House had separate persons. *Id*. at 116. Finally, the testimony provided no explanation as to why products in the store were labelled with the words THC or the names of cannabis strains such as sativa and indica.

11.     The Respondent further provided a disclaimer from a company called Royal Apez, LLC, which operates on the premises. *Id*. at 91. *Respondent's Exhibit No. 2*. The disclaimer on a card provides in pertinent part that

> . . . . TO SHOW OUR APPRECIATION YOU MAY BE ELIGIBLE FOR A FREE GIFT. ALL FREE GIFTS ARE OPTIONAL AND MAY BE REFUSED. ALL FREE GIFTS GRATUITOUS AND ARE OFFERED WITHOUT REMUNERATION AND ARE NOT APART OF NOR BUNDLED WITH A COMMERCIAL SALE OR COMMERCIAL TRANSACTION. YOU MUST BE TWENTY-ONE (21) YEARS OR OLDER TO BE ELIGIBLE FOR A FREE GIFT.

*Id*. at 2. Mr. Riley could not identify the allegedly free gift given to customers. *Id*. at 93-94. The Board notes that Mr. Riley did not describe how the businesses determine when a customer is and is not eligible for a gift. There is also no evidence that this disclaimer correctly describes operations that comply with the District's decriminalization of cannabis law found at § 48-904.1(a) or that the business actually operated in accordance with this disclaimer, even if a valid statement of the law.[5]

12.     The Board credits SI Peru's testimony regarding the identity of the dried green leafy substance as cannabis because, at best, Mr. Riley could not identify the dried green leafy substance or had any idea what it was. *Id*. at 93. Mr. Riley contradicted himself when he testified that he had no knowledge of who owned the dried leafy green substances in the store but also claimed that dried leafy green substance was the property of Royal Apez, LLC. *Id*. at 100, 102. The Board further credits the testimony of SI Peru over the testimony Mr. Riley that cannabis could be smelled in the store based on his familiarity with the smell. *Id*. at 105.

---

[5] In the Board view, the disclaimer suggests that at a minimum, the store engages in tie-in sales from time to time, which would not comply with § 48-904.1(a), as a single transaction where a patron bought a non-cannabis item and was provided cannabis would constitute a non-gratuitous transfer of cannabis.

13.    There is no indication that Safe House intends to cease its cannabis activity at 335 H Street, Unit A, or has disposed of the cannabis located on the premises.  The business has indicated in social media posts that it will continue to operate.  *Tr.*, 7/30/24 at 32.  Moreover, the day before the hearing, an ABCA investigator observed the business in operation from outside the establishment and witnessed the establishment engage in operations similar to its prior illegal operations, including having security wanding, identification checking, and having a queue outside the business.  *Id.* at 31.  There is no evidence in the record that after the warning was issued on March 15, 2024, that the Respondent landlords took any steps to stop the illegal cannabis activity despite being on notice.

14.    The Board also does not credit Counsel's statement that Respondent Safe House has terminated its relationship with Royal Apez, LLC, as no witness provided any testimony regarding this fact and it leaves open the possibility of a new entity engaging in the same behavior as Royal Apez, LLC.  *Id.* at 124.  The Board also does not credit Counsel's statement that all cannabis or cannabis-like substances have been removed from the premises, as Mr. Riley's evidence is not sufficient to adequately support this statement or address the possibility of cannabis being stored in another portion of the premises.  *Id.*

## CONCLUSIONS OF LAW

15.    Under § 7-1671.12a(a) of Chapter 16B of Title 7 of the D.C. Official Code,

> If the ABC Board, after investigation but before a hearing, has cause to believe that a person is violating a provision of this chapter and the violation has caused or may cause, immediate and irreparable harm to the public, the ABC Board may issue an order requiring the alleged violator to cease and desist immediately from the violation.

D.C. Code § 7-1671.12a(a).

## I.    STANDARD OF PROOF AND EVIDENTIARY STANDARD

16.    In this case, the question is whether there is sufficient evidence for the Board to have cause to believe that a person is violating Chapter 16B to such extent that it has caused or may cause immediate and irreparable harm to the public.  § 7-1671.12a(a).  Similar to a preliminary injunction, § 7-1671.12a(a) commits the decision to grant or deny a cease-and-desist order to the sound discretion of the Board.  *See Zirkle v. Dist. of Columbia*, 830 A.2d 1250, 1255 (D.C. 2003).  Moreover, similar to a preliminary injunction, in order to uphold the cease-and-desist, the Borad must find that there is a "*substantial likelihood*" that a violation has occurred and that it has or will cause immediate and irreparable harm to the public.  *Id.* (emphasis added).

17.    A cease-and-desist order is not a criminal proceeding; therefore, it relies on a "less stringent standard[]" of proof than "the reasonable doubt standard."  *See Rivas v. United States*, 783 A.2d 125, 133 (D.C. 2001); *In re R.G.*, 917 A.2d 643, 648 (D.C. 2007).  Instead, the Board is merely required to base its decision on the "substantial evidence" contained in the record.  22-C DCMR § 9719.2.  The substantial evidence standard requires the Board to rely on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" or "more than a mere scintilla [of evidence]."  *Clark v. D.C. Dep't of Employment Servs.*, 772 A.2d

198, 201 (D.C. 2001) *citing Children's Defense Fund v. District of Columbia Dep't of Employment Servs.,* 726 A.2d 1242, 1247 (D.C. 1999); *Rodriguez v. Filene's Basement Inc.*, 905 A.2d 177, 181 (D.C. 2006). It should be further noted that ". . . hearsay evidence is admissible in administrative proceedings" and may constitute "substantial evidence." *Compton v. Dist. of Columbia Bd. of Psychology*, 858 A.2d 470, 476 (D.C. 2004). In that vein, "The weight to be given to any piece of hearsay evidence is a function of its truthfulness, reasonableness, and credibility." *Id.* at 477.

## II.    AS A CONDITIONAL LICENSE HOLDER, SAFE HOUSE MUST CEASE ALL CANNABIS ACTIVITY AT THE PREMISES.

18.    The Board is satisfied that Safe House and the other Respondents engaged in violations of the law and will continue to do so in the future, or at the very least, the record shows a substantial likelihood that the Respondents engaged in or allowed violations to occur. In particular, at a minimum it is highly likely that the Respondents are illegally allowing or permitting cannabis activity at its premises in violation of the terms of its conditional license.

19.    Under § 7-1671.08(a),

> *Any person who . . . possesses, . . . dispenses, distributes, or uses cannabis, . . . in a manner not authorized by this chapter* or the rules issued pursuant to § 7-1671.13 shall be subject to criminal prosecution and sanction under subchapter I of Chapter 11 of Title 48 [§ 48-1101 et seq.].

D.C. Code § 7-1671.08(a) (emphasis added). Under § 7-1671.06(k)(3), "The holder of a conditional license shall not engage in *purchasing, possessing,* cultivating, manufacturing, *or selling of medical cannabis or cannabis products.*" D.C. Code § 7-1671.06(k)(3). "Cannabis" is defined as "all parts of the plant genus Cannabis." D.C. Code §§ 48-901.02(3), 7-1671.01(2A).

20.    In this case, Respondent Safe House was approved for two conditional retail medical cannabis licenses on July 17, 2024. *Supra*, at ¶ 5. Before that date, the evidence shows that Respondent Safe House, its agents, and affiliates operated an unlicensed retail establishment where cannabis was offered or made available to the public, as evidenced by the manner in which cannabis was being stored, packaged, and displayed at the premises, the amount of cannabis contained in the premises, social media advertising, and the labeling of the products. *Supra*, at ¶ 3. As of the date of approval, there is no credible evidence that Respondent Safe House or its agents and affiliates have taken steps to dispose of the cannabis at the property, have ceased obtaining illegal cannabis products for its inventory, ceased offering and making cannabis available for sale or otherwise taken steps to come into compliance with §§ 7-1671.06(k)(3) and 7-1671.08(a). Indeed, the Board cannot credit claims that the business is now compliant when after the issuance of its conditional license there is no reasonable explanation in the record for the business to engage in similar operations as when it was engaged in commercial cannabis activity. Moreover, the long period of illegal cannabis activity undertaken or allowed to occur by the Respondents and the landlord, and the lack of candor involving its true activities in these proceedings convinces the Board that the Respondent cannot be trusted to terminate or not resume illegal cannabis activity once the Order is lifted. Thus, there is a substantial likelihood

that illegal cannabis activity, such as possession in violation of the conditional license, continues at the premises and will continue if the cease-and-desist order is lifted.

### a. A violation of the conditional license does not require a showing of commercial cannabis transactions.

21.     As noted in §§ 7-1671.08(a) and 7-1671.06(k)(3), conditional license holders are prohibited from possessing cannabis for commercial use, not just engaging in cannabis transactions.  § 7-1671.08(a).  As a result, the Respondent's defense that no cannabis transactions were observed, is not sufficient to defeat the claim that the Respondent is likely in violation of the terms of its conditional license.

### b. The record contains sufficient circumstantial evidence to find that SI Peru observed cannabis on the premises.

22.     The Board rejects the Respondents defense that SI Peru's testimony and evidence is insufficient to prove the presence of cannabis.  There is sufficient circumstantial evidence in the record to conclude that a large amount of cannabis was present at the business during SI Peru's visits.

23.     The District of Columbia Court of Appeals in *Bernard* wrote that "Circumstantial evidence is not intrinsically inferior to direct evidence . . . and there is ". . . no distinction between direct and circumstantial evidence . . . ." *Bernard v. United States*, 575 A.2d 1191, 1193 (D.C. 1990).  The court further provided that "the amount of narcotics the defendant had in his possession, *like any element of any crime,* can be proven by circumstantial evidence." *Id*.

24.     On this topic, the Colorado Court of Appeals in *Greybeal* noted that courts ". . . have admitted lay identifications of marijuana and other controlled substances based on testimony concerning their appearance, taste, and smell. . ." without the need for scientific evidence or expert testimony.  *People v. Graybeal*, 155 P.3d 614, 619 (Colo. App. 2007) citing *United States v. Durham*, 464 F.3d 976 (9th Cir. 2006).  Acceptable lay witness testimony may include factual testimony such as the "appearance, taste, or distinctive smell"; witness familiarity with the substance; and admissible statements regarding the identity of the substance.  *Id*.  Other factors that may allow the use of circumstantial evidence to identify a narcotic include "evidence that the transactions involving the substance were carried out in secrecy or by covert means" and; "evidence that the substance was referred to as the controlled substance by the defendant or others in his presence." *United States v. Stewart*, 325 F. Supp. 2d 474, 485–86 (D. Del. 2004), aff'd, 179 Fed. Appx. 814 (3d Cir. 2006).  It is also reasonable for the Board to rely on this type of evidence where the burden of proof in this case is not proof beyond a reasonable doubt but a lower standard.

25.     In that vein, the Board notes that the District of Columbia has adopted the "admission by party-opponent rule," which provides that the following are admissible as evidence even if technically hearsay:

(A) the party's own statement in either an individual or representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (E) a statement by a coconspirator of a party during the course of and in furtherance of the conspiracy.

*Harris v. United States*, 834 A.2d 106, 116 (D.C. 2003). In light of the legal acceptability of party-admission statements, the Board further determines that statements made by the person owning or controlling a substance, the business where the substance is kept, or persons under their direct or indirect direction of control related to a substance, whether such statements are made verbally, online through social media, contained on item labels and packaging, or through use of symbols (e.g., cannabis leaves, universal cannabis symbols), may constitute admissible, definitive, and reliable evidence of the identity of a substance.

26.    In this case, there is sufficient circumstantial evidence in the record to conclude that SI Peru observed cannabis on the premises. For example, one product observed by SI Peru had a label stating that it had "31% THC" is sufficient to identify a product as cannabis where THC stands for tetrahydrocannabinol, which is a chemical found and derived from the cannabis plant. *Supra*, at ¶ 3. Bolstering the conclusion that the product is cannabis includes observations that the business had many products that appeared to be dried, leafy, and green and labeled as THC, which is consistent with cannabis. *Id*. In addition, the products were displayed next to images of cannabis leaves, near references to being high, and the term weed, which show an intent to communicate to consumers that the products are cannabis. *Supra*, at ¶ 3. There is also sufficient evidence to infer that the cannabis observed on a store shelf and arranged for display belonged to the store and not any third party or for personal use. Finally, the weird relationship between Royal Apez, LLC, and Respondent Safe House and the steps taken to attempt the hide transactions through the use of the window; having customers patronize Safe House first before Royal Apez, LLC; the disclaimer prohibiting gifts to persons under 21 and the disclaimer's not so subtle attempt to satisfy the cannabis decriminalization law at § 48-904.01(a); the failure to articulate the legal means Royal Apez, LLC, produces revenue; a lack of credible explanation for the high amount of security; and the odd sharing of space is further circumstantial evidence that the two businesses were colluding and engaging in illegal commercial cannabis activity. *Supra*, at ¶¶ 9-11, 13. As a result, the Board's determination that SI Peru observed cannabis during his inspections is supported by the record.

###    c.    The Board does not credit Respondent Safe House's attempt to blame Royal Apez, LLC for the cannabis activity on the premises.

27.    The Board is not persuaded by the Respondents' attempt to deflect blame onto Royal Apez, LLC as the sole source of any cannabis activity on the premises and that Safe House had nothing to do with the other business's activities, including the possession of cannabis.

28.    Related to this argument the Board likewise does not find the Respondent's citation to *Simms* persuasive or applicable to the present case. In that matter, the defendant directed a

police officer to a store where the officer was able to purchase cannabis for $20 by handing the defendant money for the purchase to provide to the seller. *Simms v. United States*, 244 A.3d 213, 216 (D.C. 2021). The seller of the marijuana was arrested and pled guilty to distribution of marijuana. *Id*. Unlike the seller, the defendant was not compensated in any way by the seller, the defendant "was working" with the seller, or "had any arrangement or connection" with the seller," and the defendant was the purchaser. *Id*. In *Simms*, the defendant was found not guilty of an offense where he only purchased marijuana without compensation, as Title 48 "criminalizes only the sale side of the transaction and explicitly declares the purchase to be lawful." *Id*. at 219, 220.

*29.*    *Simms* is distinguishable from the present case for various reasons. As noted by the court, the case may have resulted in a guilty verdict, if the defendant was engaged in "connecting would-be buyers with the seller, or that he otherwise was engaged in drug distribution activities"; "was part of the seller's distribution operation"; was "anything other than a customer"; "had a prior arrangement with the seller"; "had a stake in seeing the sale consummated"; or would "profit in some way by being of assistance to the seller." *Id*. at 22.

30.    Unlike *Simms*, no witness could provide credible testimony as to who owns, control, manages, directs, or works for Royal Apez, LLC, and the Respondent could not demonstrate that the two businesses are truly separate and have separate ownership. *Supra*, at ¶ 10. Further unlike *Simms*, the record show that the two businesses collude and have a pre-existing arrangement. This is a reasonable inference from the record where Respondent Safe House's ownership and management permits Royal Apez, LLC, to operate in the space despite illegal cannabis being stored in plain view. *Supra*, at ¶ 3. The record also does not provide a reasonable legal explanation for the alleged splitting of the premises between the two businesses.[6] There is also no evidence that Safe House is a purchaser of cannabis.

31.    The Board further notes that it is not believable that Royal Apez, LLC, or any business can operate by providing gifts alone and the record contains no credible explanation as to a source of legal income for this business. As a result, it is reasonable to infer that Royal Apez, LLC and Safe House based on the sharing of space and collusion to provide gifts uses legal sales to cover cannabis sales. It is also reasonable to infer from the record that the two businesses profit from the sale of cannabis based on the presence of cannabis in the store. It is also reasonable to infer that the legal disclaimer provided by the store is a poor attempt to hide the use of tie-in sales.[7] Indeed, even a single sale of art accompanied by the provision of cannabis constitutes a non-gratuitous transfer of cannabis under the law. The Board further notes that the businesses also appears aware that they are providing cannabis as there is no reasonable explanation in the record for prohibiting gifts for persons under 21 if they are solely engaged in selling non-cannabis merchandise. As a result, unlike *Simms*, whether the two businesses are separate or not, the record

---

[6] For example, if a company owned two brands such as a donut shop and an ice cream parlor, it would be reasonable for the company to put the two businesses in the same space. Unlike this hypothetical, no reasonable explanation in the record has been provided for the arrangement, such as the business model of Royal Apez, LLC, how rent is paid, and how other expenses for the premises are covered (e.g., utilities, repairs).

[7] A tie-in sale is when a business offers one producer service to a customer on the condition that the customer purchase another product or service to the customer.

shows that Respondent Safe House is or was so involved in Royal Apez, LLC's business and vice-versa that each bears responsibility for the conduct, including the possession of cannabis, as the two businesses work hand-in-hand. Therefore, the Board finds it substantially likely that Respondent Safe House and the other Respondents engaged in or allowed a violation of the terms of Respondent Safe House's conditional license in violation of D.C. Official Code §§ 7-1671.08(a) and 7-1671.06(k)(3).

### III.    SAFE HOUSE ILLEGALLY ENGAGED IN COMMERCIAL CANNABIS ACTIVITY AND MAY CONTINUE ILLEGAL CANNABIS ACTIVITY IN THE FUTURE.

32.    Separate and apart from the Board's determination above, the Board finds that Safe House previously illegally engaged in or likely engaged in commercial cannabis activity before it filed for a conditional license. The Board, also in the alternative to the above, will order the continuation of the present cease and desist order if Safe House surrenders its license or the first reason for the order is lifted, because the operations would remain or likely remain in violation of the law upon the surrender of the licenses or removal of the conditions related to conditional license.

33.    Under § 7-1671.08(f),

Beginning January 31, 2024, the ABC Board may issue the following fines to an unlicensed establishment that . . . has not filed an accepted and pending application with the ABC Board and *knowingly engages or attempts to engage* in the purchase, sale, exchange, delivery, or *any other form of commercial transaction involving cannabis* that is not purchased, sold, exchanged, or delivered in accordance with the provisions of this chapter or § 48-904.01.

D.C. Code § 7-1671.08(f). An "Unlicensed establishment" is defined as

a sole proprietorship, partnership, or other business entity that:

(A)    Sells, exchanges as part of a commercial transaction, or delivers cannabis and cannabis products;

(B)    Operates at or delivers from a specific location in the District; and

(C)    Is not licensed by ABCA as a cultivation center, retailer, internet retailer, manufacturer, courier, or testing laboratory.

D.C. Code § 7-1671.01(22). Finally, under § 7-1671.12e(a),

Any building, ground, or premises where cannabis is sold, exchanged as part of a commercial transaction, delivered, or permitted to be consumed by an unlicensed establishment shall be a nuisance, except any building, ground, or premises of an

applicant that filed an accepted and pending application with the Board during the 90-calendar day open application period.

D.C. Code § 7-1671.12e(a).

34.     In light of the Board's findings above, Respondent Safe House, whether on its own or in collusion with Royal Apez, LLC, was operating as an unlicensed establishment before it filed an application for a conditional license for a long period of time. *Supra*, at ¶¶ 2-3. As noted above, the record shows that the businesses possessed cannabis and set up a retail operation and so-called gifting operation that, at a minimum demonstrates an attempt to engage in commercial cannabis transactions, and offer and make cannabis available for sale. Finally, the presence of cannabis on the store's shelves demonstrated their intent to offer cannabis for sale and make cannabis available for sale in violation of D.C. Official Code §§ 7-1671.08(f) and 7-1671.12e(a).

35.     In addition, if Respondent Safe House surrenders its conditional licenses or the conditions related to the conditional license are removed, this does not alleviate the continued risk of violating f § 7-1671.08(f) where there is a substantial likelihood the business would possess or allow the possession of more than 2 ounces of cannabis in violation of § 48-904.1(a)(1) based on the amount of cannabis observed at the premises on June 27, 2024. *Supra*, at ¶ 3 (see pictures of the store). Separate and apart from this violation, there is also a substantial likelihood that Safe House and the other Respondents would be engaging in a nuisance in violation of § 7-1671.12e(a) by engaging in or allowing cannabis transactions and other illegal cannabis activity at the premises to occur after surrendering the license. The Board also finds it likely that Safe House will engage in future violations of the law where it was previously found in violation in March 2024, and willfully and intentionally continued to illegally engage in commercial cannabis activity despite being aware of its legal obligations. *Supra*, at ¶¶ 2-3. Finally, similar to the Board's reasoning in paragraph 20, the Board is further convinced that the Respondents will engage in or continue to allow illegal cannabis activity in the future if the cease-and-desist order is lifted related to the violations of §§ 7-1671.08(f) and 7-1671.12e(a).

## IV.     TITLE 48 DOES NOT OPERATE AS A DEFENSE IN THIS CASE.

36.     The Board is not persuaded that § 48-904.1(a)(1) operates as a defense in this case, as argued by the Respondent. Under § 48-904.1(a)(1),

> Except as authorized by this chapter or Chapter 16B of Title 7 [§ 7-1671.01 et seq.], it is unlawful for any person knowingly or intentionally to manufacture, distribute, or possess, with intent to manufacture or distribute, a controlled substance. Notwithstanding any provision of this chapter to the contrary, it shall be lawful, and shall not be an offense under District of Columbia law, for any person 21 years of age or older to:

> (A)     Possess, use, purchase, or transport marijuana weighing 2 ounces or less; [or]

> (B)     Transfer to another person 21 years of age or older, without remuneration, marijuana weighing one ounce or less . . . .

D.C. Code § 48-904.1(a)(1). As noted in *Kornegay*, in accordance with § 48-904.01(a)(1)(D), the cannabis decriminalization statute does not shield persons that sell cannabis or cannabis plants, offer to sell cannabis or cannabis plants, or makes cannabis or cannabis plants available for sale. *Kornegay v. United States*, 236 A.3d 414, 420 (D.C. 2020) ("we understand § 48-904.01(a)(1) to permit an adult to possess two ounces or less of marijuana regardless of their intent, so long as that adult does not 'sell, offer for sale, or make available for sale' the marijuana").

37.     The Board is not persuaded that *Kornegay* provides a viable defense in this matter. In that case, police found less than two ounces of cannabis on the defendant during a traffic stop and the conviction was overturned. *Kornegay v. United States*, 236 A.3d 414, 415 (D.C. 2020). The conviction for the offense was challenged under § 48-904.01, which decriminalizes the possession and gratuitous transfer of small amounts of cannabis. *Id*. at 417-18. The court noted that the decriminalization statute does not apply if it is shown that a person sells cannabis, offers cannabis for sale, or makes cannabis available for sale in accordance with § 48-904.01(a)(1)(D). *Id*. at 420. In solely interpreting the "make available for sale" language, the court found the defendant solely possessed cannabis while driving a vehicle. *Id*. In explaining its reasoning, the court further states that to prove that a person made available for sale it is not enough to show that the person thought about making cannabis for sale or put cannabis in a container or package. *Id*. The court noted that proof of making cannabis available for sale could be shown by "some sufficient additional action or actions to communicate the availability of cannabis for purchase." *Id*. at 421.

38.     The present case is distinguishable from *Kornegay* because the Respondents here took several actions to show that cannabis was offered for sale and made available for sale. First, unlike *Kornegay*, the present case does not involve a small amount of cannabis found in a vehicle, an individual's underwear, or a body orifice, which may suggest an intent to use the cannabis for personal use. Instead, the cannabis in this case was found in the Respondent's purported retail establishment displayed in manner consistent with a retailer offering goods for sale.[8] *Supra*, at ¶ 3. The store also had social media advertising holding itself out as a cannabis business. *Id*. The Board also is not persuaded by the disclaimer as evidence of so-called gifting. *Supra*, at ¶ 11. Even if the disclaimer is taken at face value, the Board notes that the provision of a retail item accompanied by cannabis constitutes a tie-in sale or a sale for compensation in violation of § 48-904.01(a); thus, the stated practice of Respondent Safe House in its disclaimer does not demonstrate compliance with the law. Likewise, while the Board credits testimony regarding the absence of a menu or prices, this is not sufficient to disprove the absence of intent to offer cannabis for sale or make cannabis available for sale based on the attempt of the ownership to structure the retail operations in a way that attempts to hide cannabis transactions, as noted above. *Tr*., 7/30/24 at 73-74. As a result, this is sufficient evidence to determine that the business offered or made cannabis for sale and that the Respondents cannot benefit from any protection offered by § 48-904.01.

39.     The Board also rejects Respondents' defense that its operations purportedly complied with cannabis possession limits contained in § 48-904.01(a)(1). A visual inspection of the

---

[8] It is unlikely that a customer or staff would not walk into a department store and put their cigarettes, medicine, food, or other personal items on the store's shelves.

photographs indicate that the Respondents had more than 2 ounces of cannabis on the premises. *Supra*, at ¶ 3.  The Board notes that 2 ounces is similar in weight to common small deck of cards, a cell phone, or two AA batteries; yet, the pictures shown by SI Peru show 12 bags of cannabis shelves and 26 jars of cannabis.  *Case Report*, at *Exhibit Nos. 3-4; see Tr*., 7/30/24 at 51.  As a result, based on the amount shown it is reasonable to conclude that the Respondents possessed more than 2 ounces of cannabis.[9]

## V.    THE CONTINUED OPERATION OF SAFE HOUSE IMMEDIATELY AND IRREPARABLY HARMS THE PUBLIC.

40.    The Board further notes that the sale and distribution of illegal cannabis immediately threatens the health, safety, and welfare of the public because unregulated product may contain inappropriate and harmful substances (e.g., pesticides, other narcotics).  In addition, unlicensed businesses are at risk of selling cannabis to persons that should not have access to cannabis such as minors and fail to provide adequate warnings to adequate populations such as pregnant women and medical patients.  Finally, such activity constitutes a nuisance under D.C. Official Code § 7-1671.13e.  *See also Com. ex rel. Preate v. Danny's New Adam & Eve Bookstore*, 625 A.2d 119, 122 (1993) (It is well-settled that even a lawful business may be enjoined from operation if it is shown that, under the particular circumstance, its operation constitutes a public nuisance); *Camp v. Warrington*, 227 Ga. 674, 674, (1971) ("where it is made to appear with reasonable certainty that irreparable harm and damage will occur from the operation of an otherwise lawful business amounting to a continuing nuisance, equity will restrain the construction, maintenance or operation of such lawful business.").  Therefore, the immediate cessation of all cannabis activity at the premises is appropriate under § 7-1671.12a(a) and the other laws cited above.

## VI.    THE ORDER DOES NOT MATERIALLY OR SIGNIFICANTLY HARM RESPONDENTS.

41.    On a final note, the Board's Order solely requires compliance with existing law.  The order does not impact the sale or gifting of non-cannabis products such as art or clothing; as a result, the Respondents may still operate their claimed legal business.  The Respondents cannot claim harm from ceasing the sale or so-called gifting of cannabis because commercial cannabis operations occurring outside the District's medical cannabis program remain illegal; therefore, the business never had the right to profit from this aspect of their business.  As a result, the present order does not materially or significantly harm the Respondents.

---

[9] If the photograph only showed one solitary small plastic bag of cannabis then making an inference based on a visual inspection would likely be unreasonable; nevertheless, this is not the case under the facts presented here.  For comparison, if a small jar of oregano contains .3 ounces of this spice, this would mean that it would take approximately 7 jars to exceed 2 ounces, which is much less than what the photos in this case show and not even including the contents of the bags; as a result, the Borad's conclusion that the weight exceeded two ounces is reasonable.  Notably, the Respondent could have provided an accounting of the dried green leafy substances present in the store or presented the total weight in grams of all the products in conjunction with its defense citing § 48-904.1(a)(1), but it did not.

**ORDER**

Therefore, the Board, on this 8th day of August 2024, hereby **ORDERS** Respondent Safe House; Margaret Villalobos; Marquis Childress; Abbas Fathi; and H Street Development Group, LLC, and their agents to immediately

1. **CEASE AND DESIST** distributing, purchasing, possessing, and selling cannabis in violation of D.C. Code §§ 7-1671.06(k)(3) and § 7-1671.08(a) at 335 H Street, N.E., Unit A, or any other location in the District of Columbia; and

2. **IN THE ALTERNATIVE**, if the licenses are surrendered or the basis for the cease-and-desist under §§ 7-1671.06(k)(3) and § 7-1671.08(a) are lifted, the Respondents shall **CEASE AND DESIST** the illegal purchase, sale, exchange, delivery, or any other form of commercial transaction involving cannabis at 335 H Street, N.E., Unit A, or any other location in the District of Columbia in violation of §§ 7-1671.08(f) and 7-1671.12e(a).

The ABCA shall deliver a copy of this order to the Parties.

District of Columbia
Alcoholic Beverage and Cannabis Board

_____
Donovan Anderson, Chairperson

_____
James Short, Member

_____
Silas Grant, Jr., Member


Pursuant to 22-C DCMR § 9723, any party adversely affected may file a Motion for Reconsideration of this decision within ten (10) days of service of this Order with the Alcoholic Beverage and Cannabis Administration, Reeves Center, 2000 14th Street, NW, 400S, Washington, D.C. 20009.

Also, pursuant to section 11 of the District of Columbia Administrative Procedure Act, Pub. L. 90-614, 82 Stat. 1209, D.C. Code § 2-510 (2001), and Rule 15 of the District of Columbia Court of Appeals, any party adversely affected has the right to appeal this Order by filing a petition for review, within thirty (30) days of the date of service of this Order, with the District of Columbia Court of Appeals, 430 E Street, N.W., Washington, D.C. 20001.  However, the timely filing of a Motion for Reconsideration stays the time for filing a petition for review in the District of Columbia Court of Appeals until the Board rules on the motion.  *See* D.C. App. Rule 15(b) (2004).