## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ALLIANCE FOR RECREATIONAL CANNABIS ENTITIES LLC,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 1:24-cv-03164-ACR** |
| **DISTRICT OF COLUMBIA,** *et al.***,** | |
| **Defendants.** | |

### DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendants District of Columbia, Muriel Bowser, Office of the Mayor of the District of Columbia, Brian Schwalb, Office of the Attorney General for the District of Columbia, Fred Moosally, Alcoholic Beverage and Cannabis Administration, Department of Licensing and Consumer Protection, Pamela A. Smith, and Metropolitan Police Department (collectively, the District) move to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). A memorandum of points and authorities and proposed order are attached. Because this Motion is dispositive, the District has not sought Plaintiff's consent. *See* LCvR 7(m).

Date: October 13, 2025.

Respectfully Submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Matthew R. Blecher*
MATTHEW R. BLECHER [1012957]
Chief, Equity Section, Civil Litigation Division

*/s/ Honey Morton*

HONEY MORTON [1019878]
Assistant Chief, Equity Section

*/s/ David R. Wasserstein*

DAVID R. WASSERSTEIN [1736006]
HELEN M. RAVE [90003876]
MATEYA B. KELLEY [888219451]
Assistant Attorneys General
Equity Section
400 Sixth Street, N.W., Suite 10100
Washington, D.C. 20001
Phone: (202) 442-9784
Email: david.wasserstein@dc.gov

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ALLIANCE FOR RECREATIONAL CANNABIS ENTITIES LLC, | |
| Plaintiff, | |
| v. | Civil Action No. 1:24-cv-03164-ACR |
| DISTRICT OF COLUMBIA, *et al.*, | |
| Defendants. | |

**<u>MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

    I.    The District's Regulation of Cannabis.......................................................................... 2

    II.   Factual and Procedural History..................................................................................... 4

LEGAL STANDARD................................................................................................................ 5

    I.    Federal Rule of Civil Procedure 12(b)(1) .................................................................... 5

    II.   Federal Rule of Civil Procedure 12(b)(6) .................................................................... 6

ARGUMENT ............................................................................................................................. 6

    I.    Alliance Does Not Have Standing. ............................................................................... 6

        A.    Alliance Does Not Plead Any Indicia of a Traditional Membership Association.......... 7

        B.    Alliance Lacks Associational Standing To Seek Forward-Looking Relief. ................... 8

        C.    Alliance Does Not Have Associational Standing to Bring Its Dormant Commerce
        Clause Claim (Count Three). ......................................................................................... 9

        D.    Plaintiff Fails To Plausibly Allege an Injury-In-Fact for Certain Claims. ................... 11

    II.   The Court Should Dismiss Certain Defendants. ......................................................... 14

    III.  Alliance Fails To State Any Claim on the Merits........................................................ 16

        A.    Alliance's Constitutional Claims (Counts One, Two, Three, Four, Five, Seven) Should
        All Be Dismissed .......................................................................................................... 16

        B.    Alliance's Claim that the District's Medical Cannabis Program Is Preempted by the
        Appropriations Act (Count Six) Fails Based on a Plain Reading of the Act....................... 31

CONCLUSION......................................................................................................................... 32

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Act Now to Stop War & End Racism Coal. v. District of Columbia*, 846 F.3d 391 (D.C. Cir. 2017) ........................................................................................................................ 31

*Alemayehu v. D.C. Alcoholic Bev. Control Bd.*, 109 A.3d 1095 (D.C. 2014) ...................... 22, 23

*Am. Educ. Research Ass'n v. Public.Resource.Org, Inc.*, 78 F. Supp. 3d 542 (D.D.C. 2015) ..... 20

*Am. Trucking Ass'n v. Mich. Pub. Serv. Comm'n*, 545 U.S. 429 (2005) ...................................... 28

*Arnold v. Moore*, 980 F. Supp. 28 (D.D.C. 1997) .......................................................... 17

*Arpaio v. Obama*, 797 F.3d 11 (D.C. Cir. 2015) ........................................................... 11

*Asbury Auto Grp., Inc. v. FTC*, 2025 WL 2317455 (N.D. Tex. Aug. 11, 2025) ......................... 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................... 7

*Boddie v. Connecticut*, 401 U.S. 371 (1971) .............................................................. 24

*Braxton v. Nat. Capital Housing Auth.*, 396 A.2d 215 (D.C. 1978) ........................................ 18

*Brinkmeyer v. Wash. State Liquor & Cannabis Bd.*, Civ. No. C20-5661, 2023 WL 1798173 (W.D. Wash. Feb. 7, 2023) .................................................................................. 30

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573 (1986) ...................... 28

*Bynum v. District of Columbia*, 424 F. Supp. 3d 122 (D.D.C. 2020) ...................................... 18

*Campbell v. District of Columbia*, 972 F. Supp. 2d 38 (D.D.C. 2013) .................................... 17

*Carithers v. District of Columbia*, 326 A.2d 798 (D.C. 1974) ........................................... 21

*Coal. for Competitive Elec., Dynergy Inc. v. Zibelman*, 906 F.3d 41 (2d Cir. 2018) ................... 12

*Coal. for Mercury-Free Drugs v. Sebelius*, 671 F.3d 1275 (D.C. Cir. 2012) .............................. 11

*Congregation Rabbinical College of Tartikov, Inc. v. Vill. of Pomona, N.Y.*, 945 F.3d 83, (2d Cir. 2019) ...................................................................................................... 16

*Dean v. Town of Hamden*, 164 F. Supp. 3d 293 (D. Conn. 2016) ........................................... 24

*Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328 (2008) ............................................. 27, 28

*EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621 (D.C. Cir. 1997) ............................... 7

*Envtl. Working Grp. v. FDA*, 301 F. Supp. 3d 165 (D.D.C. 2018) .......................................... 10

*Fluresh, LLC v. City of Grand Rapids*, Case No. 25-cv-252, 2025 WL 1122034 (W.D. Mich. Apr. 16, 2025) .............................................................................................. 29

*GMC v. Tracy*, 519 U.S. 278 (1997) ....................................................................... 28

*Gonzalez-Droz v. Gonzalez-Colon*, 660 F.3d 1 (1st Cir. 2011) ........................................... 26

*Granfinanciera v. Nordberg*, 492 U.S. 33 (1989) .................................................... 19, 20

*Halcomb v. Office of the Senate Sergeant-At-Arms*, 563 F. Supp. 2d 228 (D.D.C. 2008) ............. 7

*Hill v. National Transp. Safety Bd.*, 886 F.2d 1275 (10th Cir. 1989) ........................................... 21

*Hudson v. Palmer*, 468 U.S. 517 (1984) ....................................................................... 25

*Jensen v. Md. Cannabis Admin.*, 719 F. Supp. 3d 466 (D. Md. 2024) ...................................... 29

*Johnson v. District of Columbia Dep't of Health*, 163 A.3d 746 (D.C. 2017) ........................... 26

*Jones v. United States Secret Serv.*, 143 F.4th 489 (D.C. Cir. 2025) ......................................... 10

*Khadr v. United States*, 529 F.3d 1112 (D.C. Cir. 2008) ........................................................... 6

*Kornegay v. United States*, 236 A.3d 414 (D.C. 2020) ...................................................... 2, 3, 15

*Laughlin v. Holder*, 923 F.Supp.2d 204 (D.D.C. 2013) ............................................................ 7

*Lawton v. Steele*, 152 U.S. 133 (1894) ................................................................................. 22

*Loughlin v. United States*, 393 F.3d 155 (D.C. Cir. 2004) ......................................................... 6

*Mabry v. D.C. Off. of Risk Mgmt.*, Civ. Action No. 2020 CA 000873 B, 2020 D.C. Super. LEXIS 439 (D.C. Supp. Ct. July 28, 2020) ....................................................................................... 17

*McCullen v. Coakley*, 573 U.S. 464 (2014) ........................................................................... 12

*Members of City Council of City of L.A. v. Taxpayers for Vincent*, 466 U.S. 789 (1984) ............. 16

*Nat'l Ass'n of Consumer Advocs. v. RentGrow, Inc.*, No. 24-cv-3218 (PLF), 2025 WL 1429172 (D.D.C. May 16, 2025) .......................................................................................................... 9

*Ne. Patients Grp. v. Maine Dep't of Admin. & Fin. Servs.*, 45 F.4th 542 (1st Cir. 2022) ............ 29

*New York v. Burger*, 482 U.S. 691 (1987) ............................................................................. 37

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325 (2018) ........... 20, 21

*Oregon Waste Sys. v. Dep't of Envtl. Quality*, 511 U.S. 93 (1994) ......................................... 28

*Park v. D.C. Alcoholic Beverage Control Bd.*, 555 A.2d 1029 (D.C. 1989) .............................. 23

*Penn v. District of Columbia*, Civ. Action No. 22-0745 (CKK), 2023 WL 14338 (D.D.C. Jan. 10, 2023) ....................................................................................................................................... 18

*Peridot Tree WA Inc.*, 3:23-cv-06111, 2024 WL 69733 (W.D. Wash. Jan. 5, 2024) .................... 30

*Phantom of Eastern Pa. v. N.J. State Police*, Civ. Action No. 07-2748, 2008 WL 2039461 (E.D. Pa. May 12, 2008) ................................................................................................................. 25

*Price v. Barr*, 514 F. Supp. 3d 171 (D.D.C. 2021) ................................................................ 13

*Propert v. District of Columbia*, 948 F. 2d 1327 (D.C. Cir. 1991) .......................................... 24

*Rajah v. Mukasey*, 544 F.3d 427 (2d Cir. 2008) ................................................................... 36

*Rasul v. Bush*, 542 U.S. 466 (2004) .................................................................................. 6

*Ray v. District of Columbia*, 535 A.2d 868 (D.C. 1987) ................................................. 18

*Riley v. California*, 573 U.S. 373 (2014) .......................................................................... 37

*SEC v. Jarkesy*, 603 U.S. 109 (2024) ................................................................................ 20

*Sibley v. Obama*, 810 F. Supp. 2d 309 (D.D.C. 2011) ..................................................... 36

*Simmons v. District of Columbia Armory Bd.*, 656 A.2d 1155 (D.C. 1995) ................. 18

*Smith v. District of Columbia*, 387 F. Supp. 3d 8 (D.D.C. 2019) .................................. 26

*Tanner-Brown v. Haaland*, 105 F.4th 437 (D.C. Cir. 2024) ........................................ 9, 11

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) .............................................. 8, 11, 13

*United States ex re. Martin v. Hathaway*, 63 F.4th 1043 (6th Cir. 2023) ..................... 33

*United States v. Bronstein*, 849 F.3d 1101, 1106 (D.C. Cir. 2017) .......................... 32, 33

*United States v. Hubbel*, 530 U.S. 27 (2000) .................................................................. 36

*United States v. Motley*, 89 F.4th 777 (9th Cir. 2023) .................................................... 37

*Variscite NY Four, LLC*, 1:23-cv-01599, 2024 WL 406490 (N.D.N.Y. Feb. 2, 2024) ............... 30

*Viasat, Inc. v. FCC*, 47 F.4th 769 (D.C. Cir. 2022) ....................................................... 8, 9

*Virginia v. Hicks*, 539 U.S. 113 (2003) ........................................................................... 32

*Viridis Labs., v. Kluytman*, No. 1:22-cv-283, 2023 WL 4861698 (W.D. Mich. July 31, 2023) .. 30

*Waterkeeper All., Inc. v. Regan*, 41 F.4th 654 (D.C. Cir. 2022) ....................................... 9

*Williams v. Lew*, 819 F.3d 466 (D.C. Cir. 2016) ............................................................ 16

*Wis. Cent. Ltd. v. United States*, 585 U.S. 274 (2018) .................................................. 33

*Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1 (D.D.C. 2010) ........................... 18

**Statutes**

21 U.S.C. § 812(c) ............................................................................................................. 24

D.C. Code § 2-509(b) ....................................................................................................... 19

D.C. Code § 47-2809 ........................................................................................................ 28

D.C. Code § 47-2851.02 ................................................................................................... 28

D.C. Code § 48-1201 .................................................................................................. 11, 13

D.C. Code § 48-904.01(a)(1) .................................................................................. 2, 13, 26

D.C. Code § 7-1671.01 ............................................................................................... 26, 27

D.C. Code § 7-1671.01 *et seq.* .......................................................................................... 2

D.C. Code § 7-1671.05 ....................................................................................................... 4

D.C. Code § 7-1671.06 ................................................................................................ 3

D.C. Code § 7-1671.06a .............................................................................................. 3

D.C. Code § 7-1671.08 ................................................................................. 4, 21, 22

D.C. Code § 7-1671.08 ................................................................................................ 4

D.C. Code § 7-1671.08(a) .......................................................................................... 4

D.C. Code § 7-1671.12a ...................................................................................... 19, 20

D.C. Code § 7-1671.12e ............................................................................................. 4

Marijuana Possession Decriminalization Amendment Act of 2014, D.C. Law 20-126 (2014) ..... 2

Pub. L. No. 118-47, § 809 ......................................................................................... 33

**Other Authorities**

8 Moore's Federal Practice – Civil § 38.33 (2024) .................................................. 18

D.C. Council, Comm. of the Whole, Report on Bill 24-113 (Dec. 6, 2022) ................................. 3

Notice of Open Application Period for Unlicensed Establishments for Retailer, Internet Retailer,
and Cultivation Center Licenses, 70 D.C. Reg. 6930 (May 12, 2023) ...................................... 3

Sophia Solano, Keychains, QR Codes and Other 'Gifts' People Buy to Get Pot in D.C.,
Washington Post (April 19, 2023), available at https://www.washingtonpost.com/dc-md-
va/2023/04/19/i-71-cannabis-gifting-washington-dc/ ................................................................ 3

**Rules**

Fed. R. Civ. P. 12 ................................................................................................... 5, 6

**Regulations**

23 DCMR § 1600.3(d) ............................................................................................. 19

**Constitutional Provisions**

U.S. Const. art I, § 8, cl. 3 ...................................................................................... 23

## INTRODUCTION

Plaintiff—the Alliance for Recreational Cannabis Entities (Alliance)—represents a collection of self-described recreational cannabis entities. Alliance takes scattershot aim across the District of Columbia's entire regulatory regime for medical cannabis with a bevy of claims, but all of them miss the mark. At a foundational level, Alliance does not have standing to seek injunctive or declaratory relief as it cannot rely on past injuries and fails to allege its members are at risk of immediate or future injury; and because Alliance seeks no other forms of relief, the case ends there. Regardless, Alliance's claims also fail on the merits. Alliance brings a Seventh Amendment Claim, but enforcement actions concerning the District's medical cannabis licensing program fall within the public rights exception. The Alcoholic Beverage and Cannabis Board's hearing procedures comport with due process, and Alliance's allegations otherwise fall short. Alliance's dormant Commerce Clause claim fails because the dormant Commerce Clause does not protect federally illegal markets. Alliance's overbreadth claim boils down to an assertion that a business has a legal right to participate in any non-criminal activity without a license, but the Fifth Amendment protects no such right. The Fifth Amendment requires statutes to provide clear guidance about what behavior is permitted; the District's statutes meet that bar. Alliance's self-incrimination claim is similarly deficient because applications to participate in the medical cannabis market are purely voluntary. Alliance's Fourth Amendment Claim fails because cannabis is a closely regulated industry; members of commercial entities involved in the distribution of controlled substances have a diminished expectation of privacy. Lastly, Alliance's claim concerning the Federal Appropriations Act fails based on the plain text of the act. The Amended Complaint should be dismissed in its entirety.

# BACKGROUND

## I.     The District's Regulation of Cannabis

The District first legalized the sale of cannabis for *medical* purposes twenty-five years ago, by passing the Legalization of Marijuana for Medical Treatment Initiative of 1999, D.C. Law 13-315 (codified as amended at D.C. Code § 7-1671.01 *et seq.*).  District law does not, and has never, authorized the *sale* of cannabis for non-medical, or *recreational*, purposes.

About a decade ago, the District decriminalized the mere possession of very small amounts of cannabis, and, essentially, the sharing of those small amounts between residents "without remuneration."  The Marijuana Possession Decriminalization Amendment Act of 2014, D.C. Law 20-126 (2014), decriminalized the possession or transfer without remuneration of one ounce or less of marijuana but retained *civil* penalties.  *Kornegay v. United States*, 236 A.3d 414, 416 (D.C. 2020).  Subsequently, District voters approved the Legalization of Possession of Minimal Amounts of Marijuana for Personal Use Initiative of 2014, *see* D.C. Law 20-153 (2014), known as Initiative 71.  Initiative 71 made it lawful for any person 21 years of age or older to take certain actions, including transferring "to another person 21 years of age or older, *without remuneration*, marijuana weighing one ounce or less."  D.C. Code § 48-904.01(a)(1) (emphasis added).  The *sale* of cannabis remained unlawful.  *See id.*  Initiative 71 also excluded small amounts of cannabis from the definition of a controlled substance under District law, specifically, "'[m]arijuana that is or was in the personal possession of a person 21 years of age or older at any specific time if the total amount of marijuana that is or was in the possession of that person at that time weighs or weighed 2 ounces or less,' certain marijuana plants, and certain marijuana produced by those plants."  *Kornegay*, 236 A.3d at 417 (quoting D.C. Law 20-153 § 2(b)).  After the approval of this initiative, some businesses began holding themselves out as

Initiative 71 (or I-71) compliant and offering cannabis as a "gift" along with another purchase. *See* Sophia Solano, Keychains, QR Codes and Other 'Gifts' People Buy to Get Pot in D.C., Washington Post (April 19, 2023), available at https://www.washingtonpost.com/dc-md-va/2023/04/19/i-71-cannabis-gifting-washington-dc/.

In 2023, the District passed the Medical Cannabis Amendment Act of 2022, D.C. Law 24-332 (the 2022 Act), the first in a series of laws tailored at overhauling the existing local medical cannabis regime. Among other things, the 2022 Act established "transitional licenses that would allow currently unlicensed cannabis dispensaries to transition to a valid dispensary license" if they applied to do so during a 90-day on-ramp period. D.C. Council, Comm. of the Whole, Report on Bill 24-113, at 4 (Dec. 6, 2022); *see* D.C. Code § 7-1671.06a. That 90-day on-ramp period ran from November 1, 2023, to January 29, 2024. *See* Notice of Open Application Period for Unlicensed Establishments for Retailer, Internet Retailer, and Cultivation Center Licenses, 70 D.C. Reg. 6930 (May 12, 2023). The 2022 Act also authorized the issuance of conditional licenses, which gave applicants without a proposed location for their medical cannabis business two years from the approval of their conditional license to find a suitable location. D.C. Code § 7-1671.06(k). Unlike other medical cannabis licenses, a conditional license did not authorize the applicant to operate a cannabis business. *Id.* § 7-1671.06(k)(3) ("The holder of a conditional license shall not engage in purchasing, possessing, cultivating, manufacturing, or selling of medical cannabis or cannabis products.").

The sale of cannabis for recreational, or non-medical purposes, remained (and remains) illegal. The 2022 Act did not alter the prohibition on "manufactur[ing], cultivat[ing], possess[ing], administer[ing], dispens[ing], distribut[ing], or us[ing]" cannabis in the District "in

a manner not authorized by" the medical cannabis statute or Alcohol Beverage and Cannabis

Board's (the ABC Board or the Board) regulations.  *Id.* § 7-1671.08(a).

The 2022 Act also renamed the District's Alcoholic Beverage Regulation Administration

to the Alcoholic Beverage and Cannabis Administration (ABCA), and vested the reconfigured

agency with authority to take enforcement action against unlicensed establishments who failed to

transition to licensed medical cannabis businesses during the 90-day on-ramp period.  D.C. Code

§§ 7-1671.05, 7-1671.08.

Subsequent legislation also authorized ABCA to impose fines on unlicensed cannabis

establishments, *see* Medical Cannabis Program Enforcement Emergency Amendment Act of

2024, D.C. Act 25-371, sec. 2(d)(2), § 9(f) (permanently codified at D.C. Code § 7-1671.08(f)),

and designated such establishments as nuisances, *see id.* sec. 2(f), § 13e(a), (permanently

codified at D.C. Code § 7-1671.12e(a)).

## II.    Factual and Procedural History

Alliance represents the interests of ten recreational cannabis entities in the District of

Columbia, Maryland, and Virginia.  Alliance Am. Compl. (Compl.) [31] ¶ 6.  Alliance vaguely

alludes to certain members experiencing difficulties attempting to enter the District's medical

marijuana market, *see e.g.*, *id.* ¶ 30, and alleges that "[m]ultiple members of the Alliance have

received cease-and-desist orders, requested hearings, attended hearings, and lost in these

hearings," *id.* ¶ 35.  Alliance also notes that "[m]ultiple members . . . have received summary

closure actions and are currently not in operation."  *Id.* ¶ 38.  Alliance does not describe or

identify these actions in the body of its Complaint, but it does attach copies of three cease-and-

desist orders, *see* Pl.'s Exs. [31-1] at 27–56, as well as an offer-in-compromise letter entered into

by one of its members, *see id.* at 50–56.

4

Alliance filed this lawsuit on November 7, 2024, naming the District of Columbia, Mayor Muriel Bowser, Brian Schwalb, Fred Moosally, Tiffany Crowe, and Pamela Smith (collectively, the District) (collectively, the District) as Defendants.  *See* Alliance Compl. [1].  On December 19, 2024, the District removed five related cases filed in Superior Court to federal court which were subsequently consolidated with this case.  *See* Jan. 30, 2025 Ord. [18].  Each of the six Plaintiffs filed motions for preliminary injunctions.  *See e.g.*, Pls.' Mot. for Prelim. Inj. [6].  After a hearing on the preliminary injunction motions on March 28, 2025, the Court denied Plaintiffs' consolidated motion for preliminary injunction, and the five Plaintiffs who initially brought their suit in Superior Court dismissed their federal claims.  *See* Pls.' Mot. to Voluntarily Dismiss Claims [26] (dismissing non-federal claims); Apr. 28, 2025 Min. Ord. (denying motion for preliminary injunction).  Alliance and the District appeared for a pre-motion conference on June 27, 2025, at which the Court granted Alliance leave to file an amended complaint.  Alliance filed its Amended Complaint on August 18, 2025.

## LEGAL STANDARD

### I.    Federal Rule of Civil Procedure 12(b)(1)

Because federal courts are courts of limited jurisdiction, the law presumes that "a cause lies outside this limited jurisdiction." *Rasul v. Bush*, 542 U.S. 466, 489 (2004) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (U.S. 1994)).  Thus, on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of demonstrating that the court's jurisdiction is proper by a preponderance of the evidence.  *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008).  "[S]ubject matter jurisdiction is, of necessity, the first issue for an Article III court."  *Loughlin v. United States*, 393 F.3d 155, 170 (D.C. Cir. 2004).  In determining whether it has jurisdiction, a district court may consider material outside of the pleadings.  *See, e.g., Halcomb v. Office of the Senate Sergeant-At-Arms*,

563 F. Supp. 2d 228, 235 (D.D.C. 2008). "If the court determines at any time that it lacks

subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

## II.    <u>Federal Rule of Civil Procedure 12(b)(6)</u>

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the

court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged."

*Id*. (quoting *Twombly*, 550 U.S. at 556). "While legal conclusions can provide the framework of

a complaint, they must be supported by factual allegations." *Id*. at 679. "[A] complaint [does

not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. at 678

(quoting *Twombly*, 550 U.S. at 557). In evaluating a motion under Rule 12(b)(6), the Court

"may consider . . . the facts alleged in the complaint, any documents either attached to or

incorporated in the complaint, and matters of which [the Court] may take judicial notice."

*EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *see Laughlin v.*

*Holder*, 923 F.Supp.2d 204, 209 (D.D.C. 2013).

## ARGUMENT

## I.    <u>Alliance Does Not Have Standing.</u>

To pursue claims in federal court, a plaintiff must have standing. *TransUnion LLC v.*

*Ramirez*, 594 U.S. 413, 423 (2021). That is, he must "show (i) that he suffered an injury in fact

that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by

the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* "And

standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim

6

that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *Id.* at 431.

An organization has standing to sue on behalf of its members only if it clears three additional hurdles.[1] First, "[t]o assert associational standing, an organization must have the 'indicia of a traditional membership association.'" *Viasat, Inc. v. FCC*, 47 F.4th 769, 781 (D.C. Cir. 2022) (quoting *Sorenson Commc'ns v. FCC*, 897 F.3d 214, 225 (D.C. Cir. 2018)). It must provide more than "bare assertion[s]" describing "whether members finance the organization, guide its activities, or select its leadership." *Id.* Second, an association must prove that "its members would otherwise have standing to sue in their own right." *Waterkeeper All., Inc. v. Regan*, 41 F.4th 654, 660 (D.C. Cir. 2022) (internal quotation marks and citation omitted). Third, an association lacks standing if "the nature of th[e] suit necessarily requires consideration of the individual circumstances of any aggrieved member of the organization." *Tanner-Brown v. Haaland*, 105 F.4th 437, 447 (D.C. Cir. 2024) (internal quotation marks and citation omitted).

A.   **Alliance Does Not Plead Any Indicia of a Traditional Membership Association.**

Alliance's Complaint fails at the first hurdle. Outside of a bare assertion that it is an "alliance representing the recreational cannabis entities in the District of Columbia, Maryland, and Virginia," Compl. ¶ 6, and specifying how many members Alliance consists of, there are no allegations whatsoever as to "whether members finance the organization, guide its activities, or

---

[1] An organization can demonstrate standing in two ways, either "on its own behalf, as an organization, or on behalf of its members, as associational standing." *Elec. Privacy Info. Ctr. v. U.S. Dep't of Com.*, 928 F.3d 95, 100 (D.C. Cir. 2019). To demonstrate standing on its own behalf, an organization must "show actual or threatened injury in fact that is fairly traceable to the alleged illegal action and likely to be redressed by a favorable court decision." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015). Here, Alliance does not allege any concrete and demonstrable injury to itself and so does not have standing on its own behalf, or organizational standing, to seek any relief. *See generally* Compl.

select its leadership." *Viasat*, 47 F.4th at 781.  This is plainly insufficient.  While Alliance

attached excerpts from an LLC agreement and a joinder agreement, these documents are

insufficient to satisfy Plaintiff's pleading requirement.  *See* Pl.'s Ex. [31-1] at 8–23.  Alliance

included a document suggesting that five members each contributed $10 in capital contributions,

*see id.* at 12, but, even if that document were sufficient to demonstrate that members finance

Alliance, the attached documents do not explain how members are involved in guiding

Alliance's activities or selecting its leadership.  With "no basis to determine whether the

requisite elements of standing have been met," *Viasat*, 47 F.4th at 781, Alliance fails to

demonstrate associational standing, and its Complaint should be dismissed.  *See Nat'l Ass'n of

Consumer Advocs. v. RentGrow, Inc.*, No. 24-cv-3218 (PLF), 2025 WL 1429172, at *5 (D.D.C.

May 16, 2025) (finding no associational standing where a complaint identified two members but

failed to allege whether these members "finance plaintiff, select plaintiff's leadership, or guide

plaintiff's activities.").

> B. **<u>Alliance Lacks Associational Standing To Seek Forward-Looking Relief.</u>**

Here, Alliance seeks only forward looking injunctive and declaratory relief.  To seek

such relief, Alliance "must plausibly allege facts that show '[a] threatened injury is certainly

impending" upon one of its members, "or there is a substantial risk that the harm will occur'" in

the future to one of its members.  *Jones v. United States Secret Serv.*, 143 F.4th 489, 495 (D.C.

Cir. 2025) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).  Alliance has

not done so.

Alliance points only to past alleged injuries; that is not sufficient.  *See e.g.*, Compl. ¶ 30

(noting two members were inhibited from participating in the District's licensing process in

2024); *id.* ¶ 35 ("Multiple members of the Alliance have received cease-and-desist orders"); *id.* ¶

38 ("Multiple members of the Alliance have received summary closure actions and are not currently in operation."); *id.* ¶ 63 ("Among Plaintiff's members, Street Lawyer Services LLC received a $10,000 fine").  Nothing suggests that any of its members are at risk of future injury (or experiencing a redressable ongoing injury).  Put another way, Alliance does not allege that any of its members still operate or intend to operate a business within the District that theoretically could be affected by the District's medical marijuana laws.  *See generally id.*  Quite simply, to establish imminent or future injury for purposes of standing, "[a]llegations of past injuries will not suffice."  *Envtl. Working Grp. v. FDA*, 301 F. Supp. 3d 165, 175 (D.D.C. 2018); *see also Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) ("Where a party 'seeks prospective declaratory and injunctive relief, he must establish an ongoing or future injury that is certainly impending; he may not rest on past injury." (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013)).

Because no member of Alliance alleges "a certainly impending, or even likely, risk of future . . . injury," *Coal. for Mercury-Free Drugs v. Sebelius*, 671 F.3d 1275, 1280 (D.C. Cir. 2012), Alliance does not have standing to seek prospective relief.  *See also TransUnion LLC*, 594 U.S. at 423 ("Under Article III, federal courts do not adjudicate hypothetical or abstract disputes.  Federal courts do not possess a roving commission to publicly opine on every legal question.").  This case must therefore be dismissed for lack of jurisdiction.

## C.    **Alliance Does Not Have Associational Standing to Bring Its Dormant Commerce Clause Claim (Count Three).**

Even if it had alleged imminent or future injury, Alliance does not have associational standing to challenge provisions of the District's medical marijuana regime under the dormant Commerce Clause.  *See* Compl. ¶¶ 83–84 (raising challenges to the District's definition of "social equity applicants" and a requirement that all cannabis be purchased from cultivation

9

centers registered in the District).  Recall that associational standing is inappropriate where "the nature of th[e] suit necessarily requires consideration of the individual circumstances of any aggrieved member of the organization."  *Tanner-Brown*, 105 F.4th at 447.  Alliance's dormant Commerce clause claim stumbles for this reason.  "[T]o show standing for [a] dormant Commerce Clause claim, Plaintiffs must demonstrate that their alleged injuries are traceable to (*i.e.*, the result of) or a consequence of discrimination against interstate commerce."  *Coal. for Competitive Elec., Dynergy Inc. v. Zibelman*, 906 F.3d 41, 58 (2d Cir. 2018).  Alliance points to only two of its members, Krizzo Washington and Promoco LLC, and alleges that both "were precluded from applying for medical cannabis licenses simply due to their out of state residency."  Compl. ¶ 89.  Alliance does not provide any factual support that any of its members received or purchased medical marijuana from a District-based cultivation center.  *See id.* ¶ 83.  So, whether and to what extent this Court can reach the merits of Alliance's dormant Commerce Clause claim depends uniquely on Krizzo Washington and Promoco LLC, what their businesses look like, why they were denied medical cannabis licenses, and how those business operate with regard to the individual provisions of the District's cannabis laws at which Alliance purports to take aim.  Such an individualized inquiry, inherent to Alliance's dormant Commerce Clause claims, dooms their associational standing to bring this claim.

Moreover, even if the participation of the individual members were not necessary, Alliance would only have standing to challenge the specific provisions raised—not the medical marijuana regime as a whole.  That is, as-applied claims require a plaintiff to prove his own standing because he must show that the challenged law was unconstitutionally applied to him.  *See McCullen v. Coakley*, 573 U.S. 464, 485 n.4 (2014) ("[A] plaintiff generally cannot prevail on an as-applied challenge without showing that the law has in fact been (or is sufficiently likely

to be) unconstitutionally applied to him.").  Alliance only plausible injury arises due to in-state residency preferences for social equity applicants.  Compl. ¶ 89.  Therefore, any relief necessarily must be limited to this provision, not the regime as a whole.  *See Price v. Barr*, 514 F. Supp. 3d 171, 184 (D.D.C. 2021), *rev'd on other grounds*, *Price v. Garland*, 45 F.4th 1059 (D.C. Cir. 2022) ("Where a plaintiff's constitutional injury derives from a specific statutory or regulatory provision, a court should constrain its review to the alleged defect therein.").[2]

D.    **Plaintiff Fails To Plausibly Allege an Injury-In-Fact for Certain Claims.**

Even if Alliance had standing to seek prospective relief on behalf of its members on any *one* claim, "standing is not dispensed in gross," and, as described below, Alliance lacks standing to bring certain claims because it does not allege any actual injury to its members resulting from the conduct challenged by those claims.  *TransUnion LLC*, 594 U.S. at 423.  Specifically, Alliance's Seventh Amendment claim, any dormant Commerce Claim concerning the requirement that cultivation centers be registered in the District, any Fifth Amendment claim concerning D.C. Code § 48-1201(a), and Alliance's Fourth Amendment claim all fail because Alliance has not sufficiently alleged an injury-in-fact.

First, Count One—Alliance has not plausibly alleged that any of its members suffered an injury-in-fact because fines were assessed against them without a jury trial or because they faced the risk of being fined after a hearing conducted without a jury.  Alliance's only factual allegation concerning any fines assessed against any of its members is that "Street Lawyer Services LLC received a $10,000 fine from ABCA without the chance of a jury trial at any stage

---

[2]    Plaintiff has not alleged that its challenge to the social equity licensing process is redressable by the injunctive and declaratory relief Plaintiff seeks.  *See TransUnion LLC*, 594 U.S. at 423.  Plaintiff alleges that the application for social equity applicants was open from March 1, 2024 through April 30, 2024.  Compl. ¶ 29.  Accordingly, the licensing process at issue closed more than six months before this case was filed.

of contesting its Summary Closure order." Compl. ¶ 63. But Alliance attached the relevant

order to the complaint; it is the approval of an offer in compromise in which Street Lawyer

Services LLC agreed to pay a $10,000 fine as part of the resolution of a summary closure. Pl.'s

Exs. at 50–56. As part of that agreement, Street Lawyer Services LLC waived "further litigation

including a hearing." *Id.* at 55. Alliance has not alleged that the summary closure proceeding

itself implicated the Seventh Amendment and lacks standing to challenge the imposition of

agreed upon fines. *See Asbury Auto Grp., Inc. v. FTC*, 2025 WL 2317455, at *5 (N.D. Tex. Aug.

11, 2025) (finding that plaintiff did not have standing to bring a Seventh Amendment challenge

to an administrative action seeking a cease and desist because "the pending administrative action

[did] not implicate the Seventh Amendment" and a Seventh Amendment injury related to the

assessment of fines in a separate proceeding would "hinge[ ] on a series of future events").

Indeed, the underlying Notice of Summary Action is a summary closure, not an imposition of

fines. *See* Pl.'s Ex. at 50, 53. Alliance lacks standing to pursue claims concerning the

assessment of fines without a jury trial by ABCA.

Second, Count Three—Alliance has failed to demonstrate standing to bring any claim

concerning the requirement that dispensaries in the District receive and purchase medical

marijuana from a cultivation center registered in the District. Compl. ¶ 83 (quoting 22-C DCMR

§ 5700). Alliance makes no allegations concerning any injury to any of its members by this

requirement. Alliance does not allege that any of its members are currently operating as medical

marijuana dispensaries or seek to operate as medical marijuana dispensaries, let alone that any of

its members have been injured by not being able to purchase medical marijuana from a

cultivation center that is not registered in the District. *See generally* Compl.

Third, in Count Four, Alliance challenges a purported contradiction between D.C. Code §
48-1201(a) *et seq.* and D.C. Code § 48-904.01(a), Compl. ¶ 128, but fails to allege any injury
under either statute.  As discussed above, in 2014, the D.C. Council enacted the Marijuana
Possession Decriminalization Amendment Act of 2014, codified as D.C. Code § 48-1201(a) *et
seq. See Kornegay*, 236 A.3d at 416.  Later that same year, "the District's voters . . . went further
and approved" Initiative 71, codified as D.C. Code § 48-904.01(a).  *Id.* at 417.  Alliance makes
no allegations whatsoever concerning the application of the Marijuana Possession
Decriminalization Amendment Act of 2014 (D.C. Code § 48-1201(a) *et seq.*) and certainly does
not allege that its members have been injured in any way by any contradiction between that law
and D.C. Code § 48-904.01(a).  Alliance does not allege that D.C. Code § 48-1201(a) has even
been applied since the passage of Initiative 71 or, indeed, identify any instance at all where the
statute was applied.  Accordingly, Alliance does not have standing to raise any related claims.

Fourth, in Court Seven, Alliance challenges ABCA's authority to inspect the entire
premises and business records of unlicensed establishments under the District's medical cannabis
regime, alleging that it violates the Fourth Amendment.  It is axiomatic that facial challenges to
statutes do "not create any exception from the general rule that constitutional adjudication
requires a review of the application of a statute to the conduct of the party before the Court."
*Members of City Council of City of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 796–98 (1984).
Put another way, Alliance must still demonstrate that its members have suffered some injury
from the searches it challenges.  *See Williams v. Lew*, 819 F.3d 466, 476 (D.C. Cir. 2016) ("But
we know of no case stating that a facial challenge to the constitutionality of a statute itself
suffices to establish standing, nor do we adopt such a holding.  Unless there is an actual Article
III Case[ ] or Controvers[y] before us, we lack jurisdiction.") (quotation omitted)).  Alliance does

13

not allege that ABCA inspected the private areas of any of its member's businesses or inspected

its member's business records or that any any member of Alliance has a fear of such searches

occurring in the future.  *See generally* Compl.; *see also* Pl.'s Ex. at 27–47 (cease-and-desist

orders).  At most, Alliance suggests that the underlying enforcement regime *theoretically*

authorizes unconstitutional searches.  *See e.g.*, Compl. ¶ 163 (alleging that the statute's

"ambiguity significantly increases the *likelihood* that businesses will be wrongfully classified"

and subject to unconstitutional searches, but not identifying any unlawful searches) (emphasis

added).   Because "'conjectural' injuries do[] not suffice under Article III," Alliance does not

have standing to raise this claim.  *Congregation Rabbinical College of Tartikov, Inc. v. Vill. of

Pomona, N.Y.*, 945 F.3d 83, 110 (2d Cir. 2019) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S.

555, 560 (1992)).  And to the extent Alliance seeks to bring any as-applied challenges, Alliance

has failed to allege that any of its members were subject to any searches at all by ABCA.

## II.    The Court Should Dismiss Certain Defendants.

Alliance brings this suit against the District, the Mayor, the Attorney General, the

Director of ABCA, the Director of DLCP, and the Chief of MPD in their official capacities, in

addition to each respective agency.  *See generally* Compl.  Procedurally, Alliance's claims ought

to merge as against the District of Columbia.  "It is well settled that if the plaintiff is suing the

defendants in their official capacities, the suit is to be treated as a suit against the District of

Columbia."  *Arnold v. Moore*, 980 F. Supp. 28, 36 (D.D.C. 1997).  This is because "[w]here both

the employer and an officer in his official capacity are named defendants, it is generally

redundant and an inefficient use of judicial resources to allow both claims to go forward."

*Campbell v. District of Columbia*, 972 F. Supp. 2d 38, 50 (D.D.C. 2013) (quotation omitted).

Here, because all claims against individually named Defendants are superfluous, the Court

should dismiss Alliance's claims against each individual defendant and merge them with those

brought against the District.  *See Mabry v. D.C. Off. of Risk Mgmt.*, Civ. Action No. 2020 CA

000873 B, 2020 D.C. Super. LEXIS 439, at *8 (D.C. Supp. Ct. July 28, 2020) (merging claims

brought against the Mayor and Attorney General as those against the District).  The same goes

for Alliance's claims against each agency.  *See Wultz v. Islamic Republic of Iran*, 755 F. Supp.

2d 1, 81 (D.D.C. 2010) (finding claims "that stem from identical allegations, that are decided

under identical legal standards, and for which identical relief is available" are duplicative).

Moreover, an agency of the District of Columbia "may be sued in its own right only if the entity

has been established as a separate corporate entity."  *Ray v. District of Columbia*, 535 A.2d 868,

870 n.2 (D.C. 1987); *see also Braxton v. Nat. Capital Housing Auth.*, 396 A.2d 215, 216 (D.C.

1978) ("A noncorporate department or other body within a municipal corporation is not sui juris.

Cases in this jurisdiction have consistently found that bodies within the District of Columbia

government are not suable as separate entities.").  That is, absent explicit statutory authority,

agencies of the District of Columbia cannot sue or be sued.  *Simmons v. District of Columbia

Armory Bd.*, 656 A.2d 1155, 1157 (D.C. 1995); *see also Bynum v. District of Columbia*, 424 F.

Supp. 3d 122, 128 (D.D.C. 2020); *Penn v. District of Columbia*, Civ. Action No. 22-0745

(CKK), 2023 WL 14338, at *3 (D.D.C. Jan. 10, 2023) ("However, as a subordinate agency

within the District of Columbia government, the OAG is non sui juris and therefore cannot be a

party to this lawsuit.").  Here, because no statute authorizes suits against MPD, DLCP, OAG, or

ABCA, these entities are *non sui juris*, and all claims against these agencies should be

dismissed.[3]

---

[3]      The District notes that although Alliance names MPD and DLCP as Defendants,
Alliance's Complaint is devoid of any factual allegations regarding either agency's conduct.
This is an additional reason to dismiss Alliance's claims against both Defendants.  *See Crowder
v. Bierman, Geesing, & Ward LLC*, 713 F. Supp. 2d 6, 8–9 (D.D.C. 2010) (dismissing
defendants where there were "no factual allegations concerning any actions by [them]").

III.    **Alliance Fails To State Any Claim on the Merits.**

    A.    **Alliance's Constitutional Claims (Counts One, Two, Three, Four, Five, Seven) Should All Be Dismissed.[4]**

        1.    **Plaintiff's Seventh Amendment Claim (Count One) Fails Because Enforcement Proceedings Related to the District's Medical Cannabis Licensing Regime Fall Within the Public Rights Exception.**

Alliance argues that the ABC Board's ability to administer fines runs afoul of the Seventh Amendment because the recipient of any such fine does not have a corresponding right to a jury trial. *See* Compl. ¶ 52. No such right, however, attaches to the District's administrative enforcement regime.

The Seventh Amendment guarantees the right to a jury trial in "[s]uits at common law." "'Suits at common law'" has been consistently interpreted to mean "'suits in which *legal* rights were to be ascertained and determined.'" *Granfinanciera v. Nordberg*, 492 U.S. 33, 42 (1989) (quoting *Parsons v. Bedford*, 3 Pet. 433, 447 (1830)). "To determine whether a particular action is a suit 'at common law,' courts examine both the nature of the issues involved and the nature of the remedy sought." *Am. Educ. Research Ass'n v. Public.Resource.Org, Inc.*, 78 F. Supp. 3d 542, 545 (D.D.C. 2015). "Specifically, the test for statutory actions involves two steps: (1) comparing the statutory action to 18th-century actions brought in the courts of England prior to

---

[4]    To raise a Section 1983 claim against the District, Alliance must allege that the District "is the 'moving force' behind [a] constitutional violation, meaning that an 'official municipal policy of some nature caused a constitutional tort.'" *Hurd v. District of Columbia*, 997 F.3d 332, 337 (D.C. Cir. 2021) (quoting *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691, 694 (1978)). For each constitutional claim, Alliance broadly asserts that the District is "propagating customs, policies, and practices that violate the plaintiffs' individual rights . . . in violation of 42 U.S.C. § 1983." *See e.g.*, Compl. ¶ 62. While Alliance does identify statutes that it challenges, Alliance has not identified customs or practices that purportedly violate its members' rights. To the extent Alliance intends to pursue any theories of municipal liability beyond an explicit policy for its Section 1983 claims (Counts 1, 2, 3, 4, 5, 7), Alliance has failed to do so and any such claims should be dismissed.

the merger of the courts of law and equity to determine whether the claim is legal or equitable in nature, and (2) examining the remedy sought and determining whether it is legal or equitable in nature." *Id.* However, "Congress may devise novel causes of action involving public rights free from the strictures of the Seventh Amendment if it assigns their adjudication to tribunals without statutory authority to employ juries as factfinders." *Granfinanciera*, 492 U.S. at 51. Thus, the public rights exception to the Seventh Amendment, as it is known, permits certain matters to be assigned for agency adjudication "even though such proceedings would not afford the right to a jury trial." *SEC v. Jarkesy*, 603 U.S. 109, 120 (2024). Public rights are matters that historically could have been determined exclusively by the executive and legislative branches; "no involvement by an Article III court in the initial adjudication is necessary in such a case." *Id.* at 128. "[T]he public-rights doctrine applies to matters 'arising between the government and others, which from their nature do not require judicial determination yet are susceptible of it." *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325, 334 (2018) (quoting *Crowell v. Benson*, 285 U.S. 22, 50 (1932)). A grant of a patent, for example, is a public right because it "did not exist at common law" and "is a creature of state law." *Id.* at 335 (internal quotations omitted).

Here, Alliance challenges the District's administrative regimes for enforcing its business licensing regulations. The District's business license scheme and specifically its medical cannabis licensing scheme are on their face specialized regulatory schemes that necessitate administrative adjudication. *Cf. Hill v. National Transp. Safety Bd.*, 886 F.2d 1275, 1282 (10th Cir. 1989) ("Administrative proceedings regarding suspension of a pilot certificate involve the special expertise of the FAA and are not suits at common law for which a jury trial is required."); 8 Moore's Federal Practice – Civil § 38.33 (2024) ("Licensing clearly is a proper regulatory

function under the public rights exception to the jury right requirement.").  Therefore, the public rights exception applies.

Alliance also argues that, because the ABC Board considers whether a building is a nuisance, a jury trial is required for cease-and-desist or summary closure proceedings.  *See* Compl. ¶¶ 54–56.  However, as the District of Columbia Court of Appeals has recognized, there is a "universally accepted rule that a jury trial may be bypassed when the court exercises its discretion in equity to abate a nuisance per se."  *Carithers v. District of Columbia*, 326 A.2d 798, 802 (D.C. 1974).  "[T]he summary abatement of nuisances without judicial process or proceeding was well known to the common law long prior to the adoption of the Constitution." *Lawton v. Steele*, 152 U.S. 133, 142 (1894).  Even if the public rights exception did not apply to these proceedings in their entirety—it does—a jury trial would not be required for a cease-and-desist or summary closure proceeding because such actions sound in equity.

### 2.    Plaintiff's Fifth Amendment Due Process Claim (Claim Two) Also Fails.

Under the umbrella of the Fifth Amendment's guarantee of due process, Alliance raises three procedural challenges regarding the ABC Board's cease-and-desist hearings.  First, that the Chairperson presiding over these hearings "acts as both the prosecutor and the decisionmaker," Compl. ¶ 71, and therefore is impermissibly biased; second, that the ABC Board's practices invert the proper standard of proof, *id.* ¶ 77; and third, that a pre-deprivation hearing is required before the ABC Board can issue a cease-and-desist or summary closure order, *id.* ¶¶ 106, 109. None of the alleged deficiencies have merit.  The District takes each in turn.

Alliance alleges that the chairperson's role in cease-and-desist hearings is fundamentally biased.  *Id.* ¶ 71.  That is, according to Alliance, because the chairperson calls witnesses for the government, evaluates and weighs evidence, and lodges objections to lines of questioning, the

chairperson is not impartial.  *Id.* ¶¶ 71–72.  Such a claim does not withstand scrutiny.  As the District of Columbia Court of Appeals noted in a related context, an administrative board's "mixing of [investigatory, prosecutorial, and adjudicative] functions . . . is a necessary part of the administrative scheme and does not per se violate due process."  *Alemayehu v. D.C. Alcoholic Bev. Control Bd.*, 109 A.3d 1095, 1100 (D.C. 2014) (quotation omitted).  Moreover, "[a] petitioner contending that an agency board was inappropriately biased by the exercise of another function must overcome a presumption of honesty and integrity in those serving as adjudicators[.]"  *Id.* (quotation omitted).  Alliance does not allege any specific impropriety; rather it takes issue with the ABC Board's "practices and customs."  Compl. ¶ 71.  Such generalized fear does not raise a viable due process claim.  *See Park v. D.C. Alcoholic Beverage Control Bd.*, 555 A.2d 1029, 1032 (D.C. 1989) ("[I]t is not per se improper for an official who holds two governmental positions, . . . to become involved in both the investigation and determination of the same case.").

Next, Alliance argues that ABC Board hearings on cease-and-desist orders violate due process because the burden of proof is placed on the business contesting the order.  *See* Compl. ¶¶ 77–78.  Not so.  The District of Columbia Administrative Procedures Act (DCAPA) governs ABC Board hearings relating to cease-and-desist orders.  *See* D.C. Code § 7-1671.12a(b)(2) ("[T]he ABC Board shall conduct a hearing in accordance with the procedures set forth in Chapter 5 of Title 2[.]").  Hearings on cease-and-desist orders are considered contested cases under the DCAPA and as such demand that "the proponent of a rule or order" meet its burden of proof.  D.C. Code § 2-509(b); *see also* 23 DCMR § 1600.3(d) (stipulating that cease-and-desist hearings are considered contested cases).  Alliance's argument necessarily fails.

Finally, Alliance argues that where ABCA issues either a cease-and-desist order or a summary closure order, ABCA's practice of providing a post-deprivation hearing is "unconstitutionally insufficient." Compl. ¶¶ 106, 109. This claim also falls short. "[T]he due process clause requires, at minimum, that the government provide notice and some kind of hearing before final deprivation of a property interest." *Propert v. District of Columbia*, 948 F. 2d 1327, 1331 (D.C. Cir. 1991). "[T]he contours of due process are flexible and vary depending on the circumstances of a given case." *Id.* at 1332. In "extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event," a post-deprivation hearing can satisfy due process. *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971).

Alliance is not entitled to a hearing prior to the issuance of a cease-and-desist order. A cease-and-desist order by the ABC Board is an order directing an entity to stop commercial transactions involving cannabis in violation of the law; such a finding requires that the entity receiving the order is causing "immediate and irreparable harm to the public." *See* D.C. Code § 7-1671.12a(a). For one, this does not constitute a "final deprivation of a property interest" as a cease-and-desist order "does not require the [recipient] to suffer some sort of loss." *Dean v. Town of Hamden*, 164 F. Supp. 3d 293, 303 (D. Conn. 2016). Any arguable loss only goes so far as preventing an entity from violating the law. *See Phantom of Eastern Pa. v. N.J. State Police*, Civ. Action No. 07-2748, 2008 WL 2039461, at *4 (E.D. Pa. May 12, 2008) ("The plaintiff here is not prevented from operating a business, but may only have indirectly lost business associated with the illicit transport of fireworks into states that criminalize their possession. This . . . is not protected."). For another, the entity that receives a cease-and-desist order may petition for a hearing within "15 days after the service of the order." D.C. Code § 7-1671.12a(b)(1). This is

sufficient for purposes of due process. *See Hudson v. Palmer*, 468 U.S. 517, 531–32 (1984) ("[E]ither the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking...satisf[ies] the requirements of procedural due process.").

Similarly, with respect to summary closures, the ABC Board can summarily close a business if "after an inspection, ABCA determines that an unlicensed establishment presents an imminent danger to the health or safety of the public." D.C. Code § 7-1671.08(g)(1). In the event of a summary closure, the owner of an unlicensed business has five business days to request a hearing with the ABC Board; the Board is required to hold a hearing within five business days of a timely request and issue a written decision within five business days of a hearing. D.C. Code § 7-1671.08(g)(5). In determining whether a post-deprivation hearing is sufficient, "the *Mathews v. Elridge* factors guide the analysis, weighing the private interest affected, the risk of erroneously depriving that interest, and additional safeguards' likely value against the government's interests." *Smith v. District of Columbia*, 387 F. Supp. 3d 8, 32 (D.D.C. 2019) (citing *Mathews v. Elridge*, 424 U.S. 319, 225 (1976)). Here, the *Mathews* factors weigh in favor of the District. The District has a significant interest in protecting public health and safety, and requiring a pre-deprivation hearing would interfere with the District's ability to promptly close businesses that present a danger to the health and safety of the public. *See Johnson v. District of Columbia Dep't of Health*, 163 A.3d 746, 753 (D.C. 2017) (noting that "[a] licensing agency has broad discretion to suspend or revoke a license for reasonable cause in order to protect public health, safety, or morals.") (quotation omitted)). The risk of erroneous deprivation is mitigated by the requirements in the statute for a timely hearing; in the event of a

summary closure, a business owner is entitled to a written decision from the ABC Board within ten business days of requesting a hearing. *See* D.C. Code § 7-1671.08(g)(5). Additionally, if the closure is based on a business's failure to comply with a cease-and-desist order, the business would have previously had the opportunity to appeal the cease-and-desist order, which also reduces the risk of erroneous deprivation. Lastly, although Alliance's members have an economic interest in being able to operate their businesses, Alliance's members are self-described "recreational cannabis entities," Compl. ¶ 6, and the business interest they seek to protect is operating a business that involves the commercial transfer of cannabis without medical cannabis licenses, which violates District law. *See Gonzalez-Droz v. Gonzalez-Colon*, 660 F.3d 1, 13–14 (1st Cir. 2011) (applying the *Mathews* factors to a challenge to a post-deprivation hearing on a provisional license suspension and noting that "[e]specially in cases involving public health and safety and the integrity of professional licensure, the force of [the possible risk of erroneous deprivation and the possible benefit of additional safeguards] is significantly diminished by the availability of prompt post deprivation review").[5]

---

[5] Alliance alleges that its members are businesses that facilitated the transfer of cannabis as a "non-commercial component." Compl. ¶ 20. This allegation is not plausible on its face; Alliance describes its members as "recreational cannabis entities," *id.* ¶ 6, and Alliance attached as exhibits cease-and-desist orders concerning three of its members in which the ABC Board found that these commercial entities were involved in the sale of cannabis, Pl.'s Ex. at 28 (describing an undercover agent's purchase of "a 3.5 gram bag of cannabis flower" for $32), 35 (describing the entity's website describing the business as a weed delivery service and weed dispensary), 42 (describing photos of shelves containing cannabis products in a manner consistent with retail operations and demonstrating that the owner possessed more than 2 ounces of cannabis). Alliance does not address the content of the cease-and-desist orders or allege that any of the findings were made in error. *See generally* Compl.

3.    **The Dormant Commerce Clause (Claim Three) Does Not Apply to the Sale of Cannabis, a Federally Illegal Market.**

Under Article I Section 8 of the Constitution, Congress has the authority, "[t]o regulate Commerce . . . among the several States." U.S. Const. art I, § 8, cl. 3. The dormant Commerce Clause is a judicially created corollary to Congress's affirmative power and is one of "negative implication . . . driven by concern about 'economic protectionism, that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.'" *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337–38 (2008) (quoting *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273–74 (1988)). The dormant Commerce Clause "prevents a State from jeopardizing the welfare of the Nation as a whole by placing burdens on the flow of commerce across its borders that commerce wholly within those borders would not bear." *Am. Trucking Ass'n v. Mich. Pub. Serv. Comm'n*, 545 U.S. 429, 433 (2005). The "fundamental objective" of the dormant Commerce Clause is to "preserv[e] a national market for competition undisturbed by preferential advantages conferred by a State upon its residents or resident competitors." *GMC v. Tracy*, 519 U.S. 278, 299 (1997).

To determine whether the dormant Commerce Clause applies, courts must first ask "whether [the] challenged law discriminates against interstate commerce," *Davis*, 553 U.S. at 338 (citation omitted), or determine if the law's "effect is to favor in-state economic interests over out-of-state interests." *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579 (1986). Should the dormant Commerce Clause apply, a law "survives only if it 'advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives.'" *Davis*, 553 U.S. at 338 (quoting *Oregon Waste Sys. v. Dep't of Envtl. Quality*, 511 U.S. 93, 99–101 (1994)). "[N]ondiscriminatory regulations that have only incidental effects on interstate commerce are valid unless 'the burden imposed on such

23

commerce is clearly excessive in relation to the putative local benefits.'" *Oregon Waste Sys.*, 511 U.S. at 99 (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)).

Alliance challenges two components of the District's medical marijuana licensing scheme that it purports violate the dormant Commerce Clause. *See* Compl. ¶¶ 83–84 (raising challenges to the District's definition of "social equity applicants" and a requirement that all cannabis be purchased from cultivation centers registered in the District). The Court need not reach this question. In short, because cannabis is illegal at the federal level, *see* 21 U.S.C. § 812(c), the dormant Commerce Clause does not apply.

"The Commerce Clause does not recognize an interest in promoting a competitive market in illegal goods or services or forestalling hypothetical interstate rivalries in the same." *Ne. Patients Grp. v. Maine Dep't of Admin. & Fin. Servs.*, 45 F.4th 542, 559 (1st Cir. 2022) (Gelpi, J., dissenting). As another district court pointedly noted, "it defies common sense to find that the dormant Commerce Clause, drawn from Congress' power to regulate interstate commerce, prevents the states from passing laws which inhibit a market which Congress has already declared prohibited." *Jensen v. Md. Cannabis Admin.*, 719 F. Supp. 3d 466, 483 (D. Md. 2024). Numerous other courts have followed this reasoning. *See Fluresh, LLC v. City of Grand Rapids*, Case No. 25-cv-252, 2025 WL 1122034, at *8 (W.D. Mich. Apr. 16, 2025) ("In other words, because Congress has outlawed a national market for marijuana, that market is not one that the dormant Commerce Clause intended to protect."); *Peridot Tree WA Inc.*, 3:23-cv-06111, 2024 WL 69733, at *1 (W.D. Wash. Jan. 5, 2024) ("[T]he dormant Commerce Clause does not protect a right to participate in an interstate market that Congress has declared illegal."); *Variscite NY Four, LLC*, 1:23-cv-01599, 2024 WL 406490, at *12 (N.D.N.Y. Feb. 2, 2024) ("Given that the national market for cannabis is illegal, it would make little sense to apply the dormant Commerce

Clause to New York's cannabis licensing scheme."), *overruled by Variscite NY Four, LLC v. N.Y. State Cannabis Control Bd.*, No. 24-384-cv, 2025 WL 2313142 (2d Cir. Aug. 12, 2025); *Brinkmeyer v. Wash. State Liquor & Cannabis Bd.*, Civ. No. C20-5661, 2023 WL 1798173, at *11 (W.D. Wash. Feb. 7, 2023) ("The dormant Commerce Clause does not apply to federally illegal markets, including Washington's cannabis market and, thus, it does not apply to Washington's residency requirements."); *Viridis Labs., v. Kluytman*, No. 1:22-cv-283, 2023 WL 4861698, at *2 (W.D. Mich. July 31, 2023) ("It is not clear to this Court how the dormant Commerce Clause can be read to protect illegal interstate commerce.").[6] At bottom, because there is no *legal* national market for cannabis, the dormant Commerce Clause does not apply. This Court should decline Alliance's invitation to extend the doctrine here.

---

[6]     The District acknowledges that courts are split on whether the dormant Commerce Clause applies to cannabis. The two Circuits to address this have concluded that it does. *See Ne. Patients Grp. v. Maine Dep't of Admin. & Fin. Servs.*, 45 F.4th 542 (1st Cit. 2022); *Variscite NY Four, LLC v. N.Y. State Cannabis Control Bd.*, No. 24-384-cv, 2025 WL 2313142 (2d Cir. Aug. 12, 2025). Both, however, are accompanied by persuasive dissents. *See Ne. Patients Grp.*, 45 F.4th at 559 (Gelpi, J., dissenting); *Variscite NY Four*, 2025 WL 2313142, at *13 (Livingston, C.J., dissenting) ("When Congress criminalizes a market—and, by definition, seeks to eliminat[e] commercial transactions in the interstate market—I would presume that it authorizes states to enact their own laws that aid that objective, whether by banning, restricting, or burdening those transactions.") (quotation omitted)). And, of course, neither is binding on this Court. Here, Alliance has not demonstrated that it has standing to pursue these claims or that its purported injuries are redressable. *See supra* Section I.C; *see also Zibelman*, 906 F.3d at 58 ("[T]o show standing for [a] dormant Commerce Clause claim, Plaintiffs must demonstrate that their alleged injuries are traceable to (*i.e.*, the result of) or a consequence of discrimination against interstate commerce."). Nor has Alliance alleged whether its members sought licenses as social equity applications, alleging only that these members were "excluded." *See* Compl. ¶ 30. Should this Court determine that the dormant Commerce Clause applies to cannabis, the District would need discovery to determine the merits of Alliance's dormant Commerce Clause claim concerning its members' purported exclusion from the social equity application process. As to Alliance's challenge to the requirement that dispensaries purchase medical marijuana from cultivation centers registered in the District, Alliance has failed to make any factual allegations to support its contention that a registration requirement discriminates against interstate commerce.

**4.      Plaintiff's Fifth Amendment Overbreadth Claim (Claim Four) Fails Because the District's Statutes Are Clear.**

"A law may be vague in violation of the Due Process Clause for either of two reasons: 'First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize or even encourage arbitrary and discriminatory enforcement.'" *Act Now to Stop War & End Racism Coal. v. District of Columbia*, 846 F.3d 391, 409 (D.C. Cir. 2017) (quoting *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999)).  Relatedly, a statute can be overbroad "if it punishes a substantial amount of protected speech, judged in relation to [its] plainly legitimate sweep." *Virginia v. Hicks*, 539 U.S. 113, 118–19 (2003).  The rules of statutory interpretation "consistently favor that interpretation of legislation which supports its constitutionality." *United States v. Bronstein*, 849 F.3d 1101, 1106 (D.C. Cir. 2017) (quoting *Screws v. United States*, 325 U.S. 91, 98 (1945)); *see also id.* ("'Only if no construction can save the Act from this claim of unconstitutionality are we willing to' strike the statute.") (quoting *Screws*, 325 U.S. at 100)).  In assessing a vagueness challenge, "[w]ords receive their 'plain, obvious, and common sense' meaning, 'unless context furnishes some ground to control, qualify, or enlarge it.'" *Bronstein*, 849 F.3d at 1107 (quoting Joseph Story, *Commentaries on the Constitution of the United States* 157–58 (1833)).

Alliance argues that D.C. Code § 7-1671.01(9) and (22), and D.C. Code § 48-904.01(a)(1)(A) and (B), are incompatible in that they are vague, overbroad, and in direct conflict.  Compl. ¶¶ 101–02.  But the relevant statutes provide clear guidance to individuals about what activity involving cannabis constitutes criminal activity and to businesses about when those businesses need a medical marijuana license.  D.C. Code § 48-904.01 provides that it is unlawful for any person to manufacture, distribute, or possess, with intent to manufacture or distribute, a controlled substance.  D.C. Code § 48-904.01(a)(1) provides an exception, stating

that "it shall be lawful, and shall not be an offense under District of Columbia law, for any person 21 years of age or older to" to possess, use, purchase, or transport "marijuana weighing two ounces or less" or to "[t]ransfer to another person 21 years of age or older, without remuneration, marijuana weighing one ounce or less." "'[R]emuneration' can encompass any kind of reward or compensation, not just money." *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 278 (2018); *see also United States ex re. Martin v. Hathaway*, 63 F.4th 1043, 1048 (6th Cir. 2023) (discussing remuneration "as something 'paid' or transferred"). Under D.C. Code § 7-1671.01, an "[u]nlicensed establishment" is "a sole proprietorship, partnership, or other business entity that: (A) [s]ells, exchanges as part of a commercial transaction, or delivers cannabis and cannabis products; (B) [o]perates at or delivers from a specific location in the District; and (C) [i]s not licensed by ABCA as a cultivation center, retailer, internet retailer, manufacturer, courier or testing laboratory."

There is no conflict between a District statute allowing the transfer of cannabis between individuals without "any kind of reward or compensation," *Wis. Cent. Ltd.*, 585 U.S. at 278, and a restriction on the sale or exchange of cannabis as part of a commercial transaction to those businesses with medical cannabis licenses. These statutes serve two independent functions: one specifies what activity involving marijuana constitutes a criminal offense and the other identifies what activity involving a sale or commercial exchange requires a medical cannabis license. The two statutes both convey specify standards of conduct by their plain text and ordinary meaning. *See Bronstein*, 849 F.3d at 1107 (finding that "a statute is unconstitutionally vague if, applying the rules for interpreting legal texts, its meaning specifies no standard of conduct at all.").

Alliance's claim is premised on the assumption that a commercial business cannot be required to get a license to engage in any activity if it is lawful for an individual to participate in

that activity in their personal capacity. *See* Compl. ¶ 101 (alleging that the medical cannabis statutes "infringe upon rights granted by D.C. Code §§ 48-904.01(a)(1)(A) and (B)"), ¶ 110 (alleging that cease-and-desist orders issued by ABCA conflict with D.C. Code § 48-904.01(a)(1)(A) and (B) because the orders direct commercial business to cease all cannabis activity). This logic is untenable. There is simply no support for the legal proposition that commercial business entities are exempt from a licensing requirement because the underlying activity is legal. To the contrary, many activities that individuals can freely do in a non-commercial setting are regulated when commercial entities offer such activities as part of a business. For example, in the District, it is not a crime for someone to paint a friend's nails at their house, but a license is required for a business to offer manicures as part of its business model. *See* D.C. Code §§ 47-2809, 47-2851.02. Under Alliance's theory, it would violate the Constitution if a state's legal regime allowed an individual to gift a friend a bottle of wine without running afoul of a criminal statute, but required a restaurant to have a liquor license to run a promotion in which diners who order dessert get a free glass of wine. The Fifth Amendment does not offer an end-around to a license requirement just because it is not a crime for individuals to take those actions in their personal capacity; indeed, the Fifth Amendment merely requires statutes to provide notice of what conduct is prohibited (and what conduct requires a license) and to provide sufficient guidance avoid arbitrary enforcement. As laid out above, the District's criminal statutes and medical cannabis licensing statutes meet those requirements.[7]

---

[7]    For the same reasons, Alliance's argument that D.C. Code § 48-1211, which provides that the Office of Administrative Hearings will adjudicate civil violations for the non-remunerative transfer of cannabis under D.C. Code § 48-1201, *see* Compl. ¶ 129, does not create confusion about what commercial activity requires the appropriate business license.

Alliance also advances an opaque vagueness argument concerning the District's medical cannabis testing requirements.  Compl. ¶¶ 116–24.  Alliance's argument is hard to follow but appears to be that because the ABC Board now requires lab testing for licensed cultivators and dispensaries (as to quality) where it previously allowed for self-certification, the change leaves a lack of "adequate notice of what conduct is prohibited, thereby leading to arbitrary enforcement."  *Id.* ¶ 116.  Left unsaid is how any potential enforcement is arbitrary or how it would be caused by a change in statute.  Outside of Alliance's unsupported assertion, Alliance offers no support to suggest that a change in law or practice lends itself to an unconstitutionally vague statute.  Because neither of the laws Alliance points to are in actual conflict or fails to provide notice of prohibited conduct, Alliance's overbreadth and vagueness challenges fail.

### 5.    Alliance's Fifth Amendment Self-Incrimination Claim (Count Five) Fails Because the Fifth Amendment Does Not Extend to Statements in Regulatory Documents.

Alliance argues that the District's requirement for businesses to submit an "Unlicensed Operator Attestation Form," during the 2024 licensing round, in which applicants acknowledged that they previously "engaged in commercial cannabis transactions," violates the Fifth Amendment because the form required applicants to "self-incriminate" and failed to notify applicants of their "right against self-incrimination."  Compl. ¶ 142.  This claim fails easily.  The Fifth Amendment testimonial privilege against self-incrimination does not extend to mandated compliance with regulatory documents.  *See United States v. Hubbel*, 530 U.S. 27, 35 (2000).  "[T]he fact that incriminating evidence may be the byproduct of obedience to a regulatory requirement, such as filing an income tax return, maintaining required records, or reporting an accident, does not clothe such required conduct with the testimonial privilege."  *Id.*  The

District's use of an "Unlicensed Attestation Form" is no different in that it was a component of the District's efforts to regulate its medical marijuana industry. *See* Compl. ¶¶ 31–32.

Moreover, the Fifth Amendment does not apply unless "individuals are . . . in some way compelled to make self-incriminating statements." *Sibley v. Obama*, 810 F. Supp. 2d 309, 311 (D.D.C. 2011) (quoting *Selective Serv. Sys. v. Minnesota Pub. Interest Research Grp.*, 468 U.S. 841, 857 (1984)). There is no compulsion here as "[n]othing in the District's medical marijuana laws requires plaintiff to apply to be a cultivator or to run a dispensary." *Id.* Thus, the Fifth Amendment does not apply. Because "[t]he Fifth Amendment is not an impediment to the enforcement of a valid civil regulatory regime," *Rajah v. Mukasey*, 544 F.3d 427, 442 (2d Cir. 2008), and because no member of Alliance was "compelled" to make a self-incriminating statement, *see Sibley*, 810 F. Supp. 2d at 311, Alliance's claim fails.

### 6. Alliance's Fourth Amendment Claim (Count Seven) Fails Because They Do Not Allege Any Illegal Search.

Alliance brings a facial challenge to the component of the District's marijuana enforcement regime that grants ABCA "the authority to inspect the entire premises, inventory, and business records of an unlicensed establishment to determine whether the business is conducting activity in violation of this title." Compl. ¶ 158 (quoting D.C. Code § 7-1617.08(g)(1)). According to Alliance, this provision allows ABCA access to inspect more of a business premises or a business's records than a private citizen and runs afoul of the Fourth Amendment because it authorizes searches without a warrant, thus making the law "facially invalid." *Id.* ¶¶ 160, 164. This facial challenge to the District's law fails on the merits.

"[T]he ultimate touchstone of the Fourth Amendment is reasonableness." *Riley v. California*, 573 U.S. 373, 381 (2014) (internal quotation omitted). As the Supreme Court has recognized, "the owner or operator of commercial premises in a 'closely regulated' industry has

a reduced expectation of privacy" and "a warrantless inspection of commercial premises may well be reasonable within the meaning of the Fourth Amendment."  *New York v. Burger*, 482 U.S. 691, 702 (1987).  Here, there can be no dispute that medical cannabis businesses have a "particularly attenuated" expectation of privacy.  *Id.* at 716 n.27.  Cannabis is a controlled substance that is strictly regulated under federal law and closely regulated under District law. Accordingly, a warrantless inspection of business records for commercial businesses involved in the distribution of cannabis "may well be reasonable within the meaning of the Fourth Amendment."  *See United States v. Motley*, 89 F.4th 777, 786 (9th Cir. 2023) (finding no objectively reasonable expectation of privacy in prescription opioid records "[g]iven the long-standing and pervasive regulation of opioids"); *see also Burger*, 482 U.S. at 702; *id.* at 716 ("The discovery of evidence of crimes in the course of an otherwise proper administrative inspection does not render that search illegal or the administrative scheme suspect.").  Moreover, as noted above, in the absence of allegations concerning an actual search of a non-public area of a member's business or an inspection of a member's business records, no as-applied reasonableness analysis can be performed.  Alliance's Fourth Amendment claim necessarily fails.

**B.**     **Alliance's Claim that the District's Medical Cannabis Program Is Preempted by the Appropriations Act (Count Six) Fails Based on a Plain Reading of the Act.**

Alliance contends that the District's medical cannabis program is preempted by the federal Further Consolidated Appropriations Act of 2024 (the Act), as, according to Alliance, the District is forbidden from "regulat[ing] cannabis transfer."  *See* Compl. ¶ 153.  This argument is contrary to a plain reading of the Act.  The Act provides that no funds from any source can be used by the District to "enact any law, rule, or regulation to legalize or otherwise reduce

penalties associated with the possession, use, or distribution of any schedule I substance under the [CSA] or any tetrahydrocannabinols derivative *for recreational purposes*." Pub. L. No. 118-47, § 809 (emphasis added). The statute is silent as to the regulation of marijuana for medicinal purposes. And further, although the District is prohibited from using *federal funds* appropriated by the Act "to enact or carry out any law, rule, or regulation to legalize or otherwise reduce penalties associated with the possession, use, or distribution of any schedule I substance under the [CSA] or any tetrahydrocannabibols derivative," *id.*, this distinction between recreational and medicinal necessarily allows the District to use funds from other non-federal sources (such as local tax dollars) to regulate cannabis for medical purposes.

## CONCLUSION

For the foregoing reasons, Alliance's Amended Complaint should be dismissed.

Date: October 13, 2025.                                   Respectfully Submitted,

                                                          BRIAN L. SCHWALB
                                                          Attorney General for the District of Columbia

                                                          CHAD COPELAND
                                                          Deputy Attorney General
                                                          Civil Litigation Division

                                                          */s/ Matthew R. Blecher*
                                                          MATTHEW R. BLECHER [1012957]
                                                          Chief, Equity Section, Civil Litigation Division

                                                          */s/ Honey Morton*
                                                          HONEY MORTON [1019878]
                                                          Assistant Chief, Equity Section

                                                          */s/ David R. Wasserstein*
                                                          DAVID R. WASSERSTEIN [1736006]
                                                          HELEN M. RAVE [90003876]
                                                          MATEYA B. KELLEY [888219451]
                                                          Assistant Attorneys General
                                                          Equity Section
                                                          400 Sixth Street, N.W., Suite 10100

Washington, D.C. 20001
Phone: (202) 442-9784
Email: david.wasserstein@dc.gov

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ALLIANCE FOR RECREATIONAL CANNABIS ENTITIES LLC,**<br><br>　　**Plaintiff,**<br><br>　　**v.**<br><br>**DISTRICT OF COLUMBIA,** *et al.*,<br><br>　　**Defendants.** | **Civil Action No. 1:24-cv-03164-ACR** |

## <u>ORDER</u>

Upon consideration of Defendants' Motion to Dismiss (Motion), any opposition, and the entire record, it is:

**ORDERED** that the Motion is **GRANTED**; and

**ORDERED** that all claims against all Defendants are **DISMISSED**.

**SO ORDERED**.


Date: _____          _____
                                 THE HONORABLE ANA C. REYES
                                 Judge, United States District Court
                                 for the District of Columbia