# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Alliance of Recreational Cannabis Entities, | ) |
| | ) |
| Plaintiff, | ) Case No.: 1:24-cv-03164 |
| | ) |
| v. | ) |
| | )   Judge: Hon. Ana C. Reyes |
| DISTRICT OF COLUMBIA, et al. | ) |
| | ) |
| Defendants. | ) |
| | ) |

## Table of Contents

INTRODUCTION ……………………………………………………………………1
FACTUAL BACKGROUND ………………………………………………………………2
LEGAL STANDARD ………………………………………………………………4
ARGUMENT …………………………………………………………… 5
I. The Alliance Has Associational Standing …………………………………….....5
II. Count One: Seventh Amendment Violation—Agency "Nuisance" Adjudications and Punitive Civil Penalties Require a Jury …………………………………… 6
III. Count Two: Fifth Amendment Due Process Violations ……………………………… 8
A. Unconstitutional Burden Shifting at the Only Available Hearing …………………… 8
B. Structural Bias: ABCA as Judge in Its Own Cause ………………………….... 10
IV. Count Three: Dormant Commerce Clause Violation ……………………………………11
V. Counts Four & Five: Vagueness and Self-Incrimination ……………………………14
A. Vagueness ……………………………………………………………14
B. Self-Incrimination …………………………………………………………16
VI. Proper Parties: Non-Sui-Juris Agencies and Official-Capacity Defendants ……………… 17
VII. Leave to Amend ……………………………………………………………18
CONCLUSION ……………………………………………………………18
PRAYER FOR RELIEF ……………………………………………………………18

## Table of Authorities

**Cases**

*Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015) ………………………………17
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ………………………………………………5
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ……………………………………5
*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573 (1986) ……………12
*City of Chicago v. Morales*, 527 U.S. 41 (1999) ……………………………………15
*Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328 (2008) ……………………………11, 13
*Ex parte Young*, 209 U.S. 123 (1908) ……………………………………………17

*FCC v. Fox Television Stations, Inc.*, 567 U.S. 239 (2012) ……………………………………..16
*Garrity v. New Jersey*, 385 U.S. 493 (1967) …………………………………………………….16
*Gen. Motors Corp. v. Tracy*, 519 U.S. 278 (1997) ……………………………………………….6
*Gibson v. Berryhill*, 411 U.S. 564 (1973) ……………………………………………………….11
*Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989) …………………………………………6, 7
*Grayned v. City of Rockford*, 408 U.S. 104 (1972) …………………………………………..14
*Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977) ………………………………4
*Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008)…………………………………4
*Kolender v. Lawson*, 461 U.S. 352 (1983) ……………………………………………………..15
*Mathews v. Eldridge*, 424 U.S. 319 (1976) …………………………………………………….9
*N.E. Patients Grp. v. Maine Dep't of Admin. & Fin. Servs.*, 554 F. Supp. 3d 177 (D. Me. 2021), *aff'd*, 45 F.4th 542 (1st Cir. 2022) …………………………………………………… 12
*NPG, LLC v. City of Portland*, No. 2:20-cv-00208, 2020 WL 4741913 (D. Me. Aug. 14, 2020) ……………………………………………………………………………………12
*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 244 (2018) …………..8
*Or. Waste Sys., Inc. v. Dep't of Envtl. Quality*, 511 U.S. 93 (1994) ……………………….11, 12
*People v. David W.*, 95 N.Y.2d 130 (2000) ……………………………………………………..9
*Ricks v. District of Columbia*, 414 F.2d 1097, 1107 (D.C. Cir. 1968)…………………………...16
*Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970) …………………………………………….12
*SEC v. Jarkesy*, 144 S. Ct. 2117 (2024) ……………………………………………………6, 7, 8
*Sessions v. Dimaya*, 584 U.S. 148, 157-58 (2018)……………………………………………14
*Smith v. State*, 146 Idaho 822 (2009) …………………………………………………………9
*Toigo v. Dep't of Health & Senior Servs.*, 549 F. Supp. 3d 985 (W.D. Mo. 2021) …………….12
*Tull v. United States*, 481 U.S. 412 (1987) ………………………………………………….7, 8
*Tumey v. Ohio*, 273 U.S. 510 (1927) ………………………………………………………10, 11
*Variscite N.Y. Four, LLC v. N.Y. State Cannabis Control Bd.*, 152 F.4th 47 (2d Cir. 2025) …………………………………………………………………………………...11, 13
*Variscite NY One, Inc. v. New York*, 640 F. Supp. 3d 232 (N.D.N.Y. 2022) …………....…….12
*Ward v. Monroeville*, 409 U.S. 57 (1972) ……………………………………………………10, 11
*Williams v. Pennsylvania*, 136 S. Ct. 1899 (2016) …………………………………………….11
*Withrow v. Larkin*, 421 U.S. 35 (1975) …………………………………………………………11

## Constitutional Provisions

U.S. Const. amend. VII ……………………………………………………………………….6

## Statutes & Codes

D.C. Code § 47-2844(a-2)(1) ……………………………………………………………….7, 8
D.C. Code § 7-1671.01(20C) …………………………………………………………11, 12, 13
D.C. Code § 7-1671.01(22) ……………………………………………………………………15
D.C. Code § 7-1671.08(d) …………………………………………………………………….10
D.C. Code § 7-1671.08(f)(3) ………………………………………………………….4, 7, 8, 10
D.C. Code § 7-1671.12a(b)(1) ……………………………………………………………….9
D.C. Code § 7-1671.12e(a) …………………………………………………………..4, 6, 7, 8
D.C. Code § 7-1675.01(b) …………………………………………………………………….7, 8

D.C. Code § 48-901.02(3)(A)..............................................................................16
D.C. Code § 48-901.02(18) ..............................................................................14
D.C. Code § 48-904.01(a)(1)(B) .......................................................................14

**Rules**

Fed. R. Civ. P. 12(b)(1) .....................................................................................4
Fed. R. Civ. P. 12(b)(6) .....................................................................................5
Fed. R. Civ. P. 15(a)(2) ...................................................................................17

**Other Authorities**

1 William Blackstone, *Commentaries on the Laws of England* n.47 (1765–69) ............. 7
The Federalist No. 10 (James Madison) ......................................................... 10

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Alliance of Recreational Cannabis Entities, ) | |
| ) | |
| Plaintiff, ) | Case No.: 1:24-cv-03164 |
| ) | |
| v. ) | |
| ) | Judge: Hon. Ana C. Reyes |
| DISTRICT OF COLUMBIA, et al. ) | |
| ) | |
| Defendants. ) | |
| ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS AMENDED COMPLAINT**

COMES NOW, Plaintiff, Alliance of Recreational Cannabis Entities, LLC (hereinafter referred to as "Plaintiff", "Plaintiff ARCE", or "Alliance"), by and through counsel respectfully moves this Honorable Court to deny Defendants' Motion to Dismiss. Plaintiff files this opposition motion to Defendants' Motion to Dismiss and offers the following.

**INTRODUCTION**

Defendants' Motion to Dismiss invites this Court to decide profound constitutional questions on a skeletal jurisdictional record and to disregard well-pled injuries that are concrete, ongoing, and directly redressable. Plaintiff Alliance has filed an Amended Complaint alleging that the District of Columbia's (the "District") regulatory and enforcement regime against so-called "I-71" businesses violates the Constitution in several fundamental ways. These claims include:

1. Seventh Amendment violations, where the Alcoholic Beverage and Cannabis Board ("ABC Board") adjudicates quasi-nuisance claims and imposes punitive civil penalties actions historically reserved for a jury;

2. Fifth Amendment due process violations, arising from (i) a burden-shifting administrative scheme that forces the accused to disprove the government's case and (ii) a structurally biased adjudicator that has a direct financial stake in the outcome of its own proceedings;

3. Dormant Commerce Clause violations, based on facially discriminatory statutes that erect residency and in-state incorporation barriers to protect local economic interests; and

4. Overbreadth, vagueness, and self-incrimination violations tied to the District's contradictory and coercive enforcement of laws surrounding Initiative 71 and medical cannabis.

These claims are supported by specific, factual allegations of member injuries, including cease-and-desist orders, summary closures, and tens of thousands of dollars in fines. At the pleading stage, these allegations are more than sufficient to establish standing and state plausible claims for relief. Accordingly, Defendants' motion should be denied.

## FACTUAL BACKGROUND

This case concerns the District of Columbia's systematic effort to undermine and dismantle the lawful, voter-approved cannabis market created by Initiative 71 ("I-71"). In 2014, D.C. voters overwhelmingly passed I-71, which legalized the "transfer to another person 21 years of age or older, without remuneration, marijuana weighing one ounce or less." (Am. Compl. ¶ 15). The law defines "person" to include business entities. (Am. Compl. ¶ 17). Plaintiff's members operated lawfully under this regime, typically as retail businesses selling clothing, art, or other goods, which also included a "non-commercial component" where these lawful, non-remunerated I-71 transfers occurred. (Am. Compl. ¶ 20).

Plaintiff's members operated lawfully under this regime, typically as retail businesses selling clothing, art, or other goods, which also included a "non-commercial component" where these lawful, non-remunerated I-71 transfers occurred. (Am. Compl. ¶ 20).

The District's response has been to create a pretextual "medical" regime to regulate a market it is congressionally forbidden from regulating as "recreational." The apparent reason for this pretext is the "Harris Rider," a congressional appropriations rider that has been consistently included in appropriations bills to prohibit the District from using funds to "enact any law... to legalize" a recreational cannabis market. (Am. Compl. ¶¶ 14, 151). This pretext was openly confirmed by D.C. Councilmember Frumin, who stated at a recorded ANC 3F meeting on July 15, 2025, that "the comment about medical marijuana, that there is "nothing medical it is true" but rather, it is "the way the city is legalizing marijuana and regulating it."[1]

This successful, voter-created market "profoundly harmed" the District's separate, preferred medical cannabis program. (Am. Compl. Ex. 1). In response, the D.C. Council passed the Medical Cannabis Amendment Act ("the Act"), a regulatory scheme designed to force the I-71 market out of existence. The Act launched a two-pronged attack:

1. A Coercive "Carrot": The Act offered a "transitional" license, but this "on-ramp" was designed to be coercive and discriminatory. It required applicants to sign a mandatory "Unlicensed Operator Attestation Form," forcing them to confess to "commercial cannabis transactions", a false and self-incriminating statement for those operating lawfully under I-71. (Am. Compl. ¶¶ 141-142). Furthermore, the Act's "social equity" program, a key pathway to licensing, was closed to members like Krizzo Washington and Promoco LLC specifically because they were not D.C. residents, an admission of

---

[1] ANC 3F's July 15, 2025 meeting was recorded and posted to YouTube at https://youtu.be/zKJ4gxrmWVU?si=qId-gJ4GyTzhyi-z. Councilmember Frumin's remarks take place between the 1:49:23 and 1:49:45 time marks.

discriminatory intent later echoed by the D.C. Council itself. (Am. Compl. ¶ 89; Ex. 1).

2. A "Stick" of Unconstitutional Enforcement: For those who did not or could not take the coercive "carrot," the Act empowered the ABC Board to act as investigator, prosecutor, judge, and jury to destroy their businesses. This regime operates by (a) issuing cease-and-desist and summary closure orders without a pre-deprivation hearing (Am. Compl. ¶¶ 34, 109); (b) designating businesses as a "nuisance," a common-law claim (D.C. Code § 7-1671.12e(a)); (c) imposing punitive fines of $10,000 or more (Am. Compl. ¶ 37); and (d) funding its own operations with the proceeds from these fines (D.C. Code § 7-1671.08(f)(3)).

Alliance members are the direct targets of this unconstitutional regime. Members Promoco LLC, The Garden DC, and Peace in the Air were subjected to these summary enforcement actions. (Am. Compl. Ex. 7, 10). Member Street Lawyer Services LLC was forced to pay a $10,000 fine under threat of summary closure. (Am. Compl. Ex. 9). These concrete injuries form the basis of this lawsuit.

On July 25, 2025, at ANC 3F's recorded meeting DC Councilmember Frumin stated that there was nothing medical about the medical cannabis regime, but the regime is just how the District has decided to regulate cannabis. This alludes to the fact that District cannot promulgate recreational cannabis laws that would create a recreational cannabis market.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(1) for lack of standing, "the plaintiff bears the burden of proving that the court has subject matter jurisdiction." *Khadr v. United States,* 529 F.3d 1112, 1115 (D.C. Cir. 2008). An association has standing to sue on behalf of its members when: "(a) its members would otherwise have standing to sue in their own right; (b) the

interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

## ARGUMENT

## I. THE ALLIANCE HAS ASSOCIATIONAL STANDING.

Defendants' argument that the Alliance lacks standing fails because it ignores the concrete, particularized, and ongoing injuries alleged in the Amended Complaint and attached exhibits. The Alliance has plainly established injury-in-fact, traceability, and redressability.

The Alliance's members "would otherwise have standing to sue in their own right." *Hunt*, 432 U.S. at 343. The Amended Complaint and its exhibits detail the injuries inflicted on specific Alliance members by the very statutes and enforcement actions challenged here.

Regarding injury-in-fact, members, including Promoco LLC, The Garden DC, and Peace in the Air, have been served with cease-and-desist orders and subjected to summary closure actions by Defendants. (Am. Compl. ¶ 35; Ex. 7). Member Street Lawyer Services LLC was subjected to a $10,000 fine as part of an Offer in Compromise stemming from a summary closure. (Am. Compl. ¶ 37; Ex. 9). These are not "hypothetical" or "past" injuries; they are concrete, ongoing deprivations of property and liberty that establish a "certainly impending" threat of future enforcement.

Regarding traceability, the injuries are directly traceable to Defendants' enforcement of the challenged statutory regime, including D.C. Code §§ 7-1671.12a and 7-1671.08.

Regarding redressability, declaratory judgment that this regime is unconstitutional and an injunction barring its enforcement would directly redress these injuries.

Furthermore, the Alliance has standing to bring its Dormant Commerce Clause claim. The Amended Complaint specifically identifies members Krizzo Washington and Promoco LLC as out-of-state residents who were "precluded from applying for medical cannabis licenses simply due to their out of state residency." (Am. Compl. ¶ 89). This is a classic, particularized injury-in-fact, as they were "prevented from competing on an equal footing" by a discriminatory statute. *See Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 286-87 (1997).

## II. COUNT ONE STATES A PLAUSIBLE SEVENTH AMENDMENT VIOLATION.

Defendants argue that the Seventh Amendment does not apply because these administrative enforcement actions fall under the "public rights" exception. This argument misapprehends the law, particularly in light of the Supreme Court's recent decision in *SEC v. Jarkesy*, 603 U.S. 109 (2024).

The Seventh Amendment "preserv[es]" the right to a jury trial in "Suits at common law." U.S. Const. amend. VII. This inquiry turns on whether the claims are "integrally related to particular federal statutory schemes" (public rights) or if they "sound 'in' 'suits at common law'" (private rights). *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 53 (1989).

Here, the District's statutory scheme, by its *own terms*, invokes a quintessential common-law action: nuisance. D.C. Code § 7-1671.12e(a) explicitly states that "any building... where cannabis is sold... by an unlicensed establishment shall be a nuisance." Defendants cannot label an activity a "nuisance"—a recognized common-law tort "since the 12th century" (Am. Compl. ¶

6

55)—and then claim it is a "new" public right created by statute, immune from the Seventh Amendment. *See Jarkesy*, 603 U.S. at 120 (holding that when a statutory claim "replicates a common-law cause of action," it must be tried to a jury).

Furthermore, the remedies sought are legal, not equitable. The statutes authorize punitive, escalating civil fines (e.g., $10,000, $20,000, $30,000) that are not designed to "restore the status quo" but to "punish culpable individuals." *Tull v. United States*, 481 U.S. 412, 422 (1987). Such civil penalties are a "quintessential legal remed[y]" to which the Seventh Amendment right to a jury trial attaches. *Id.* at 422-25. The ABC Board, an administrative body with no jury, cannot constitutionally adjudicate common-law nuisance claims and impose punitive legal fines.

D.C. Code § 7-1671.12e(a) provides that "any building, where cannabis is sold, exchanged…by an unlicensed establishment shall be a *nuisance*." This section has been cited in every single cease and desist order the ABC Board has issued to "unlicensed establishment." Nuisance has been a recognized common-law form of action since the 12th century. Blackstone, *Commentaries on the Laws of England* (1765-9) n. 47. Disputed nuisance questions historically went to juries before equity would grant relief.

Additionally, the ABC Board (i) issues cease and desist orders and summary-closure orders under a statutory nuisance rubric, D.C. Code § 7-1671.12e(a); and (ii) imposes fixed, escalating civil fines, "quintessential legal remedies," under §§ 47-2844, 7-1675.01(b), and 7-1671.08(f).  Those are not specialized, newly created public rights; they are old, common-law-analog claims plus punitive money penalties triable to a jury. The Amended Complaint pleads this directly, tracing the nuisance term and jury-trial history.

In addition, the District's "public-rights" theory cannot swallow the jury right. After *SEC v. Jarkesy*, when the government prosecutes claims that mirror common-law actions and seeks

legal penalties, the Seventh Amendment applies. *See also Tull v. United States*, 481 U.S. 412, 422–25 (1987) (civil penalties trigger jury right); *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 53–55 (1989) (no "public-rights" evasion for private-rights suits at law). The "public-rights" exception is limited to matters historically resolved by the political branches (e.g., public benefits, immigration, or specialized federal entitlements) and does not extend to state-law analogs of common-law torts or to punitive monetary sanctions. *See, e.g., Oil States Energy Servs. v. Greene's Energy*, 584 U.S. 244, 251–53 (2018) (emphasizing narrow scope).

Here, the District's own scheme labels targeted businesses a "nuisance," a centuries-old common-law tort that was tried to juries. D.C. Code § 7-1671.12e(a). The ABCA process then imposes or threatens civil fines—legal remedies quintessentially triable to a jury. See D.C. Code §§ 47-2844(a-2)(1), 7-1675.01(b), 7-1671.08(f); *Tull*, 481 U.S. at 422–25; *Jarkesy*, 144 S. Ct. 2117, 2130–33 (2024).

Therefore, following the *Jarkesy* decision, if a DC agency adjudication involves claims that are akin to traditional legal actions requiring a jury trial under the Seventh Amendment, and the "public rights" exception does not apply, the adjudication may be deemed unconstitutional without a jury trial. This would necessitate bringing such cases in an Article III court or a state court where a jury trial can be provided.

## III. COUNT TWO STATES A PLAUSIBLE FIFTH AMENDMENT VIOLATION.

The Alliance has plausibly alleged two distinct violations of the Fifth Amendment's Due Process Clause.

### A. The ABC Board's Hearing Scheme Unconstitutionally Shifts the Burden of Proof.

Due process requires that "no man shall lose his liberty unless the Government has borne the burden of producing the evidence and convincing the factfinder of his guilt." *Speiser v.*

*Randall*, 357 U.S. 513, 524 (1958). The District's scheme, however, provides only a *post-deprivation* hearing where the burden is placed on the *accused* (the Alliance member) to disprove the facts and conclusions in the cease-and-desist or summary closure order. (Am. Compl. ¶ 78).

The statute provides that an alleged violator "may... submit a written request to the ABC Board to hold a hearing on the alleged violation." D.C. Code § 7-1671.12a(b)(1). As alleged in the Complaint; this hearing, which was the *only* tribunal offered, improperly places the burden of proof on the respondent. This procedure runs afoul of the Due Process Clause by forcing the individual to "bear the burden of proof" to reclaim property and liberty already seized by the government. *Speiser*, 357 U.S. at 523.

Plaintiff alleges ABCA provides only a single post-deprivation hearing and places the burden on the accused to persuade the Board to lift the cease and desist or summary closure order contrary to *Speiser v. Randall* and basic due process. Due process commands that "no man shall lose his liberty unless the Government has borne the burden of producing the evidence and convincing the factfinder of his guilt." *Speiser v. Randall*, 357 U.S. 513, 524 (1958). "In civil cases too, this Court has struck down state statutes unfairly shifting the burden of proof." *Id. See People v. David W.*, 95 N.Y. 2d 130 (2000) (striking down a New York statute where the state did not bear the burden of proof at any proceeding before a neutral fact finder); and *Smith v. State*, 146 Idaho 822 (2009) (striking down Idaho's statutory scheme because it failed to provide notice and a meaningful opportunity to be heard at a meaningful time and in a meaningful manner by placing the burden of proof on the offender at the only hearing in which is he permitted to appear).

The Amended Complaint pleads the same: § 7-1671.12a(b)(1) hearing is the only

tribunal, and the Chair places the burden on the respondent. Under *Mathews*, the private interest (continued operation), risk of error (closed-door fact-finding and ex parte testimony), and the minimal administrative burden of leaving the burden with the government all point to unconstitutionality at the pleadings stage.

**B. The ABC Board is a Structurally Biased Adjudicator.**

"No man is allowed to be a judge in his own cause." *The Federalist No. 10* (J. Madison). The Supreme Court has long held that due process is violated where a decisionmaker has a "direct, personal, substantial, pecuniary interest" in the outcome. *Tumey v. Ohio*, 273 U.S. 510, 523 (1927). This principle extends to officials whose "financial stake" is "official" rather than personal, such as when fines collected are "a substantial part of the municipality's funds." *Ward v. Monroeville*, 409 U.S. 57, 60 (1972).

That is precisely the situation here. The ABC Board, which "impose[s] and adjudicate[s] civil fines," (D.C. Code § 7-1671.08(d)), directly benefits from its own enforcement. The fines it collects are deposited into the Litigation Support Fund and the Medical Cannabis Social Equity Fund. D.C. Code § 7-1671.08(f)(3). The ABC Board is, therefore, "a judge in its own cause," with an official motive to convict and assess fines to fund its own operations and policy goals. This creates a "possible temptation... which would lead him not to hold the balance nice, clear and true." *Ward*, 409 U.S. at 60. This is a plausible allegation of structural bias.

Funds received from penalties and fines imposed under D.C. Code § 7-1671.08 shall be credited to the unassigned fund balance of the General Fund of the District of Columbia, creating at least an official motive to convict and graduate fines, barred by *Tumey/Ward*. "No man is allowed to be a judge in his own cause; because his interest would certainly bias his judgment, and, not improbably, corrupt his integrity." The Federalist No. 10, p. 59 (J. Cooke ed.1961) (J.

Madison). In practice, the Supreme Court has held before that due process required a decisionmaker's disqualification because of his official motive to convict and to graduate the fine to help the financial needs of the village. *Tumey v. State of Ohio*, 273 U.S. 510, 535 (1927). This concern with conflicts resulting from financial incentives was further elaborated in *Ward v. Monroeville*, 409 U.S. 57 (1972). In *Ward*, the Court invalidated a conviction in another mayor's court, where fines the mayor assessed went to the town's general treasury. *Id.*, at 60. *See Gibson v. Berryhill*, 411 U.S. 564 (1973) (stating that the decisionmaker's financial stake need not be as direct or positive as it appeared to be in *Tumey*).

Here, like in *Ward*, the fines the Board assessed would go to the District's general treasury. That plausibly alleges a due-process violation under *Williams v. Pennsylvania* and *Withrow*'s "more" caveat. These allegations are specific, plausible, and, at this stage, must be accepted as true.

## IV. COUNT THREE STATES A PLAUSIBLE DORMANT COMMERCE CLAUSE VIOLATION.

Defendants' primary defense of their discriminatory licensing scheme is that the Dormant Commerce Clause does not apply to a federally *illegal* market. This "illegality exception" has been squarely and recently rejected by the U.S. Court of Appeals for the Second Circuit. *See Variscite N.Y. Four, LLC v. N.Y. State Cannabis Control Bd.*, 152 F.4th 47 (2d Cir. 2025). The *Variscite* court held that the Dormant Commerce Clause *does* apply to state cannabis licensing, as Congress has not "clearly authorized" the states' "protectionist marijuana licensing." *Id.* at 60. With this failed defense set aside, the District's statute is facially discriminatory. D.C. Code § 7-1671.01(20C) requires that "social equity applicants" be residents of the District, and other provisions require businesses to be incorporated in the District. This is blatantly protectionist and "virtually *per se* invalid." *See Or. Waste Sys. v. Dep't of Envtl. Quality*, 511 U.S. 93, 99 (1994).

The District cannot demonstrate that its facially discriminatory law "advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 338 (2008).

A court evaluates a dormant Commerce Clause challenge using a two-tiered analysis. *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 578-79 (1986). At the first tier, a court determines whether "a state statute directly regulates or discriminates against interstate commerce, or [whether] its effect is to favor in-state economic interests over out-of-state interests." *Id.* at 579. *See Or. Waste Sys.,* 511 U.S. at 93 (stating that if a restriction on commerce is discriminatory, it is virtually *per se* invalid). At the second tier, absent such discrimination, if a "statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

In the cannabis context, numerous District Courts have ruled on similar regulatory cannabis licensing schemes, and all applied the heightened level of dormant Commerce Clause scrutiny. *See NPG, LLC v. City of Portland,* No. 2:20-CV-00208, 2020 WL 4741913, at *2 (D. ME. Aug. 14, 2020) (applying heightened standard to a licensing scheme where applications were evaluated on a point scale, with the maximum potential points being thirty-four, with five points awarded if the applicant was "[a]t least [fifty-one percent] owned by individuals who ha[d] been a Maine resident for at least five years"); *see also Ne. Patients Grp. v. Maine Dep't of Admin. & Fin. Servs.*, 554 F. Supp. 3d 177, 180 (D. Me. 2021) *aff'd by* 45 F.4th 542 (1st Cit. 2022); *Toigo v. Dep't of Health & Senior Servs.*, 549 F. Supp. 3d 985, 989 (W.D. Mo. 2021); *Variscite NY One. Inc. v. New York*, 640 F. Supp. 3d 232 (N.D.N.Y. 2022).

Here, the Act directly discriminates against interstate commerce and falls into the first tier. D.C. Code § 7-1671.01(20C) requires applicant businesses to be incorporated in the District of Columbia. Social Equity applicants also have to be D.C. residents. D.C. Code § 7-1671.01(20C). These laws and regulations, on their face, discriminate against interstate commerce by providing differential treatment based on state residency.

When a law falls into the first tier, the government bears the burden of proving the law advances a legitimate local purpose that cannot be adequately served by reasonable, nondiscriminatory alternatives. *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 338 (2008). To the best of Plaintiff's knowledge, no state or city has successfully argued residency preferences or residency requirements in a commercial context serve a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory means in the cannabis context.

Plaintiff represents three members who satisfy all requirements of the Act for a social equity cannabis license except that their owners are not District residents. One member of the Alliance, Promoco LLC, is owned by a Virginia resident, and Krizzo Washington is a Virginia resident. All of them would have qualified for the Act's social equity program but for their out-of-state residency. They both had qualifying drug-related convictions. They both receive earnings lower than the social equity minimum. Therefore, the Act and the ABC Board's licensing scheme violates the dormant Commerce Clause.

Also, the plaintiff wishes to present an additional note in the cannabis context. The challenged residency/incorporation limits and in-state-only supply mandates discriminate against, and unduly burden, interstate commerce. *See Dep't of Revenue v. Davis*, 553 U.S. 328, 337–39 (2008). The Second Circuit recently joined the First Circuit and a growing consensus in holding that state cannabis programs are not exempt from ordinary Dormant Commerce Clause

scrutiny merely because cannabis remains federally illegal. *Variscite N.Y. Four, LLC v. N.Y.*
*State Cannabis Control Bd.*, 152 F.4th 47, 60 (2d Cir. 2025) (2d Cir. Aug. 12, 2025) (reversing
and recognizing DCC applies; rejecting "illegality exception"). The Second Circuit spelled out
clearly that "If New York required in-state residency as a prerequisite to Extra Priority, there
would be no doubt that it was discriminating against out-of-state economic interests." *Id*. at 63.
The District's program erects exactly the sort of facial residency/incorporation barriers and local-
supply constraints *Variscite* and earlier cases enjoined. Alliance pleads concrete member harm
from those barriers (Krizzo Washington; Promoco LLC).

At a minimum, the State must satisfy strict scrutiny for facial discrimination.
Administrative convenience and local-industry protectionism are not compelling interests, and
less-restrictive alternatives abound.

## V. COUNTS FOUR VAGUENESS AND FIVE SELF-INCRIMINATION ARE PLAUSIBLY PLED.

### A. Vagueness (Count Four)

The Alliance has plausibly alleged that the District's enforcement scheme is
unconstitutionally vague, chilling lawful conduct protected by Initiative 71. (Am. Compl. ¶¶ 93-
135). A law violates due process if it (1) fails to provide the kind of notice that will enable
"person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he
may act accordingly" or (2) authorizes or even encourages "arbitrary and discriminatory
enforcement." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). The District's statutory
framework fails both prongs.

First, the scheme fails to provide fair notice because it is "hopelessly indeterminate" and
contradictory, making it impossible for a person of ordinary intelligence to discern the legal
standard. *See Sessions v. Dimaya*, 584 U.S. 148, 157-58 (2018).

With regard to the direct conflict of law, D.C. voters, through I-71, made it "lawful" to "Transfer to another person 21 years of age or older, without remuneration, marijuana weighing one ounce or less." D.C. Code § 48-904.01(a)(1)(B). The D.C. Code *explicitly* defines a "person" who can make this transfer as including business entities. *See* D.C. Code § 48-901.02(18) ("Person" includes a "corporation... business trust... partnership, or association, or unincorporated business"). This creates a clear, voter-approved right for businesses to engage in lawful, non-remunerated transfers.

Now looking to undefined and overlapping terms, the District's enforcement regime, however, defines an "unlicensed establishment" subject to summary closure as a business that "Sells, exchanges as part of a commercial transaction, or delivers cannabis." D.C. Code § 7-1671.01(22). Crucially, the statute fails to define "commercial transaction" and, more importantly, it provides no carve-out or consideration for the lawful "transfer without remuneration" authorized by I-71.

Regarding the unclear and impossible standard, here a reasonable business owner is left to guess where the line is. Does selling a t-shirt (a clear "commercial transaction") while also engaging in a separate and lawful I-71 non-remunerated "transfer" (which is *not* a "commercial transaction") subject the business to summary closure as an "unlicensed establishment"? The statutes provide no answer, "leav[ing] the public uncertain as to the conduct it prohibits." *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999) (quoting *Giaccio v. Pennsylvania,* 382 U.S. 399, 402-403 (1966).

Second, this muddled framework encourages the arbitrary and discriminatory enforcement, which is the "most important aspect of the vagueness doctrine." *Kolender v. Lawson*, 461 U.S. 352, 358 (1983). The District's enforcement pattern demonstrates this

15

arbitrariness.

The public and similarly situated businesses, confused by the District's contradictory laws, have sought other avenues, such as rebranding as "hemp" businesses, believing hemp to be legal. This belief is based on another glaring statutory conflict: the enforcement statutes (Title 7, e.g., § 7-1671.08) target "cannabis," but the Controlled Substances Act (Title 48, e.g., § 48-901.02(3)(A)) explicitly *excludes* parts of the plant like mature stalks and fiber (i.e., hemp) from the definition of "marijuana." D.C. Code § 48-901.02(3)(A) also excludes:

> resin extracted from any part of the plant, nor any compound, manufacture, salt, derivative, mixture, or preparation from the resin, including hashish and does not include the mature stalks of the plant, fiber produced from such stalks, oil, or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture or preparation of the mature stalks, fiber, oil, or cake, or the sterilized seed of the plant which is incapable of germination.

However, ABCA Director Fred Moosally reports the ABCA working in coordination with MPD has seized 151.61 pounds of THC edibles, 18.76 pounds of THC cartridges, 15.41 pounds of THC wax, 28 grams of THC vape pods, and 238.08 grams of THC oils and concentrate, all of which are substances that are excluded from the definition of marijuana under D.C. Code § 48-901.02(3)(A). *See* Am. Compl. Exhibit 3.

The District's response has been arbitrary. It has taken a "hands-off" approach to prominent "hemp" businesses like Capital Hemp, allowing them to operate, while aggressively targeting Plaintiff's members (former I-71 shops) with summary closure orders. *See* Exhibit 1. This differential treatment, based on no clear statutory standard, gives ABCA "unfettered discretion" to pick its targets, which is "plainly much more than the Constitution tolerates." *See Ricks v. District of Columbia,* 414 F.2d 1097, 1107 (D.C. Cir. 1968). The District has failed to provide "fair notice" of its interpretation of keys terms and exclusions. *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012), and is selectively enforcing a vague law to destroy a

market it disfavors.

### B. Self-Incrimination (Count Five)

The Alliance has also plausibly alleged that the "Unlicensed Operator Attestation Form" was a coercive and involuntary waiver of the Fifth Amendment right against self-incrimination. (Am. Compl. ¶¶ 136-149). By requiring applicants to confess to "commercial cannabis transactions" as a mandatory condition of licensing eligibility, the District presented an unconstitutional choice "between 'the rock and the whirlpool'", either incriminate oneself or forfeit a valuable government benefit. *See Garrity v. New Jersey*, 385 U.S. 493, 498 (1967). These detailed allegations must be accepted as true at this stage.

## VI. PLAINTIFF CONCEDES DISMISSAL OF NON-SUI-JURIS DEFENDANTS.

While Plaintiff concedes that the *agencies* themselves (ABC Board, MPD, DLCP) may be *non sui juris*, the *individual officials* (Director Moosally, Chief Smith, and Director Crowe) in their official capacities are proper and necessary defendants.

Defendants' argument for dismissal merges all claims into the District of Columbia, ignoring the doctrine of *Ex parte Young*. Under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), state and District officials may be sued in their official capacities "for prospective injunctive relief to end a continuing violation of federal law." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326-27 (2015).

This is precisely what the Amended Complaint alleges. It seeks to enjoin the specific officials who are "presently enforcing the unconstitutional laws, customs, practices, and policies" that are causing the ongoing harm. (Am. Compl. ¶¶ 10-12). These officials are not acting in isolation; the Complaint alleges they are operating as a "coordinated task force led by ABCA" to target I-71 businesses. (Am. Compl. ¶ 19; Ex. 2).

Dismissing these officials would prevent the Court from granting "complete relief." An injunction must bind the specific individuals who have the authority to carry out the unconstitutional enforcement. Therefore, Director Moosally, Chief Smith, and Director Crowe are essential parties for the injunctive relief Plaintiff seeks.

## VII. PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND.

In the alternative, should the Court identify any curable deficiency in the Amended Complaint, Plaintiff respectfully requests leave to amend. *See* Fed. R. Civ. P. 15(a)(2).

**CONCLUSION**

For the foregoing reasons, Plaintiff Alliance for Recreational Cannabis Entities LLC respectfully requests that this Court DENY Defendants' Motion to Dismiss in its entirety as to the District of Columbia.

**PRAYER FOR RELIEF**

WHEREFORE, for the foregoing reasons Plaintiff respectfully requests that this Honorable Court deny Defendants' Motion to Dismiss Amended Complaint.

Date: November 10, 2025                    Respectfully submitted,

/s/ Jacobie Whitley
Jacobie Whitley, Esq.
DC Bar #1500314
Law Office of Jacobie K. Whitley, PLLC
1455 Pennsylvania Ave., NW, Suite 400
Washington, D.C. 20004
Tel: (202) 499-2403
Fax: (202) 499-2402
Email: jwhitley@lawofficeofjkw.com
*Counsel for Plaintiff*

/s/ Yutong Zhou
Yutong Zhou, Esq.

D.C. Bar No. 90020267
District Court Bar ID: 90020267
Sinoberg Raft
2 I Street SE
Washington, DC 20003
Telephone: (908) 239-8737
Email: yutong@sinobergraft.com
Counsel for Plaintiff