UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ALLIANCE FOR RECREATIONAL CANNABIS ENTITIES LLC,**<br><br>    **Plaintiff,**<br><br>    **v.**<br><br>**DISTRICT OF COLUMBIA,** *et al.***,**<br><br>    **Defendants.** | **Civil Action No. 1:24-cv-03164-ACR** |

**REPLY IN FURTHER SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1
ARGUMENT .................................................................................................................................. 1
   I. Alliance Does Not Have Standing. ..................................................................................... 1
      A. Alliance Does Not Have Associational Standing. ......................................................... 2
      B. Alliance Does Not Have Standing to Seek Injunctive and Declaratory Relief. ............ 2
      C. Alliance Does Not Have Associational Standing to Bring Its Dormant Commerce Clause Claim (Count Three). ........................................................................................ 3
      D. Plaintiff Fails to Plausibly Allege an Injury-in-Fact for Certain Claims. ...................... 4
   II. The Court Should Dismiss Certain Defendants. ................................................................. 5
   III. Alliance Fails to State a Claim on the Merits. ..................................................................... 6
      A. Alliance's Seventh Amendment Claim (Count One) Fails. ........................................... 6
      B. Alliance's Fifth Amendment Due Process Claim (Claim Two) Fails. .......................... 8
      C. The Dormant Commerce Clause (Claim Three) Does Not Apply to the Sale of Cannabis, a Federally Illegal Market. ............................................................................ 10
      D. Plaintiff's Fifth Amendment Overbreadth Claim (Claim Four) Fails Because the District's Statutes Are Clear. ......................................................................................... 12
      E. Alliance's Fifth Amendment Self-Incrimination Claim (Count Five) Fails Because the Fifth Amendment Does Not Extend to Statements in Regulatory Documents. ................ 13
CONCLUSION ............................................................................................................................. 14

# **TABLE OF AUTHORITIES**

**Cases**

*Am. Educ. Research Ass'n v. Public.Resource.Org, Inc.*, 78 F. Supp. 3d 542 (D.D.C. 2015) ....... 6

*Arpaio v. Obama*, 797 F.3d 11 (D.C. Cir. 2015) ................................................................................ 3

*Asbury Auto Grp., Inc. v. FTC*, Case No. 4:24-cv-00950-O, 2025 WL 2317455 (N.D. Tex. Aug. 11, 2025) ................................................................................................................................ 5

*Carithers v. District of Columbia*, 326 A.2d 798 (D.C. 1974) ........................................................ 7

*Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558 (1990) ......................... 7

*Coal. for Mercury-Free Drugs v. Sebelius*, 671 F.3d 1275 (D.C. Cir. 2012) ................................. 3

*Committee of Blind Vendors v. District of Columbia*, 695 F. Supp. 1234 (D.D.C. 1998) .............. 6

*Dawn J. Bennett Holding, LLC v. FedEx TechConnect, Inc.*, 217 F. Supp. 3d 79 (D.D.C. 2016) . 2

*Dugan v. Ohio*, 277 U.S. 61 (1923) ................................................................................................ 10

*Ex parte Young*, 209 U.S. 123 (1908) .............................................................................................. 5

*Garrity v. New Jersey*, 385 U.S. 493 (1966) ................................................................................. 14

*Gonzalez-Droz v. Gonzalez-Colon*, 660 F.3d 1 (1st Cir. 2011) ...................................................... 8

*Granfinanciera v. Nordberg*, 492 U.S. 33 (1989) .......................................................................... 6

*Harris v. Trustees of Univ. of Dist. of Columbia*, 567 F. Supp. 3d 131 (D.D.C. 2021) ....... 8, 9, 13

*Lawton v. Steele*, 152 U.S. 133 (1894) ............................................................................................ 7

*Lockhart v. Coastal Int'l Sec.*, 905 F. Supp. 2d 105 (D.D.C. 2012) ............................................... 4

*Ne. Patients Grp. v. United Cannabis Patients & Caregivers of Me.*, 45 F.4th 542 (1st Cir. 2022) ................................................................................................................................................ 11, 12

*People v. David W.*, 95 N.Y.2d 130 (2000) ..................................................................................... 8

*Selective Services System v. Minnesota Public Interest Research Group*, 468 U.S. 841 (1984) . 14

*Sibley v. Obama*, 810 F. Supp. 2d 309 (D.D.C. 2011) .................................................................. 14

*Smith v. State*, 146 Idaho 822 (2009) .............................................................................................. 8

*Tanner-Brown v. Holland*, 105 F.4th 437 (D.C. Cir. 2024) ........................................................... 3

*Tucci v. District of Columbia*, 956 A.2d 684 (D.C. 2008) ............................................................. 7

*Tull v. United States*, 481 U.S. 412 (1987) ..................................................................................... 7

*Tumey v. Ohio*, 273 U.S. 510 (1927) ............................................................................................. 10

*Va. Office for Protection & Advocacy v. Stewart*, 563 U.S. 247 (2011) ........................................ 5

*Variscite N.Y. Four, LLC v. N.Y. State Cannabis Control Bd.*, 152 F.4th 47 (2d Cir. 2025) ....... 11

*Viasat, Inc. v. FCC*, 47 F.4th 769 (D.C. Cir. 2022) ....................................................................... 2

*Ward v. Monroeville*, 409 U.S. 57 (1972) .................................................................................... 10

*Williams v. Pennsylvania*, 579 U.S. 1 (2016) .............................................................................. 10

**Statutes**

D.C. Code § 1-301.86b ................................................................................................................... 9

D.C. Code § 2-502 .......................................................................................................................... 8

D.C. Code § 2-509 .......................................................................................................................... 9

D.C. Code § 7-1671.08 ........................................................................................................... 6, 8, 9

D.C. Code § 7-1671.08b ................................................................................................................. 9

D.C. Code § 7-1671.12a ................................................................................................................. 8

D.C. Code § 7-1671.12a. ................................................................................................................ 6

D.C. Code § 7-1671.12e ................................................................................................................. 6

D.C. Code § 7-1675.01 ................................................................................................................... 9

D.C. Code § 48-1201 ...................................................................................................................... 1

D.C. Code § 48-901.02 ............................................................................................................ 12, 13

D.C. Code § 48-904.01 ................................................................................................................. 12

**INTRODUCTION**

Plaintiff (Alliance) fails to address, and implicitly concedes, a number of Defendants' (collectively, the District's) arguments. Alliance fails to respond to the District's arguments on associational standing, both generally and as to its dormant Commerce Clause claim (Count Three). Alliance is equally silent on the District's arguments that it fails to allege injury-in-fact related to its Fifth Amendment claim concerning D.C. Code § 48-1201(a) (Count Four) and its Fourth Amendment claim (Count Seven). And Alliance wholly ignores its claim under the Further Consolidated Appropriations Act of 2024 (Count Six). According to the law of this jurisdiction, a party's failure to respond can act as a concession. So the Court can—and should—treat these arguments as conceded and grant the District's motion to dismiss on Counts Three, Six, and Seven, without more.

Abandoned claims notwithstanding, Alliance has no standing to seek injunctive or declaratory relief, and the entire case should end there. Even if not, Alliance's claims fare no better on the merits. As set forth in the District's motion to dismiss and further explained below, Alliance fails to state a claim. Because Alliance has neither established standing nor stated a claim, the Court should grant the District's motion to dismiss.

**ARGUMENT**

**I.     Alliance Does Not Have Standing.**

As the District's motion makes clear, Alliance's Second Amended Complaint (Am. Compl.) is replete with issues of standing. *See* Defs.' Mot. at 14–22.[1] At a most basic level, Alliance does not properly allege associational standing. Even if it did, Alliance fails to demonstrate standing to support many of its claims. The District takes each in turn.

---

[1]     All citations are to ECF page numbers.

### A. Alliance Does Not Have Associational Standing.

To establish associational standing, an organization "must have the 'indicia of a traditional membership association.'" *Viasat, Inc. v. FCC*, 47 F.4th 769, 781 (D.C. Cir. 2022) (quoting *Sorenson Commc'ns v. FCC*, 897 F.3d 214, 225 (D.C. Cir. 2018)). As discussed in the District's motion to dismiss, Alliance failed to plausibly allege that it has the indicia of a traditional membership organization. *See* Defs.' Mot. to Dismiss (Defs.' Mot.) [32] at 15–16. Alliance's opposition is silent on this point. *See generally* Pls.' Opp'n to Mot. to Dismiss (Pl's Opp'n) [33-1]. "It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, the court may treat those arguments that the plaintiff failed to address as conceded." *Dawn J. Bennett Holding, LLC v. FedEx TechConnect, Inc.*, 217 F. Supp. 3d 79, 82 (D.D.C. 2016) (quoting *Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002)). Accordingly, Alliance's complaint should be dismissed on this basis alone.

### B. Alliance Does Not Have Standing to Seek Injunctive and Declaratory Relief.

Alliance seeks only forward-looking injunctive and declaratory relief, but in seeking such relief, it must have standing to do so. Alliance fails on this count. *See* Def.'s Mot. at 16–17. In response to the District's argument, Alliance relies on allegations that its members have been served with cease-and-desist orders and subjected to summary closure actions. Pl's Opp'n at 5. Alliance baldly contends that these allegations constitute "concrete, ongoing deprivations of property and liberty that establish a 'certainly impending' threat of future enforcement," *id.*, but that is incorrect. Alliance has not alleged that any of its members currently operate or intend to operate a business within the District, and allegations of past administrative actions against Alliance's members are plainly insufficient. Logically then, the injuries Alliance claims are not

ongoing or certainly impending.  "Where a party 'seeks prospective declaratory and injunctive relief, he must establish an ongoing or future injury that is certainly impending; he may not rest on past injury." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013)).  Because Alliance makes no allegations of "a certainly impending, or even likely, risk of future . . . injury," *Coal. for Mercury-Free Drugs v. Sebelius*, 671 F.3d 1275, 1280 (D.C. Cir. 2012), it does not have standing to seek the relief it seeks, and the Complaint should be dismissed.

      **C.**      <u>**Alliance Does Not Have Associational Standing to Bring Its Dormant Commerce Clause Claim (Count Three).**</u>

An association lacks standing if the "claim asserted and relief requested require individualized determinations." *Tanner-Brown v. Holland*, 105 F.4th 437, 447 (D.C. Cir. 2024). This requirement is prudential and focuses on administrative convenience and efficiency.  *Id.* Here, "the nature" of Alliance's dormant Commerce Clause claims "necessarily requires consideration of the individual circumstances of any aggrieved member of the organization." *Id.* (internal quotations omitted).  Alliance relies on two of its members for standing, alleging only that both members were out-of-state residents who were "precluded from applying for medical cannabis licenses simply due to their out of state residency." Am. Compl. ¶ 89.  To resolve dormant Commerce Clause claims concerning the allegation that these members were unable to participate in the District medical cannabis market, the Court will need to resolve factual questions concerning these individuals' claims, such as whether they applied for medical cannabis licenses and, if so, why their licenses were denied.  *See* Defs.' Mot. at 18.  Alliance does not address this argument directly, only arguing that the identified members suffered an injury-in-fact.  Pl.'s Opp'n at 9.  But whether the members suffered an injury-in-fact is a separate inquiry as to whether the case would require the participation of the individual members.

3

Because Alliance's dormant Commerce Clause claim would require the participation of the purportedly aggrieved members, Alliance does not have associational standing to pursue this claim.

### D. <u>Plaintiff Fails to Plausibly Allege an Injury-in-Fact for Certain Claims.</u>

Alliance lacks standing to bring certain clams because it has not alleged that its members suffered any actual injury related to those claims. *See* Defs.' Mot. at 19–22. Alliance appears to have abandoned several of claims in this way: It advances no arguments in its opposition concerning its dormant Commerce Clause challenge to the requirement that cultivation centers be registered in the District, its Fifth Amendment claim related to an alleged inconsistency in D.C. Code § 48-1201(a), or its Fourth Amendment claim. *See generally* Pl.'s Opp'n. The Court should treat these arguments too as conceded. *Lockhart v. Coastal Int'l Sec.*, 905 F. Supp. 2d 105, 118 (D.D.C. 2012).

Alliance does, however, continue to make arguments concerning fines that it contends violate the Seventh Amendment. *See id.* at 10–11. In response to the District's argument on this point, Alliance argues that it has shown injury-in-fact because it alleges that its members were served cease-and-desist orders and subjected to summary closure actions by the District. *Id.* at 8. Alliance also contends that one of its members "was subjected to a $10,000 fine as part of an Offer in Compromise stemming from a summary closure." *Id.* This is insufficient to constitute injury-in-fact for Alliance's Seventh Amendment claim concerning the adjudication of fines. Whether any of Alliance's members were served cease-and-desist orders or subjected to summary closure actions has no bearing on this Seventh Amendment claim as these do not involve the imposition of fines without a jury trial. Indeed, Alliance's Complaint does not allege that any of its members had a fine assessed against them without a jury trial or faced the risk of being fined after a hearing conducted without a jury. Alliance can only rely on the fine issued to

4

one of its members as part of an enforcement action relating to a summary closure but cites no case to support the proposition that a party's agreement to pay a fine in one proceeding would create standing for a party to challenge the theoretical imposition of fines in a separate proceeding.  *Cf. Asbury Auto Grp., Inc. v. FTC*, Case No. 4:24-cv-00950-O, 2025 WL 2317455, at *5 (N.D. Tex. Aug. 11, 2025) (finding that plaintiff did not have standing to bring a Seventh Amendment challenge to a cease and desist because a Seventh Amendment injury related to the assessment of fines in a separate proceeding would "hinge[ ] on a series of future events").  At bottom, Alliance has alleged no injury-in-fact concerning any claim concerning the adjudication of fines in violation of the Seventh Amendment and thus does not have standing to challenge the hypothetical imposition of fines in other proceedings.

## II.     The Court Should Dismiss Certain Defendants.

Alliance argues that the individually named defendants should not be dismissed because they are necessary defendants under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908).  Pls.' Opp'n at 17.  But *Ex parte Young* is inapplicable; the doctrine establishes that courts may issue injunctions against individually named state officers notwithstanding the Eleventh Amendment's bar against suing states.  *See Va. Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011).  The District of Columbia, however, is not a state, and the Eleventh Amendment does not apply.  *See Committee of Blind Vendors v. District of Columbia*, 695 F. Supp. 1234, 1241 n.6 (D.D.C. 1998).  Accordingly, the claims against the individually named Defendants are superfluous and should be merged with those brought against the District.  *See* Defs.' Mot. at 22–23.[2]

---

[2]     The District argued, and Plaintiffs conceded in opposition, that the ABC Board, MPD, and DLCP are *non sui juris* subordinate agencies.  Defs.' Mot. at 14–15; Pl.'s Opp'n at 17.  The District acknowledges that these agencies, as well as the Office of the Attorney General, are not

### III. Alliance Fails to State a Claim on the Merits.

#### A. Alliance's Seventh Amendment Claim (Count One) Fails.

Alliance argues that a jury trial is required for ABCA to summarily close a business for violating the District's medical cannabis licensing regime because District law deems unlicensed establishments to be nuisances. Pl.'s Opp'n at 10 (citing D.C. Code § 7-1671.12e(a)). As an initial matter, the statute Alliance relies on is not the basis for a summary closure action. D.C. Code § 7-1671.12e provides that the District of Columbia can bring a suit seeking to enjoin an unlicensed establishment as nuisance. Moreover, Alliance makes no allegations that the District filed a lawsuit to abate a nuisance against any of its members. *See generally id.* Alliance alleges that some of its members faced summary closures and cease-and-desist orders, Am. Compl. ¶¶ 35, 38, but both of those administrative enforcement actions are governed by different processes under different provisions of the D.C. Code, *see* D.C. Code §§ 7-1671.08, 7-1671.12a.

Regardless, Alliance is incorrect that the invocation of "nuisance" demands that a jury trial is required. *See* Defs' Mot. at 24–26. To determine whether an action was a suit at common law for purposes of the Seventh Amendment—*i.e.*, a suit "in which *legal* rights were to be ascertained and determined," *Granfinanciera v. Nordberg*, 492 U.S. 33, 42 (1989) (quoting *Parsons v. Bedford*, 3 Pet. 433, 446 (1830))—courts consider whether a claim is legal or equitable in nature, *see Am. Educ. Research Ass'n v. Public.Resource.Org, Inc.*, 78 F. Supp. 3d 542, 545 (D.D.C. 2015). Specifically, courts "compare the statutory action to 18th-century actions brought in the courts of England prior to courts of law and equity" and "examine the remedy sought and determine whether it is legal or equitable in nature." *Chauffeurs, Teamsters*

---

defendants in this case; these agencies were named as defendants in other matters that were formerly consolidated with this case.

*& Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 565 (1990). "[A]ctions that are analogous to 18th-century cases tried in courts of equity or admiralty do not require a jury trial." *Tull v. United States*, 481 U.S. 412, 417 (1987). Relevant here, "[a] public nuisance action [is] a classic example of the kind of suit that relied on injunctive relief provided by courts in equity." *Id.* at 423; *see also Lawton v. Steele*, 152 U.S. 133, 142 (1894) ("[T]he summary abatement of nuisances without judicial process or proceeding was well known to the common law long prior to the adoption of the Constitution."); *Carithers v. District of Columbia*, 326 A.2d 798, 802 (D.C. 1974). The statute here—declaring an establishment engaged in commercial transactions of a controlled substance without a license to be a nuisance—sounds in public nuisance; "[a]t common law, the term 'public nuisance' covered a variety of minor criminal offenses that interfered, for example, with the public health, safety, morals, peace, or convenience," *Tucci v. District of Columbia*, 956 A.2d 684, 696 n.11 (D.C. 2008) (quotation omitted). The invocation of nuisance elsewhere in the District's medical cannabis statutory regime does not suggest that a jury trial is required for summary closures or hearings on cease-and-desist orders.

As discussed above, Alliance lacks standing to challenge the imposition of fines. Alliance only contends that its members have faced summary closure actions or received cease-and-desist orders. *See* Pl.'s Opp'n at 8. Other than their contention that a proceeding related to a nuisance must require a jury trial (it does not), Alliance has failed to demonstrate that a summary closure or a cease-and-desist order would involve the determination of legal rights or implicate the Seventh Amendment at all. For this reason, and the reasons discussed in the District's motion to dismiss, Alliance's Seventh Amendment claim should be dismissed. *See* Def.'s Mot. at 24–26.

B.       **Alliance's Fifth Amendment Due Process Claim (Claim Two) Fails.**

Alliance contends that hearings on cease-and-desist orders and summary closures inappropriately placed the burden of proof on its members. Pl.'s Opp'n at 12.[3] The basis of this argument appears to be that the hearing occurs after the issuance of a cease-and-desist order or a summary closure. *See id.* But Alliance has cited no case to support this contention, and courts have recognized that due process does not bar post-deprivation hearings under appropriate circumstances, *see, e.g.*, *Gonzalez-Droz v. Gonzalez-Colon*, 660 F.3d 1, 14 (1st Cir. 2011) (finding post-deprivation hearing on license suspension was constitutionally adequate). Alliance cites to *People v. David W.*, 95 N.Y.2d 130 (2000), and *Smith v. State*, 146 Idaho 822 (2009), Pl.'s Opp'n at 12, but both are inapposite. In *David W.*, the defendant, who was challenging his classification on the sex offender registry, was "not provided a hearing or any opportunity to present evidence." 85 N.Y.2d at 139. *Smith* concerned the procedure by which an individual could appeal their classification as a violent sexual predator; there, the statutory scheme provided that the reviewing court should affirm the underlying determination unless persuaded by a preponderance of the evidence that the initial determination was inappropriate. 146 Idaho at 827. Here, on the other hand, individuals who receive a cease-and-desist order or whose businesses are summarily closed are entitled to a hearing. *See* D.C. Code §§ 7-1671.08; 7-1671.12a(b)(2). Accordingly, these matters are contested cases under the District of Columbia Administrative Procedure Act (DCAPA). *See* D.C. Code § 2-502(8) (defining contested case to mean "a proceeding before the Mayor or any agency in which the legal rights, duties, or privileges of

---

[3]       In the Complaint, Alliance only alleged that the burden of proof was placed on its members in hearings on cease-and-desist orders. *See* Am. Compl. ¶¶ 66–80. While Alliance cannot amend its Complaint through its opposition, *Harris v. Trustees of Univ. of Dist. of Columbia*, 567 F. Supp. 3d 131, 154 (D.D.C. 2021), the District of Columbia Administrative Procedure Act applies to hearings on cease-and-desist orders and summary closure orders.

specific parties are required by law . . . to be determined after a hearing before the Mayor or before an agency"). Under the DCAPA, "the proponent of a rule or order" in a contested case must meet its burden of proof. D.C. Code § 2-509(b). Based on a plain reading of the operative statute, then, Alliance's claim concerning the burden of proof necessarily fails.

In its opposition, Alliance contends that the ABC Board has an inappropriate financial motive because the Board benefits from its own enforcement. Pls.' Opp'n at 13–14. However, Alliance did not make any allegations in the Complaint concerning any purported financial stake that the ABC Board has in any hearings. *See generally* Am. Compl. Nor did Alliance allege that any of its members were fined after an adjudication. *See generally id.* It is "'axiomatic' that a party may not amend [its] complaint through an opposition brief." *Harris v. Trustees of Univ. of Dist. of Columbia*, 567 F. Supp. 3d 131, 154 (D.D.C. 2021) (internal quotation omitted). The Court should disregard this argument, which is unsupported by any facts alleged in the Complaint.

Regardless, Alliance's opposition misconstrues the relevant statutes and caselaw. District law directs that the first $100,000 of fines imposed pursuant to D.C. Code § 7-1675.01(d) be deposited into a Litigation Support Fund administered by the Office of Attorney General. *See* D.C. Code § 1-301.86b. Any additional revenue from fines is deposited in the Medical Cannabis Social Equity Fund. *See* D.C. Code § 7-1675.01(d). This fund is administered by the Department of Small and Local Business Development in consultation with ABCA. D.C. Code § 7-1671.08b(a). Fines imposed pursuant to D.C. Code § 7-1671.08 are deposited in the General Fund of the District of Columbia. D.C. Code § 7-1671.08(f)(3). In other words, the ABC Board does not administer or manage any funds collected from fines.

Alliance's allegations are more analogous to *Dugan v. Ohio*, 277 U.S. 61 (1923), than the cases Alliance relies on. In *Dugan*, the plaintiff challenged a scheme where fines from criminal convictions went to a general fund that also paid salaries, including that of the mayor who adjudicated the case. 277 U.S. at 65. The Court rejected the challenge, partly because the mayor's salary was paid out of a general fund and "he receive[d] a salary in any event, whether he convict[ed] or acquit[ted]." *Id.* Alliance has not alleged that any member of the ABC Board has "a direct, personal, substantial pecuniary interest" in the outcome of hearings before the Board, *see Tumey v. Ohio*, 273 U.S. 510, 523 (1927), or that any fines at issue are such a significant portion of a budget that they could influence the Board's decision, *cf. Ward v. Monroeville*, 409 U.S. 57, 60 (1972). Even if Alliance had alleged facts to support this claim, it would still fail.

Alliance also contends that it has alleged a due process violation under *Williams v. Pennsylvania*, 579 U.S. 1 (2016), Pl.'s Opp'n at 14, but that case is inapposite too. *Williams* concerned an instance where the judge "had an earlier significant, personal involvement as a prosecutor in a critical decision in the defendant's case." 579 U.S. at 16. Alliance has made no comparable allegations concerning any member of the ABC Board and, for the reasons discussed in the District's motion to dismiss, Alliance's objections to the chairperson of the board's role in calling witnesses and evaluating evidence does not state a claim under the Due Process Clause. *See* Defs.' Mot. at 26–27.

### C. The Dormant Commerce Clause (Claim Three) Does Not Apply to the Sale of Cannabis, a Federally Illegal Market.

As the District argued in its motion to dismiss, Congress has outlawed a national market for cannabis and, accordingly, the dormant Commerce Clause does not protect the right to participate in an interstate market that Congress has declared illegal. Defs.' Mot. at 31–33. In

response, Alliance relies on a recent Second Circuit decision applying the dormant Commerce Clause to marijuana licensing. *See* Pl.'s Opp'n at 11 (citing *Variscite N.Y. Four, LLC v. N.Y. State Cannabis Control Bd.*, 152 F.4th 47 (2d Cir. 2025)). As the District acknowledged in the motion, the two circuit courts to consider this issue have concluded that the dormant Commerce Clause applies. *See* Defs.' Mot. at 33 n.6. However, a number of district courts have held that the dormant Commerce Clause does not apply to a federally illegal market and both circuit decisions are accompanied by persuasive dissents. *See id.*

As Chief Judge Livingston explained in dissent in *Variscite*, the inquiry into whether a federal criminal law authorizes state laws that might otherwise violate the dormant Commerce Clause is one of congressional intent. 152 F.4th at 68 (Livingston, J., dissenting). "[A]n obvious corollary to the principle that a federal criminal prohibition suggests Congress welcomes complementary state laws is that Congress would not want states to be *required* to enact laws that undermine its objectives." *Id.* (emphasis in original). "[S]tate restrictions on interstate commerce in marijuana—for example, prohibiting investment by an out-of-stater in a state's retail market—seems plainly to aid the Controlled Substance Act's" purpose of eliminating interstate commerce of marijuana. *Id.* To the contrary, the application of the dormant Commerce Clause affirmatively undermines the objective of the Controlled Substances Act; it compels a state to permit more out-of-state participation in a federally illegal market. *Id.* at 69; *see also Ne. Patients Grp. v. United Cannabis Patients & Caregivers of Me.*, 45 F.4th 542 (1st Cir. 2022) (Gelpi, J., dissenting) ("The Commerce Clause does not recognize an interest in promoting a competitive market in illegal goods or services or forestalling hypothetical interstate rivalries in the same."). The fundamental objective of the dormant Commerce Clause is to preserve a competitive national market. *Ne. Patients Grp.*, 45 F.4th at 559 (Gelpi, J., dissenting).

11

Because Congress has outlawed a national market for cannabis, this objective does not apply. *Id.* Accordingly, the dormant Commerce Clause should not apply to the District's medical cannabis licensing laws.

> **D.      Plaintiff's Fifth Amendment Overbreadth Claim (Claim Four) Fails Because the District's Statutes Are Clear.**

Alliance's argument in its opposition relies on the premise that a business must be able to take any action that is not a criminal offense without a business license. *See* Pl.'s Opp'n at 28. Alliance offers no support for this premise, instead baldly arguing that it is a violation of the Fifth Amendment for the District to require a business to get a license to engage in lawful commercial activity. Alliance appears to argue that the District's medical cannabis licensing regime is required to exempt "commercial transactions" that might also be "transfer[s] without remuneration" from its licensing scheme, *id.* at 18, but cites no case to support this argument and offers no response to the District's arguments that these statutes serve separate purposes, *see* Defs.' Mot. at 35–36.

Alliance's argument cannot stand to reason. Alliance insists that businesses have a "right" to engage in "lawful, non-remunerated transfers." Pl.'s Opp'n at 18. For this proposition, Alliance relies on the definition of person in D.C. Code § 48-901.02, which provides definitions for terms used in the chapter of the D.C. Code concerning the Controlled Substances Act. D.C. Code § 48-901.02 defines "person" to mean "an individual, corporation . . . , business trust . . . , partnership, or association, or unincorporated business." As an initial matter, Alliance has not identified any support for the proposition that, because an activity is lawful, a government cannot require a business license for a business to engage in that activity. Additionally, while Alliance is correct that D.C. Code § 48-904.01(a)(1)(B) falls within this chapter, that provision specifically provides that it is lawful for "any person 21 years of age or

12

older to . . . [t]ransfer to another person 21 years of age or older, without remuneration, marijuana weighing one ounce or less." This provision explicitly refers to people who are 21 years of age or older; Alliance has not explained how a business can be a person 21 years of age or older.

Alliance also raises an argument alleging that the District has acted arbitrarily in its response to hemp businesses. Pl.'s Opp'n at 19–20. However, Alliance cannot amend its Complaint through its opposition, *Harris*, 567 F. Supp. 3d at 154, and there are no factual allegations whatsoever in the Complaint concerning hemp businesses or how the District is treating such businesses, *see generally* Am. Compl. Alliance's argument regarding hemp is also unclear; the definition of marijuana is not at issue in this case nor is the definition of hemp. And, regardless, Plaintiff is incorrect that there is a statutory conflict between the medical cannabis licensing statutes and the Controlled Substances Act. In the Controlled Substances Act, cannabis is defined as "all parts of the plant genus Cannabis, including both marijuana and hashish." D.C. Code § 48-901.02(3). Marijuana and hashish are both defined separately as subcategories of cannabis. *Id.* Alliance cites to an exhibit, which was not referenced or incorporated into the Complaint, which includes testimony from the owner of a cannabis store stating that ABCA is "Grouping Legal Hemp Stores with Illegal Cannabis" seemingly to support Alliance's contention that ABCA is treating hemp businesses differently than former I-71 shops. Pl.'s Opp'n at 19. The Court should disregard this new and unsubstantiated argument.

### E.      Alliance's Fifth Amendment Self-Incrimination Claim (Count Five) Fails Because the Fifth Amendment Does Not Extend to Statements in Regulatory Documents.

Alliance's claim fails as the Fifth Amendment testimonial privilege against self-incrimination does not extend to mandated compliance with regulatory documents. *See* Defs.'

Mot. at 37–38.  In its opposition, Alliance only glancingly responds to this argument, flatly asserting that the District's "Unlicensed Operator Attestation Form" is coercive.  Pls.' Opp'n at 20.  For this argument, Alliance relies on *Garrity v. New Jersey*, 385 U.S. 493 (1966), in which police officers, who were under investigation by the state attorney general, faced a choice between "self-incrimination and job forfeiture," by choosing whether to participate in these investigations, *Garrity*, 468 U.S. at 496.  *Garrity* is clearly distinguishable from the facts here as there was no actual compulsion; applicants, rather, faced a voluntary choice whether or not to apply for a medical cannabis license.  More recent Supreme Court case law highlights this distinction.  In *Selective Services System v. Minnesota Public Interest Research Group*, 468 U.S. 841 (1984), the plaintiffs challenged a requirement that applicants for federal financial educational aid confess to a criminal act—not registering for the draft—as part of the application, *id.* at 856.  The Court found that this requirement did not violate the Fifth Amendment because "a person who has not registered clearly is under no compulsion to seek financial aid."  *Id.*  Similarly, Alliance's members are under no compulsion to seek a medical cannabis license.  *See Sibley v. Obama*, 810 F. Supp. 2d 309, 311 (D.D.C. 2011).  Alliance's self-incrimination claim should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Alliance's Complaint.

Date: November 24, 2025.                              Respectfully Submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Matthew R. Blecher*
MATTHEW R. BLECHER [1012957]

14

Chief, Equity Section, Civil Litigation Division

*/s/ Honey Morton*
HONEY MORTON [1019878]
Assistant Chief, Equity Section

*/s/ Helen M. Rave*
DAVID R. WASSERSTEIN [1736006]
HELEN M. RAVE [90003876]
MATEYA B. KELLEY [888219451]
Assistant Attorneys General
Equity Section
400 Sixth Street, N.W., Suite 10100
Washington, D.C. 20001
Phone: (202) 735-7520
Email: helen.rave@dc.gov

*Counsel for Defendants*

15